IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID P. WILSON,                          )
                                          )
      Plaintiff,                      )
                                          )
      v.                              )       CASE NO. 2:24-cv-111-ECM
                                          )               [WO]
JOHN Q. HAMM, Commissioner,               )
Alabama Department of Corrections,        )
                                          )
      Defendant.                      )

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

Plaintiff David P. Wilson ("Wilson"), a death row inmate in the custody of the Alabama Department of Corrections ("ADOC"), brings this action pursuant to 42 U.S.C. § 1983 against Defendant John Q. Hamm ("Hamm"), the Commissioner of the ADOC, in his official capacity.  Wilson claims that the ADOC's nitrogen hypoxia execution protocol ("Protocol") violates the Eighth Amendment to the United States Constitution both on its face and as applied to him.  He seeks declaratory and injunctive relief.

After he commenced this action, Wilson moved for expedited discovery (docs. 10, 11), and Hamm moved to dismiss Wilson's complaint (doc. 16).  The motions are fully briefed and ripe for review.  For the reasons explained further below, the Court finds that the motions are due to be denied.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARDS

### A.    Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading

standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

## B.    Motion for Expedited Discovery

As a general rule, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1). Expedited discovery allows a party "to obtain specific, limited, and identifiable pieces of information, particularly when there is some risk of spoliation," "when the suit cannot reasonably proceed without the information," or "when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time." *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021) (citations omitted).[1]

"Expedited discovery is not the norm." *Id.* at 663 (citation omitted). "Although the Eleventh Circuit Court of Appeals 'has not adopted a standard for allowing expedited discovery, . . . many district courts within the Eleventh Circuit have expressly used a general good cause standard when confronted with expedited discovery requests." *Brown v. Dunn*, 2021 WL 4523498, at *1 (M.D. Ala. Oct. 4, 2021) (citing *Rivera v. Parker*, 2020 WL 8258735, at *3 (N.D. Ga. 2020)). The "party requesting expedited discovery has the

---

[1] Here, and elsewhere in the opinion, the Court cites to nonbinding authority. While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

burden of showing the existence of good cause." *Id.* (citing *In re Chiquita Brands Int'l, Inc.*, 2015 WL 12601043, at *3 (S.D. Fla. 2015)).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 615 (S.D. Fla. 2019) (citation omitted).  In deciding whether a party has shown good cause, courts often consider the following factors:  "(1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made." *Socal Dab Tools, LLC v. Venture Techs., LLC*, 2022 WL 19977793, at *1 (M.D. Ala. Apr. 25, 2022) (parentheticals in original) (citation omitted).  Courts also consider whether a motion to dismiss is pending. *Mullane*, 339 F.R.D. at 663.

## IV. FACTS[2]

Wilson was convicted and sentenced to death in the Circuit Court of Houston County, Alabama, in December 2007, when lethal injection was Alabama's primary method of execution.  In 2018, Alabama Code § 15-18-82.1 was amended to add nitrogen hypoxia as an approved method.  Under the amended statute, lethal injection remains

---

[2] This recitation of the facts is based on Wilson's complaint, the attachments thereto, and documents which have been incorporated by reference, *see infra* note 3.  The Court recites only the facts pertinent to resolving Hamm's motion to dismiss.  For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Wilson.

Alabama's primary method of execution. ALA. CODE § 15-18-82.1(a).  However, condemned inmates are now afforded one opportunity to elect execution by nitrogen hypoxia instead. *Id.* § 15-18-82.1(b).  Inmates like Wilson, whose death sentences became final prior to the amended statute's June 1, 2018 effective date, had thirty days to make their election. *Id.* § 15-18-82.1(b)(2).  On June 26, 2018, Wilson elected nitrogen hypoxia as his method of execution. (Doc. 16-1).[3]  When he elected nitrogen hypoxia, he reserved his right to challenge the constitutionality of any nitrogen hypoxia protocol.  Over five years later, on August 2023, the ADOC publicly released the Protocol.[4]  The public version of the Protocol consists of over forty pages, many of which contain redactions.  As relevant here, the Protocol calls for pure nitrogen gas to flow into a mask fitted on the condemned inmate's face, reducing the oxygen inside the mask and leading to the inmate's death.

Wilson's allegations in support of his claim that the Protocol violates the Eighth Amendment generally fall into three categories:  (1) scientific studies about the purported

---

[3] In resolving a motion to dismiss, the Court generally may consider only the allegations in the complaint "and any exhibits attached thereto. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).  "If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss generally must be converted into a motion for summary judgment." *Id.*  One exception to the conversion rule is the incorporation by reference doctrine, which permits the Court to consider evidence not referred to or attached to the complaint if the evidence is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

Wilson's nitrogen hypoxia election form is attached to Hamm's motion to dismiss. (Doc. 16-1).  This evidence is central to Wilson's claims challenging the ADOC's nitrogen hypoxia protocol, and the evidence's authenticity is not challenged.  Thus, the Court may consider Wilson's election form in resolving Hamm's motion to dismiss.

