# EXHIBIT C

## IN THE SUPERIOR COURT OF BUTTS COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **GREGORY WALKER,** | * | |
| | * | |
| **Petitioner,** | * | **CIVIL ACTION NO.** |
| | * | **2008-V-1088** |
| **v.** | * | |
| | * | |
| **CARL HUMPHREY, Warden,** | * | **HABEAS CORPUS** |
| **Georgia Diagnostic and** | * | |
| **Classification Prison,** | * | |
| | * | |
| **Respondent.** | * | |
| | * | |

## <u>ORDER COMPELING RESPONDENT TO ALLOW PRESERVATION OF EVIDENCE OF EXECUTION BY LETHAL INJECTION</u>

At a pretrial hearing conducted on July 14th, 2011, the Court took under advisement the petitioner's emergency motion to permit the petitioner to preserve certain evidence relating to the planned execution of Andrew DeYoung. In light of the apparently imminent date of this execution the Court set an expedited briefing schedule, giving the respondent the additional day he requested to submit a response to the motion.

The petitioner asks the Court to require the respondent to allow a certified expert evidence photographer access to the execution chamber for the purpose of videotaping the execution process, to allow a qualified forensic specialist to be present in the execution chamber during the entire execution process for the purpose of monitoring Mr. DeYoung's physiological responses throughout the execution, and to allow access to Mr. DeYoung's body after the execution in order to attend a full and complete autopsy of the body. The petitioner seeks such access in order to preserve potential evidence

regarding whether the respondent and the Department of Corrections are taking appropriate steps to prevent needless suffering during the course of execution. The petitioner presents affidavit evidence that absent Court directive the respondent and the Department of Corrections are unwilling to permit the access requested. The petitioner's affiants report that during prior, recent executions the petitioner's designated witnesses have only been permitted to watch part of the procedure and have only been able to hear a few segments of it.

The respondent argues that this motion is not relevant to the claims presented to this Court for review. However, a review of the petitioner's habeas corpus petition, as currently amended, reveals that the seventh claim presented therein asserts that execution by lethal injection, in the manner in which it is carried out by the respondent, violates state and federal prohibitions against inflicting cruel and unusual punishment. Although the respondent argues that this claim is barred by *res judicata,* and that this argument should more properly be brought as an action under 42 U.S.C. §1983, he has not thus far moved to dismiss this claim and it remains pending for consideration.[1] The respondent also argues that this challenge is premature, in that it will take the petitioner several years to exhaust his potential state and federal habeas challenges to his execution and that execution methodologies and personnel are likely to change between now and then. A review of the transcripts submitted by the parties and the

---

[1] The basis of the respondent's *res judicata* defense is that the petitioner brought a similar claim during his direct appeal and it was decided against him. As the petitioner notes, however, one of the claims he currently brings is that the counsel who represented him during that appeal provided ineffective representation. The respondent also argues under Tompkins v. Secretary, 557 F.3d 1257, 1261 (11th Cir. 2009), that this type of claim should be brought under 42 U.S.C. §1983. This argument would seem to contradict the respondent's assertion that the petitioner's sole opportunity to bring this claim was during his direct appeal. See generally Dawson v. State, 274 Ga. 327 (2001) (Claim brought during direct appeal). In addition, the Tompkins case was decided by a federal appellate court deciding a question of

Walker v. Humphrey, 08-V-1088

authorities cited, however, reflects that the respondent often argues that a petitioner seeking to challenge the methodology to be used for his execution has waited too long to do so and is barred by laches. See, e.g., Tompkins, 557 F.3d at 1261.

The respondent argues that the petitioner has failed to prove that there has been a substantial change in Georgia's lethal injection protocol since his direct appeal or since numerous courts have upheld its constitutionality. The decisions the respondent cites, however, have been based upon the evidence presented (or the lack of evidence presented) in the particular case before the court. See, e.g., Ledford v. State, 289 Ga. 70 (2011); O'Kelley v. State, 284 Ga. 758 (2008); compare Dawson, 274 Ga. at 330-331 (In explaining why its holding differed from those in other cases challenging electrocution, the Court explained that, "[s]everal recent cases challenging electrocution involved motions which were unsupported by admissible evidence or which proffered evidence that was not actually made part of the record placed before this Court.")[2]. Each case will turn on the evidence presented by that petitioner. The petitioner's motion seeks to preserve pertinent evidence. The briefing on this motion reflects that eye witnesses to an execution may often have varying recollections regarding the details of what happened. In some of the other cases cited by the respondent the State has attacked the conclusions suggested by witnesses on the basis that the witness has not witnessed an execution performed by the State of Georgia and/or is unfamiliar with

---

federal habeas procedure for a Florida inmate; it does not establish any rules for habeas actions brought pursuant to laws of the State of Georgia in Georgia courts.

