# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

CAREY DALE GRAYSON,    )
         )
    Plaintiff,        )
         )
v.         )   CASE NO. 2:24-cv-00376-RAH
         )
STEVE MARSHALL, *et al.*,    )
         )
    Defendants.     )

### AFFIDAVIT OF JOHN Q. HAMM

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared John Q. Hamm who being known to me and being by me first duly sworn, deposes and says under oath as follows:

1. My name is John Q. Hamm. I am over nineteen years of age. I am the Commissioner of the Alabama Department of Corrections ("ADOC"). I am competent to execute this affidavit.

2. I am aware of Plaintiff Carey Grayson's motion seeking an order requiring ADOC to video record the execution of Alan Eugene Miller on September 26, 2024. I am submitting this affidavit to make the Court aware of very specific concerns I have about the effect that granting Grayson's request would have on the ADOC.

3. First, Alabama law places statutory limits on those who can attend an execution. A videographer does not fit within any category of person authorized to attend an execution under state law. Additionally, requiring me or my designee to conduct a recording is not in keeping with my duties or those of other ADOC employees.

4. Second, there are only three viewing rooms at the execution facility at the W.C. Holman Correctional Facility. One room is set aside for the victim's representatives and family to witness the execution of sentence. Due to the solemn nature of this aspect of a judicial execution, and the request for anonymity that oftentimes comes from victim representatives attending the execution, a camera and videographer would not be placed inside this room.

5. I occupy another witness room with my legal counsel and deputy commissioners. A member of Governor Ivey's staff will often attend and witness an execution from this room. This is the room described in the protocol that requires an open phone line to the Office of the Alabama Attorney General. From this room, I can communicate with my own legal staff, the Governor's legal staff, the Attorney General, and the Warden of Holman Correctional Facility. Privileged conversations can take place in this room, including my seeking legal advice from my departmental counsel, the Attorney General, or the Governor's Office. I can also confer with the Warden or others from this viewing room regarding operational decisions. I would

not permit a camera into this room for fear that it would potentially capture conversations covered by the attorney-client privilege or executive privilege and out of fear that the camera might prevent my staff and other state employees — who are entitled to protection under the deliberative process privilege — from offering me frank and candid advice.

6. The final witness room is set aside for witnesses identified by the condemned inmate, as well as members of the media. Alan Miller has identified six statutory witnesses for his execution. Although ADOC's solicitation for media representatives has not been announced, that process is about to begin and will not likely be complete until September 19, 2024, at the earliest. Between statutory media and condemned inmate witnesses, there is not likely to be room in this third viewing room to accommodate a camera and/or videographer, nor would having a camera in the room be appropriate. The members of the media witnessing the execution are present for the purpose of providing an account of the execution to the public. Their identities are not kept confidential and they can be contacted at any time after the event.

7. ADOC's protocol does not envision the presence of a video camera, and the logistical changes that would be required to accommodate the recording of an execution cause me concern. For example, members of the execution team have primary responsibilities in addition to secondary postings. A primary responsibility

of team members is the extraction of the condemned inmate from the holding cell and escorting him to the execution chamber for the execution of sentence. Until this task is complete, members of the execution team responsible for providing security and escort for statutory witnesses are unavailable for those tasks. The curtains covering the windows of the viewing rooms are drawn until the start of the execution of sentence. This means that there would be no way to accommodate a videographer or to set up a video camera prior to the transport of the condemned inmate into the execution chamber and, even if that obstacle could be overcome, the video camera would not be able to be set up because the curtain over the viewing window would be closed.

8. Because the viewing rooms are physically separated from the execution chamber, a microphone and speakers are used to permit statutory witnesses to hear the reading of the execution warrant and any final statement made by the condemned. After these steps are performed, however, the microphone is turned off and stowed. Thus, filming the execution of a judicial sentence of death from a witness room would not produce audio of the procedure, while it would capture any expressions of grief or sadness expressed by the condemned inmate's witnesses.

9. Additionally, a camera placed in a viewing room could not be focused solely on Miller or on Miller's face. ADOC has grave security concerns related to

the production of any recording of members of the Execution Team, and support personnel, performing their duties inside of the execution chamber.

10. Plaintiff's motion also requests that the pulse oximeters be videotaped. In order to comply with this part of the request, there would have to be a second camera in the execution chamber focused on the pulse oximeters. The camera itself would likely have to be placed where it might impede the actual execution itself and may block the Warden's view of the chamber.

11. Because Holman Correctional Facility is a maximum-security facility, where the vast majority of Alabama's death row population is housed, certain security precautions must be taken on the date a judicial sentence of death is executed. These security precautions require additional manpower beyond what is organic to the facility. Because ADOC already must draw additional personnel from other facilities, there is no excess personnel to assign to a videographer, who also would have to undergo the same security screening undergone by the statutory witnesses.

12. The ADOC has consistently prohibited recording equipment at executions. The prohibition is set out in an Administrative Regulation and restated each execution in the published Media Advisory.

13. The execution of a judicial sentence of death is among the most solemn duties performed by the Alabama Department of Corrections. This is one reason why

correctional personnel assigned to the execution chamber carry out their duties in a slightly modified version of "Attention" or "Parade Rest." As the State official responsible for setting policy for the Alabama Department of Corrections, I find that the act of recording the execution of a judicial sentence of death would severely undermine the solemnity of the occasion. It would also create significant, unnecessary security risks and may deter the families of victims from attending executions.

I swear and affirm that the above information is true and accurate to the best of my knowledge.

Further affiant sayeth not.

John Q. Hamm

Subscribed and sworn to before me on this the 12 day of September 2024.

_____
NOTARY PUBLIC

My commission expires 11-17-25.