[4] Wilson attached a copy of the Protocol to his reply brief in support of his motions for expedited discovery. (Doc. 15-1).  The Protocol is referenced throughout Wilson's complaint and is central to his claims.  Moreover, its authenticity is not challenged.  Thus, the Court may consider the Protocol in resolving Hamm's motion to dismiss. *See Johnson*, 107 F.4th at 1300.

pitfalls of nitrogen gas; (2) the circumstances of the ADOC's January 2024 execution of Kenneth Eugene Smith; and (3) Wilson's medical conditions, specifically his pulmonary issues, Autism Spectrum Disorder ("ASD"), and hypersensitivity to light. The Court summarizes these allegations below.

According to Wilson, scientific literature has long opined that gas asphyxiation using a mask "is not a humane way to kill a person." (Doc. 1 at 10, para. 16). He cites a 2010 study which concluded that "[o]xygen deprivation with a face mask is not acceptable because leaks are difficult to control and it may not eliminate rebreathing. These factors will extend time to unconsciousness and time to death." (*Id.*) (alteration in original). His complaint also references studies indicating that "asphyxiation itself is deeply painful and can produce severe nausea, disorientation, dizziness, and seizures," and that fatally low oxygen levels could cause "agony, anxiety, and intense fear." (*Id.* at 20, para. 45).

On January 25, 2024, the ADOC carried out Kenneth Eugene Smith's ("Smith") execution pursuant to the Protocol—the first nitrogen hypoxia execution in the world. According to Wilson's complaint, the Alabama Attorney General had represented to federal courts and the public that Smith would be rendered unconscious within seconds and dead within minutes. Wilson alleges, however, that Smith experienced a torturous, twenty-two-minute execution, including about four to six minutes of struggling, writhing, and shaking against restraints; followed by five to seven minutes of deep breathing. Wilson further alleges that members of the media and other witnesses to Smith's execution observed that he "remained conscious for many minutes after the nitrogen gas started

flowing, struggled and writhed on the gurney, convulsed, dry heaved and retched into his mask, gasped for breath, and was finally pronounced dead 22 minutes later." (*Id.* at 9–10, para. 15).  According to the complaint, Smith "struggled" and "gasped for oxygen in obvious distress," and his execution "was a far cry from the peaceful and dignified passing" that the Alabama Attorney General had promised. (*Id.* at 10, para. 15).

Wilson also alleges that he suffers from certain medical conditions which cause the Protocol to pose a substantial risk of serious harm to him.  First, Wilson has long suffered from pulmonary health issues, including tuberculosis and other respiratory difficulties.  According to Wilson, these conditions are chronic, permanent, and result in the constriction of his airways, making it difficult to breathe.  Wilson further alleges that his airways are "chronically clogged by phlegm and other discharge," which makes it difficult for him to breathe normally, and he reports coughing up fluid on a regular basis. (*Id.* at 16, para. 33).  Additionally, Wilson has had COVID-19 on several occasions, which has impaired his lungs further.  He alleges that his pulmonary issues "would interfere with the efficacy of the nitrogen gas asphyxiation protocol," and that if he suffers a pulmonary attack during his execution, his involuntary cough may cause the gas mask to become dislodged, "thereby introducing atmospheric oxygen into the system and the possibility of brain damage." (*Id.* at 25, para. 57).  Meanwhile, Wilson's constricted airways "would likely prolong his suffering, by restricting the intake of nitrogen gas into his lungs." (*Id.*).  Wilson further alleges that during this time, he would be "experiencing the severe pain and suffering associated with a pulmonary attack and asphyxiation." (*Id.*).

Additionally, Wilson has been diagnosed with ASD.  Most individuals with ASD, including Wilson, experience sensory perceptual issues and tactical sensory differences. According to the complaint, Wilson is hypersensitive to physical touch.  The Protocol requires that the mask, through which pure nitrogen gas is delivered, be tightly fitted on the condemned inmate's entire face.  Because of his sensory issues caused by his ASD, wearing this stiff mask would be intolerable and cause him to experience extreme suffering. He alleges that during the COVID-19 pandemic, he was unable to wear a face mask because it made him feel like he was suffocating.  He further alleges that the mask required by the Protocol is tighter and more constricting than a piece of cloth.  He acknowledges that any method of execution would create sensory stimuli but asserts that not all methods would involve the level of stimulation he would experience from the Protocol, "which requires extensive tactile stimulation of the face (a particularly sensitive part of the body)." (*Id.* at 27, para. 61).

Wilson also has "atypically high sensitivity to light" and has repeatedly requested permission to wear sunglasses.  Without sunglasses, bright light—even mere sunlight— causes Wilson significant distress.  During the execution, Wilson would have to stare into "high-intensity ceiling lights" while he is strapped to the gurney, and the mask which delivers the nitrogen gas would not permit him to wear sunglasses. (*Id.* at 17, para. 36; 18 at para. 38).  As a result of this exposure to bright lights without sunglasses, Wilson alleges he would either suffer crippling migraines during the execution or, alternatively, be forced to close his eyes and forfeit his final opportunity to see his family before he dies.