[2] In fact, some of the Court's language in Dawson may indicate that an issue of whether a particular method of execution is unconstitutionally cruel may never be absolutely *res judicata* because court deliberations on this point are subject to our society's evolving standards of decency: "Similarly, prior rulings by this Court regarding the constitutionality of the use of electrocution cannot be deemed determinative of the issue. This Court has acknowledged that "whether a particular punishment is cruel and unusual is not a static concept, but instead changes in recognition of the ' 'evolving standards of decency that mark the progress of a maturing society.'"

Walker v. Humphrey, 08-V-1088

Page 3

the protocols used here. These arguments tend to underscore the potential relevance of the evidence the petitioner seeks to gather. In addition, the respondent has admittedly recently altered one of the drugs used under its methodology and the petitioner has tendered some evidence that the new drug is relatively untested.

This Court is not making a finding that any executions have been "botched" but is finding that there are many facts relevant to the constitutionality of the State's execution process that it has refrained from disclosing to those who seek to challenge it. The merits of the petitioner's method of execution argument are not before the Court at this time. The question currently before the Court is the petitioner's request to gather further evidence relevant to his claim.

The respondent argues that the relief requested would contravene state laws. He notes that O.C.G.A. §17-10-41 addresses who is to be present at the time of execution:

> There shall be present at the execution of a convicted person the superintendent of the state correctional institution or a deputy superintendent thereof, at least three executioners, two physicians to determine when death supervenes, and other correctional officers, assistants, technicians, and witnesses as determined by the commissioner of corrections. In addition, the convicted person may request the presence of his or her counsel, a member of the clergy, and a reasonable number of relatives and friends, provided that the total number of witnesses appearing at the request of the convicted person shall be determined by the commissioner of corrections.

The text of this statute appears to establish the minimum number of persons who are to be present rather than the maximum. Although it gives the Commissioner of Corrections the authority to determine "the total number of witnesses appearing at the request of the convicted person", in this case the request is being made not on behalf of

Walker v. Humphrey, 08-V-1088

Page 4

the person being executed but on behalf of another individual seeking potential evidence relevant to his own claims. In addition, even if this provision could be read as giving the Commissioner of Corrections sole control over who was to be present during a specific execution, it is appropriate for such restrictions to yield to a capital petitioner's reasonably specific request to preserve potential evidence. Cf. Stripling v. State, 261 Ga. 1 (1991), cert. denied, 502 U.S. 985 (1991) (Statutory restrictions upon release of State Board of Pardons and Paroles records must yield to criminal defendant's right of access to potentially mitigating evidence).

The respondent argues that state law also makes provision for the handling of the body. The provision he cites, however, is very general and does not bar any of the relief the petitioner seeks here.

It appears to the Court that the type of evidence the petitioner seeks to preserve is of a type that is likely to be relevant to a determination regarding whether the method of execution proposed by the respondent violates federal and state constitutional restrictions against inflicting cruel and unusual punishment. See generally Dawson v. State, 274 Ga. 327 (2001)(Evidence described in support of Court's conclusion that electrocution constituted impermissibly cruel and unusual punishment included eye witness accounts of executions, close observations of execution procedures and results from autopsy examinations).

The petitioner seeks to accumulate and preserve evidence for a full and fair presentation of the issue of the alleged cruelty of the State of Georgia's proposed method of execution. This Court finds that the type of potential evidence sought is solely available through channels of access controlled by the respondent. The

Walker v. Humphrey, 08-V-1088

preservation of evidence in the manner proposed by the petitioner serves the interest of a full and fair presentation of evidence. See authorities cited at p. 28, n. 22 of petitioner's memorandum in support.