Wilson proposes two alternative methods of execution: a ten-gram dose of secobarbital, a sleeping pill; or a drug cocktail known to doctors as "DDMP II," composed of 1 gram of diazepam (Valium), 50 milligrams of digoxin, 15 grams of morphine sulfate, and 2 grams of propranolol. Dr. Charles David Blanke ("Dr. Blanke"), a physician who specializes in end-of-life care in Oregon, testified before another federal district court in Alabama that he has used these methods for his patients in Oregon and that they result in death in more than 99% of cases, with complications being "extremely rare." Wilson attached to his complaint a transcript of Dr. Blanke's testimony.

Dr. Blanke explained that the drugs may be administered either by voluntary oral consumption or via a nasogastric tube, which is a thin tube placed up the nasal cavity and down into the stomach. In the case of voluntary oral consumption, the drug or drug combination is taken by mouth in four ounces of liquid. This procedure is followed for both secobarbital and DDMP II. Regarding the nasogastric tube, the drug or drug combination is placed into a syringe, which is then inserted into the end of the nasogastric tube. Once the tube is placed, the person administering the drugs then compresses the plunger of the syringe, pushing the fluid through the tube and directly into the stomach. Dr. Blanke testified that patients who ingest secobarbital or DDMP II lose consciousness within five minutes and die within twenty-five minutes. Additionally, Dr. Blanke testified that all the drugs—secobarbital as well as the drugs comprising the DDMP II cocktail— are readily available throughout the United States, including Alabama. Wilson alleges that each of his proposed alternatives would significantly reduce the risk of severe pain from

breathing in nitrogen gas through a mask due to his pulmonary conditions, and that each alternative would involve substantially less sensory stimuli than the tight-fitting mask required by the Protocol.

## V.  DISCUSSION

Three motions are pending before the Court:  Hamm's motion to dismiss, and Wilson's two motions for expedited discovery.  Hamm moves to dismiss Wilson's complaint in its entirety, raising numerous arguments.  For his part, Wilson requests two forms of expedited discovery.  He seeks to depose multiple individuals who witnessed Smith's execution, and he also seeks two documents:  an unredacted version of the Protocol and the log of Smith's execution.  Hamm opposes both requests.  The Court will first address Hamm's motion to dismiss before turning to Wilson's motions for expedited discovery.

### A.    Motion to Dismiss

Wilson brings two claims:  a facial challenge to the Protocol as violative of the Eighth Amendment (Count 1), and an as-applied challenge to the Protocol as violative of the Eighth Amendment because of his unique medical conditions (Count 2).  Wilson requests that the Court enter a declaratory judgment that the Protocol violates his Eighth Amendment right to be free from cruel and unusual punishment; enjoin Hamm from executing him using the Protocol; and "[g]rant any further relief as [the Court] deems just and proper." (Doc. 1 at 28).

Hamm moves to dismiss the complaint on multiple grounds. He argues that Wilson's claims are untimely, barred by the Prison Litigation Reform Act ("PLRA"), and equitably estopped. Hamm also contends that Wilson fails to plausibly allege an Eighth Amendment violation. Finally, Hamm argues that as a matter of law, Wilson is not entitled to the injunctive relief he seeks. The Court addresses each argument in turn.

### 1. Statute of Limitations

Hamm first argues that Wilson's "wholesale challenge" to nitrogen hypoxia is time-barred because it accrued more than two years before his filed this action. Hamm bears the burden to establish the applicability of a statute of limitations affirmative defense. *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). Wilson was not required to negate a statute of limitations defense in his complaint. *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Id.* (citation omitted).

The parties agree that Wilson's claims are subject to a two-year statute of limitations. *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). The contested issue is when the limitations period began to run on these claims. In a facial challenge, "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *Nance v. Comm'r, Ga. Dep't of Corr.*, 59 F.4th 1149, 1153 (11th Cir. 2023) (quoting *McNair*, 515 F.3d at 1174). In an as-applied challenge, a plaintiff

may also pursue his method of execution claim "[i]f the basis for his claim become reasonably apparent later . . . even though two years have passed since his sentence became final or since the execution protocol changed." *Id.*  In such a case, the as-applied claim accrues "once the plaintiff becomes aware (or should have become aware) that his unique personal circumstances would render his execution unconstitutional." *Id.* (parenthetical in original); *see also id.* ("The limitations period in an as-applied challenge 'does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" (quoting *McNair*, 515 F.3d at 1173)).