Georgia law provides in O.C.G.A. § 17-10-43 that, "The body of an executed person shall be delivered to the relatives of the person if they so desire; and, in case no claim is made by relatives for the body, it shall be disposed of in the same manner as bodies of inmates dying in a state correctional institution." There is also a provision authorizing the Georgia Bureau of Investigation to conduct an autopsy upon any individual whose death occurs upon property owned or leased by the state. O.C.G.A. § 45-16-25(d). It is unclear from the current, limited record whether the Georgia Bureau of Investigation will be conducting an autopsy following the planned execution of Mr. DeYoung and whether Mr. DeYoung's relatives will be claiming his body. Neither the Georgia Bureau of Investigation nor Mr. DeYoung's relatives are parties to this case and this Court accordingly lacks jurisdiction over them. Thus, any relief granted should be tailored to recognize the autonomy of the Georgia Bureau of Investigation and of Mr. DeYoung's next of kin.

For the foregoing reasons, and after consideration of all of the arguments made in the materials submitted by each party and at the July 14th, 2011, hearing, the Court concludes that the Petitioner's Motion to Compel Respondent to Allow Preservation of Critical Evidence of the Execution of Andrew DeYoung is GRANTED IN PART AND DENIED IN PART, to the extent set out below.

It is hereby ORDERED that the respondent allow a certified expert evidence photographer designated by the petitioner to have access to the execution chamber of

Walker v. Humphrey, 08-V-1088

Page 6

the Georgia Diagnostic and Classification Prison (and access to an unobstructed view of the process) to create a video recording of the execution by lethal injection of Andrew DeYoung;

It is FURTHER ORDERED that the respondent allow a qualified expert designated by the petitioner to be present in the execution chamber during the entire process of the execution by lethal injection of Andrew DeYoung in order to monitor Mr. De Young's physiological responses throughout the execution, and to accompany the body after the execution until such time as it is released by the Georgia Department of Corrections; and,

It is FURTHER ORDERED that the respondent allow a qualified expert designated by the petitioner to be present at any autopsy of the body or other testing of the body, to the extent such autopsy or testing is done under the control of the respondent.

In conducting the acts specified above, the petitioner, and those experts designated by him, are hereby made subject to the following restrictions:

No videotaping shall take place if Mr. DeYoung, in consultation with his counsel, revokes his consent prior to his execution;

The designated experts shall not do anything which interferes with the execution process;

The videotaping shall be done in such a manner that it does not identify any of the individuals involved other than the Mr. DeYoung. In the event that the videographer must record an individual other than Mr. DeYoung to fully capture

Walker v. Humphrey, 08-V-1088

Page 7

the lethal injection execution process the videographer must blur or obfuscate those faces or identifying marks immediately after recordation ceases;

The videographer may not disclose at any time, for any reason, or in any manner, the physical layout of the prison or the precise location of the execution chamber.

The respondent shall be allowed to designate its own videographer to record the execution process, if he wishes to do so;

The respondent may designate an individual to observe the petitioner's designated videographer during any process of blurring or obfuscating identifying features of persons present during the execution, if he wishes to do so;

Immediately after recording the execution the videographer or his identified designee shall submit the recording to the Clerk of Court, under seal;

The Clerk of Court will maintain custody of the recording and shall not permit its sealed container to be opened without the specific, express permission of the Court; and,

No copies of the recording will be made without the specific, express permission of the Court.

SO ORDERED, this ___18___ day of July, 2011.

JUDGE BENSONETTA TIPTON LANE
Superior Court of Butts County
Sitting By Designation

Walker v. Humphrey, 08-V-1088

Page 8

Copies faxed and mailed by Court to:

Mr. Brian Kammer
Ms. Laura M. Berg
Ms. Kirsten Salchow
Georgia Resource Center
303 Elizabeth St., N.E.
Atlanta, GA 30307
Phone: 404-222-9202
Fax: 404-222-9212

Mr. Richard Tangum
Office of the Attorney General
40 Capitol Sq., S.W.
Atlanta, GA 30334-1300
Phone: 404-651-9298
Fax: 404-651-6459

Ms. Angelique McClendon
Office of the Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334
Phone: 404-656-3355
Fax: 404-463-8864

Walker v. Humphrey, 08-V-1088