Accepting the factual allegations as true and drawing all reasonable inferences in Wilson's favor, Wilson challenges the ADOC's nitrogen hypoxia protocol as written and as it has been carried out in practice—not nitrogen hypoxia as an execution method in the abstract.  For example, he raises concerns that the mask would become dislodged from his coughing because his pulmonary conditions cause him to regularly cough up fluid, and if he coughs during the execution, the gas mask may become dislodged, thereby introducing oxygen into the system and extending the process.  Additionally, he alleges that wearing the tight-fitting face mask contemplated by the Protocol would cause him significant distress due to his ASD and also would not permit him to wear sunglasses, which he needs to prevent migraines caused by staring into the ceiling lights.  The Protocol was released in August 2023.  The Court agrees with Wilson that his claims challenging the Protocol facially and as applied to him accrued, at the earliest, in August 2023, when the Protocol

was released. *See Grayson v. Hamm*, 2024 WL 4701875, at *12 (M.D. Ala. Nov. 6, 2024) (reaching a similar conclusion regarding another inmate's challenge to the Protocol), *aff'd sub nom. Grayson v. Comm'r, Ala. Dep't of Corr.*, 121 F.4th 894 (11th Cir. 2024). Thus, Wilson's lawsuit, which was filed on February 15, 2024, was brought well within the two-year limitations period. Consequently, to the extent Hamm requests dismissal on statute of limitations grounds, the motion to dismiss is due to be denied.

Hamm insists that the limitations period began to run in June 2018 when Wilson elected nitrogen hypoxia, and that the release of the Protocol in August 2023 did not restart the limitations clock because it did not amount to a "substantial change." The Court disagrees. First, whether a substantial change in a state's execution protocol has occurred "is a fact dependent inquiry," *see Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 873–74 (11th Cir. 2017) (citation omitted), making the issue ill-suited for resolution at the motion to dismiss stage. And viewing the facts and all reasonable inferences in his favor, Wilson became subject to a new execution protocol in August 2023 when Alabama released its nitrogen hypoxia protocol for the first time. When Alabama adopted nitrogen hypoxia as an execution method, and when Wilson elected nitrogen hypoxia, no protocol for its implementation existed. For example, August 2023 is when it first become known that the ADOC would use a mask to deliver the nitrogen gas, as opposed to another system. *Cf. Bucklew*, 587 U.S. at 143 (observing that nitrogen gas could be administered "using a gas chamber, a tent, a hood, a mask, or some other delivery device"). And Wilson's claims are, at least somewhat, tied to the Protocol's use of a mask. Because it is not "apparent

from the face of the complaint" that Wilson's claims are time-barred, dismissal on statute of limitations grounds is not appropriate. *See La Grasta*, 358 F.3d at 845 (citation omitted).

### 2. PLRA Exhaustion

Hamm also seeks dismissal on the grounds that Wilson failed to exhaust his administrative remedies, rendering his complaint barred by the PLRA. The PLRA states in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While it is not entirely clear, the Court discerns Hamm's argument to be that because Wilson elected nitrogen hypoxia, the PLRA now bars Wilson's challenge to the Protocol because he could have availed himself of the administrative remedy of not electing nitrogen hypoxia.

Hamm's argument is unavailing for several reasons. First, it is underdeveloped and not adequately supported by authority, which is an independent reason to reject it. Additionally, Wilson challenges the *Protocol*, and he reserved his right to challenge the constitutionality of any nitrogen hypoxia protocol when he elected nitrogen hypoxia as his execution method. (*See* doc. 16-1). A central premise of Hamm's argument is that Wilson elected nitrogen hypoxia as his execution method but now seeks an injunction prohibiting his execution by nitrogen hypoxia. But Wilson requests an injunction prohibiting Hamm from executing Wilson "using [the] *current* nitrogen gas asphyxiation *protocol*." (Doc. 1 at 28) (emphases added). Additionally, Hamm fails to adequately contend with Wilson's

reservation of his right to challenge the constitutionality of any nitrogen hypoxia protocol. (*See* doc. 16-1). Hamm relegates discussion of Wilson's reservation to one sentence in the reply brief, asserting that Wilson challenges nitrogen hypoxia *per se* rather than, as the Court finds, the ADOC's nitrogen hypoxia *protocol*. And Hamm even acknowledges that Wilson "may have lacked an administrative remedy for claims pertaining to the details of the [P]rotocol." (Doc. 20 at 6). Thus, the Court is not persuaded that Wilson's claims are barred by the PLRA as unexhausted.

### 3. Equitable Estoppel

Hamm also argues that Wilson's claims are equitably estopped and thus due to be dismissed. Hamm contends, and Wilson does not dispute, that the equitable estoppel defense comprises five elements:

> (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008) (citation omitted). Hamm argues that because Wilson elected nitrogen hypoxia, he is estopped from challenging it as a method and "demanding lethal injection instead." (Doc. 16 at 8). But in light of Wilson's allegations, Hamm has not shown that the equitable estoppel elements are met. Hamm contends that when Wilson elected nitrogen hypoxia, Wilson misrepresented the "fact" that he preferred nitrogen hypoxia over lethal injection as an

execution method.  However, as noted herein, Wilson's complaint challenges the current nitrogen hypoxia *protocol*.  Moreover, when Wilson elected execution by nitrogen hypoxia, the Protocol did not yet exist, and when he signed the election form, he expressly reserved the right to challenge any nitrogen hypoxia protocol.  Consequently, the Court declines to apply equitable estoppel here.

### 4. Plausibility

Wilson asserts both a facial challenge and an as-applied challenge to the Protocol. As the Supreme Court has explained, "the substantive rule of law necessary to establish a constitutional violation" is the same for both. *See Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) ("[C]lassifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation.").

"[T]he Eighth Amendment does not guarantee a prisoner a painless death . . . ." *Id.* at 132.  Instead, the relevant Eighth Amendment inquiry is whether the State's chosen method of execution "'superadds' pain well beyond what's needed to effectuate a death sentence." *Id.* at 136–37.  And "[t]o determine whether the State is cruelly superadding pain," the Supreme Court requires "asking whether the State had some other feasible and readily available method to carry out its lawful sentence that would have significantly reduced a substantial risk of pain." *Id.* at 137; *see also Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 858 (11th Cir. 2017) (explaining that a plaintiff asserting an Eighth

Amendment method of execution challenge "must plausibly plead, and ultimately prove, that there is an alternative method of execution that is feasible, readily implemented, and in fact significantly reduces the substantial risk of pain posed by the state's planned method of execution"). The plaintiff must establish that the challenged method poses a "'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citation omitted). His proposed alternative method of execution need not be "presently authorized by a particular State's law." *Bucklew*, 587 U.S. at 139–40. Additionally, the plaintiff must show that the State "has refused to adopt [his proposed alternative] without a legitimate penological reason." *Id.* at 134.

Hamm argues that Wilson does not adequately allege a substantial risk of severe pain or a feasible alternative method of execution. The Court disagrees and finds that Wilson has offered more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" and has pleaded just enough to render his claims plausible. *See Iqbal*, 556 U.S. at 678 (citation omitted); *see also Miller v. Marshall*, 2024 WL 2946093, at *7 (M.D. Ala. June 11, 2024) (reaching a similar conclusion in another inmate's challenge to the Protocol while observing that the complaint "test[ed] the limits of a sufficient method-of-execution pleading"). Wilson contends that the Protocol is constitutionally deficient because of issues associated with the mask into which nitrogen gas is introduced, which he claims presents risks that are substantially likely to extend the

time to consciousness and cause him and other condemned inmates to experience severe pain and suffering. Wilson's complaint references several scientific studies, including one which concluded that "[o]xygen deprivation with a face mask"—which is part of the Protocol—"is not acceptable because leaks are difficult to control and it may not eliminate rebreathing," which "*will* extend time to unconsciousness and time to death." (Doc. 1 at 10, para. 16) (alteration in original) (emphasis added). Wilson references other studies indicating that "asphyxiation itself is deeply painful and can produce severe nausea, disorientation, dizziness, and seizures," and that fatally low oxygen levels could cause "agony, anxiety, and intense fear." (*Id.* at 20, para. 45). Accepting these allegations as true and drawing all reasonable inferences in Wilson's favor, the Court finds that Wilson's complaint is sufficient to survive dismissal at this stage of the litigation.

Additionally, Wilson contends that these concerns have been borne out based on witness accounts of Smith's execution, which described Smith as struggling, writhing, and convulsing for four to six minutes, breathing deeply for five to seven minutes, and "gasp[ing] for oxygen in obvious distress" before being pronounced dead twenty-two minutes after the nitrogen began flowing. According to Wilson, these witness accounts are evidence that Smith experienced a tortuous execution and remained conscious for much longer than had been predicted. Wilson asserts that he and other condemned inmates will have the same experience if they are executed under the Protocol. Wilson also alleges that either of his proposed alternative methods of execution—oral ingestion of secobarbital or DDMP II—would significantly reduce the substantial risk of severe pain by removing the

18

face mask from the equation and instead accomplishing the execution through the inmate swallowing the drug or drug combination in four ounces of liquid, or alternatively injecting the drug or drug combination into a nasogastric tube leading to the inmate's stomach. He cites Dr. Blanke's opinion that both methods "extremely rare[ly]" have complications and cause unconsciousness within five minutes. Additionally, Wilson alleges that these drugs are readily available in Alabama.[5] Accepting his factual allegations as true and drawing all reasonable inferences in his favor, Wilson has plausibly alleged that there is a readily available alternative method of execution which would significantly reduce the substantial risk of serious harm posed by the Protocol. *See Glossip*, 576 U.S. at 877; *Boyd*, 856 F.3d at 858.

With respect to his as-applied challenge, Wilson offers additional allegations about how the Protocol, in conjunction with his unique medical conditions, poses a substantial risk of severe pain to him, which would be significantly reduced by either of his proposed alternatives. According to the complaint, Wilson's pulmonary conditions cause him to regularly cough up fluid, and if he coughs during the execution, the gas mask may become dislodged, thereby introducing oxygen into the system and extending the time to unconsciousness (and death), which would be further exacerbated by his constricted airways. If the mask becomes dislodged, Wilson will experience "severe pain and suffering

---

[5] The Court thus rejects Hamm's argument that Wilson failed to allege that secobarbital or DDMP II are readily available. According to Dr. Blanke's testimony, which Wilson incorporates into his complaint, secobarbital and the drugs comprising the DDMP II cocktail are readily available throughout the United States, including Alabama. At this stage, the Court accepts these allegations as true.

associated with a pulmonary attack and asphyxiation." (Doc. 1 at 25, para. 57).

Additionally, he alleges that because of his ASD and extreme sensitivity to stimuli, wearing

the tight-fitting face mask contemplated by the Protocol would cause him significant

distress. He further alleges that his proposed alternatives—oral ingestion of secobarbital

or DDMP II—would significantly reduce the substantial risk of severe pain from breathing

in nitrogen gas through a mask, given his restricted airways and breathing issues. He

further alleges that his proposed alternatives would involve significantly less sensory

stimuli than a tight-fitting gas mask and thus be significantly less painful and distressing,

given his ASD. The Court also infers that, unlike the Protocol, his proposed alternatives

would not prevent him from wearing sunglasses, which he says he needs to prevent

migraines caused by the bright ceiling lights. Accepting these allegations as true, the Court

concludes that Wilson's as-applied challenge is plausibly pled. *Cf. Nance*, 59 F.4th at 1156

(concluding that inmate stated a plausible method of execution claim where he alleged that

his current dosage of certain medication "has made his brain less receptive to pentobarbital,

the drug Georgia uses in lethal injections").[6]

---

[6] Hamm does not meaningfully address Wilson's allegations concerning his medical conditions and how, according to Wilson, the Protocol poses a substantial risk of serious harm to him in light of those conditions. Instead, as discussed further below, Hamm primarily addresses the allegations about Smith's execution. To be sure, Wilson alleges and argues that Smith's execution put Wilson on notice that, according to him, the Protocol does not operate as Alabama officials had promised. But the Court must consider all the allegations in Wilson's complaint, including his allegations concerning his medical conditions. On this record, Wilson's as-applied claim does not rise or fall with the allegations about Smith's executions and the inferences the Court may draw therefrom. Because Hamm did not address Wilson's allegations concerning his medical conditions and how the Protocol allegedly poses a substantial risk of serious harm in light of those conditions, Hamm has abandoned, at this stage, any argument that these allegations are insufficient to state a plausible as-applied method of execution claim. Even if the Court construed Hamm's submissions as arguing that Wilson's medical allegations were insufficient, the Court finds this argument unavailing for the reasons explained above.

Hamm offers multiple arguments in opposition, but none is persuasive. Concerning Wilson's allegations about the Protocol's alleged substantial risk of serious harm, Hamm focuses almost exclusively on Wilson's allegations about Smith's execution and what reasonable inferences the Court should or should not draw from those allegations. For example, Hamm references an article authored by Smith's expert witness, Dr. Philip Nitschke ("Dr. Nitschke"), after Smith's execution, in which Dr. Nitschke opined that Smith was not cooperative and held his breath during the execution. (*See* doc. 16 at 12 & n.2). Hamm insists that he is not asking the Court to consider evidence outside the complaint; instead, he says the article is support for his position that there are alternative explanations for what witnesses say they perceived during Smith's execution, and that the Court should not infer from those witness accounts that Smith experienced severe pain. What Hamm suggests, however, is a distinction without a difference. For the Court to consider the alternative explanation proffered by Dr. Nitschke, the Court would necessarily have to consider evidence outside the complaint, but Hamm has not articulated a permissible basis for the Court to do so. Additionally, the Court finds that Hamm's efforts to provide an alternative explanation for Smith's movements fail at this stage for the additional reason that it would require the Court to view Wilson's allegations and draw inferences in the light most favorable to *Hamm*, which the Court may not do. *Cf. Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (rejecting the defendants' argument about how the court should interpret the pleadings and evidence attached thereto because it "would require reading the complaint in the light most favorable to the defendants and

not, as the law requires, in the light most favorable to the plaintiff"). Hamm has not persuaded the Court at this stage that there is an "*obvious* alternative explanation" such that the Court should not draw the inferences Wilson suggests. *See Iqbal*, 556 U.S. at 682 (emphasis added).

Hamm also argues that, for several reasons, Wilson failed to adequately allege an alternative method of execution. Hamm first contends that Wilson's proposed alternative fails as a matter of law because Wilson pleads an alternative which requires "voluntary oral ingestion" while at the same time arguing that voluntary participation in one's own execution amounts to torture. It is well-settled, however, that a plaintiff may make inconsistent claims in his complaint. *See* FED. R. CIV. P. 8(d)(3). Thus, the Court rejects this argument.

Hamm's next argument is that Wilson's complaint "forecloses reliance on oral ingestion of lethal agents through a nasogastric or orogastric tube," and that "[a] state has a legitimate reason not to implement any method of execution that would require the involvement of 'persons whose professional ethics rules or traditions impede their participation.'" (Doc. 16 at 17–18) (citation omitted). The Court finds this argument unavailing at this stage. Wilson's complaint does not allege or require the Court to infer that he (or other inmates) would refuse to voluntarily ingest either of his proposed alternative drugs. While further factual development may alter this analysis, at this stage the Court is not persuaded that Wilson's proposed alternatives are legally inadequate on this basis.

22

Hamm also contends that Wilson's proposed alternatives are legally insufficient because they carry risks related to his medical conditions which are similar to those he identifies with the Protocol, including risks due to his constricted airways and oversensitivity to sensory stimuli. Hamm focuses on the insertion of a nasogastric tube, but he does not explain how Wilson's proposed alternatives are deficient if he were to simply swallow the drug or drug combination in four ounces of liquid. In any event, viewing the facts and all reasonable inferences in Wilson's favor, the Court is not persuaded at this stage that Wilson's proposed alternatives are insufficient on this basis.

Finally, Hamm does not meaningfully distinguish between Wilson's facial and as-applied challenges. While the Court acknowledges that the "substantive rule of law" is the same for both, Hamm's motion does not offer arguments specific to the facial challenge, including any argument about "the extent to which the invalidity of the challenged law [or policy] must be demonstrated." *See Bucklew*, 587 U.S. at 138. For all these reasons, the Court finds that Wilson has alleged plausible Eighth Amendment claims. The Court expresses no view as to the ultimate success of these claims, or to their disposition at a later stage in the litigation. But currently, Wilson's claims are sufficiently plausible to survive dismissal.

### 5. Injunctive Relief

Hamm further argues that Wilson cannot obtain the injunctive relief he seeks for two reasons: (1) it does not satisfy the PLRA's "narrowness-necessity-and-non-

intrusiveness" requirements, and (2) Wilson has not established that he lacks an adequate remedy at law.

Under the PLRA, a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.SC. § 3626(a)(1)(A).[7]  Hamm contends that Wilson's requested relief runs afoul of the PLRA because he did not propose an alternative method of execution in his prayer for relief, and because his requested relief is inconsistent with his election of nitrogen hypoxia.  The Court is not persuaded.  In addition to requesting an injunction prohibiting Hamm from executing him using the Protocol, Wilson also requested that the Court "[g]rant any further relief as it deems just and proper," (doc. 1 at 28), which could include an order specifying that his execution be carried out using one of his proposed alternatives.  Additionally, Wilson did plead alternative methods of execution, and to treat their omission from his prayer for relief as fatal under the PLRA would elevate form over substance.  With respect to Hamm's second argument, the Court finds that it amounts to little more than a rehashing of Hamm's interpretation of Wilson's complaint as a challenge to nitrogen hypoxia *per se*, which the Court has rejected, and it also again ignores Wilson's reservation of his right to challenge any nitrogen hypoxia protocol.  For these reasons, the Court finds Hamm's PLRA argument unavailing.

---

[7] In his motion, Hamm quotes and cites to the PLRA provision concerning preliminary injunctive relief (doc. 16 at 21) (quoting 18 U.S.C. § 3626(a)(2)), but that provision is inapplicable at this stage because Wilson has not sought a preliminary injunction.

Hamm's second argument fares no better.  He contends that Wilson had an adequate remedy at law to avoid an execution by nitrogen hypoxia, which was to not elect nitrogen hypoxia back in 2018.  For substantially the same reasons the Court has already articulated, the Court is not persuaded at this stage that Wilson's requested injunctive relief is unavailable on this basis.  Consequently, Hamm's motion to dismiss is due to be denied.

**B.    Motion for Expedited Discovery**

Wilson seeks two forms of expedited discovery.  First, he seeks expedited discovery under Rule 30(a)(1)(A)(iii) to depose certain witnesses to Smith's execution. (Doc. 10). Second, he seeks expedited discovery under Rule 34 for the production of certain documents in the ADOC's possession. (Doc. 11).  The Court examines each request in turn below.

**1.    Depositions**

Wilson seeks to depose at least eight individuals, including five media witnesses and any employees of ADOC who were present at Smith's execution.  Under Rule 30(a)(2), a party must obtain leave of court to take a deposition "if the parties have not stipulated to a deposition and . . . the party seeks to take the deposition before the time specified in Rule 26(d)." FED. R. CIV. P. 30(2)(A).

Wilson argues that there is good cause for expedited depositions of the media witnesses because (1) they were not allowed to bring anything into the viewing room to record or memorialize what they witnessed, and thus relied on their own memories of the event; and (2) studies show that witnessing a traumatic event can impair long-term

memory. Wilson argues that because Smith's execution was the only nitrogen hypoxia execution ever carried out in the State of Alabama, the expedited depositions are crucial to preserve the relatively limited eyewitness accounts of the execution. Further, Wilson anticipates that the media organizations in question will move to quash any subpoena on a media witness, which will inevitably delay the proceedings. The interest in mitigating memory loss, he argues, outweighs any prejudice to Hamm.

In opposition, Hamm argues that the reasons cited by Wilson do not constitute unusual circumstances which would warrant expedited discovery. First, Hamm argues that fading memories after a traumatic event are a concern in many cases and would make expedited discovery the norm rather than the exception. Second, Hamm contends that motions to quash are a routine part of litigation, and the anticipation of such motions does not constitute good cause. For the reasons stated below, the Court agrees that Wilson has not met his burden to show good cause for expedited depositions.

Here, no motion for a preliminary injunction is pending, and "the lack of a motion for a preliminary injunction weighs against granting a motion to accelerate the discovery process." *Mullane*, 339 F.R.D. at 664. Wilson's request is also quite broad. Wilson seeks to depose at least eight individuals, but also includes in his request "any other employees of the Alabama Department of Corrections present at the execution." (Doc. 10 at 5); *see Prospero v. Sullivan,* 2020 WL 13735205, at *2 (S.D. Ga. Nov. 13, 2020) (denying plaintiff's request for an expedited deposition, despite its limited scope, because "a deposition at this early stage is still a significant undertaking."). Further, while Wilson

26

indicates that he seeks to depose these individuals as to what they witnessed at the execution, he does not propose any limits to the scope of his questioning. *See Mullane*, 339 F.R.D. at 664.

The Court also finds that the purported risk of memory loss in this case is not sufficient to show good cause for expedited discovery.  Courts have considered the risk of evidence spoliation to be good cause for expedited discovery in cases where the evidence is at risk of being physically destroyed, or where parties have demonstrated that the witnesses are at risk of disappearing altogether. *See TracFone Wireless, Inc. v. Nektova Grp., LLC*, 328 F.R.D. 664, 666 (S.D. Fla. 2019) (allowing expedited discovery where third-party companies were under no duty to preserve evidence); *In re Chiquita Brands Int'l, Inc.*, 2015 WL 12601043, at *6 (allowing expedited depositions where plaintiff demonstrated that paramilitary members had strong incentive to "disappear" after release from Columbian prisons).  The concerns that Wilson raises here are distinguishable and, on this record, do not militate in favor of granting expedited discovery.

The Court acknowledges Wilson's concerns about the potential fading of witnesses' memories, especially if the witnesses were unable to record the execution as they witnessed it.  However, preserving an eyewitness's memory of a one-time event is not an unusual discovery consideration, even if the event is traumatic for the witness.  Again, "[e]xpedited discovery is not the norm." *Mullane*, 339 F.R.D. at 663 (citation omitted).  The Court further finds that any anticipated motions to quash are not an unusual discovery consideration and are insufficient to show good cause for expedited discovery.  Finally, the

27

Court has denied Hamm's motion to dismiss, and so discovery will ensue in its ordinary course shortly.  For these reasons, Wilson's request for expedited depositions (doc. 10) is due to be denied.

### 2.  Document Requests

Wilson also seeks expedited discovery of two documents:  (1) an unredacted copy of the ADOC's nitrogen hypoxia execution protocol, and (2) a copy of the log of Smith's execution.  Under Rule 26(d)(2), if more than twenty-one days have passed after the summons and complaint are served on a party, a party may serve an early request for documents under Rule 34. Fed. R. Civ. P. 26(d)(2)(A).  However, an early request "is considered to have been served at the first Rule 26(f) conference." *Id.*  Accordingly, the deadline to respond to early Rule 34 requests is thirty days after the first Rule 26(f) conference. Fed. R. Civ. P. 34(b)(2)(A).  A court, however, can order expedited discovery and require an earlier response. *See* Fed. R. Civ. P. 26(d)(1).

Wilson argues that there is good cause for expedited discovery of these documents because they are "important for [Wilson] to formulate regular Rule 34 discovery motions," prepare interrogatories, "determine whether there is an immediate need to amend the complaint or add parties," and "conduct depositions of the media and ADOC witnesses." (Doc. 11 at 15).  Wilson states that it is "unlikely that any potential motion to dismiss would succeed," that the documents are discoverable under Rule 34, and that Hamm can easily locate the documents. (*Id.*).  He also contends that his discovery interests outweigh any prejudice to Hamm because the requested documents are already in Hamm's possession.

Hamm responds that even accepting Wilson's reasons for seeking these documents, he has not demonstrated good cause for expedited receipt of the documents rather than through the normal discovery process.  The Court agrees with Hamm.  While the unredacted Protocol and Smith's execution log may help Wilson craft interrogatories or conduct depositions, Wilson does not sufficiently explain why it is necessary to begin these tasks "before [Hamm] ha[s] answered and before a Rule 26(f) conference has been held." *See Burns v. City of Alexander City*, 2014 WL 2440981, at *1 (M.D. Ala. May 30, 2014). Moreover, as noted above, Hamm's motion to dismiss has been denied, and the normal discovery process will ensue shortly.  Consequently, the Court finds that Wilson has failed to show good cause for his expedited document requests, and his request (doc. 11) is thus due to be denied.

## VI.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED that Hamm's motion to dismiss (doc. 16) is DENIED.  It is further

ORDERED that Wilson's motions for expedited discovery (docs. 10, 11) are DENIED.

DONE this 12th day of March, 2025.

＿＿＿＿＿＿＿＿/s/ Emily C. Marks＿＿＿＿＿＿＿＿
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE