## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

IN RE:                              )
ALABAMA NITROGEN HYPOXIA ) Case No.   2:24-cv-00111-ECM
PROTOCOL LITIGATION             )

**STATE OF ALABAMA**
**COUNTY OF MONTGOMERY**

### AFFIDAVIT OF GREG LOVELACE

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Greg Lovelace who being known to me and being by me duly sworn, deposes and says under oath as follows:

1.     My name is Greg Lovelace. I am over nineteen years of age. I am the Commissioner of the Alabama Department of Corrections ("ADOC"). I am competent to execute this affidavit.

2.     During Commissioner Hamm's tenure as the Commissioner, I served as the Chief Deputy Commissioner of ADOC. I have reviewed his September 12, 2024, affidavit related to the *Grayson* litigation. I adopt it in its entirety and attest that it reflects the current stance of ADOC as to Plaintiffs' requests. In addition, I provide the following additional information.

1

3.      I am aware of Plaintiffs' motion seeking an order requiring ADOC to record the execution of Jeffery Lee on June 11, 2026. I am submitting this affidavit to make the Court aware of very specific concerns I have about the effect that granting Plaintiffs' request would have on the ADOC.

4.      In order to logistically comply with Plaintiffs' request to record Lee's execution, at least four video cameras would need to be used—three in the execution chamber and one in the control room.

5.      Plaintiffs first demand is that ADOC video record the execution from inside the chamber with the entirety of Lee's body framed from head to toe with a clear view of his face. As Commissioner Hamm stated before, video recording from the viewing rooms would not be possible. Recording the execution inside the execution chamber would require a camera on a tripod to be placed on one side of Lee (in order to capture his whole body and face.) A camera and tripod would serve to obstruct the view of one of the two viewing rooms—either (1) the victims' representatives and family, or (2) the witnesses identified by the condemned inmate and the media.

6.      Plaintiffs also demand that the pulse oximeters be video recorded during the execution. To meet this demand, two cameras on tripods would have to be placed in the execution chamber focused on the two pulse oximeters. The

2

appropriate camera angle would be difficult to achieve because it would require a clear recorded image without significant glare. The cameras would be behind the arms of the condemned inmate, and the tripods would have to be tall enough to provide the correct angle. The appropriate angle would be difficult to achieve to eliminate the glare caused by the overhead lights. Additionally, the camera recording the pulse oximeter on Lee's left side may impede the Execution Team Captain's ability to stand in his required location and to move freely as needed to accomplish his required duties. If the Team Captain were standing in the proper location and looking at the pulse oximeter, as is his duty, his head could block the camera's view. The second camera would be at risk of impeding the Team Captain's duties as well. The cameras may also risk impeding the Warden's movements when he enters the chamber to read the warrant and then to allow the inmate to provide his last words.

7.    The last demand for video recording is that the EKG reading be recorded. Plaintiffs fail to understand that such a recording would require a video camera in the control room, not in the chamber. There are limited conversations at times during executions; the Warden, as the statutory executioner, must be allowed to speak freely without recordation.

8.    As stated in Commissioner Hamm's affidavit, Alabama law places statutory limits on those who may attend an execution. A videographer does not fit

within any category of person authorized to attend an execution under state law. Additionally, requiring me or my designee to conduct a recording is not in keeping with my duties or those of other ADOC employees. Plaintiffs' counsel asks to be allowed to take these actions in the alternative. ADOC will not allow Plaintiffs' counsel to set up or record an execution or to be present in the execution chamber or control room.

9.      ADOC's protocol does not envision the presence of a video camera, which would be intrusive. The logistical changes that would be required to accommodate the recording of an execution with four video cameras cause me concern. For example, members of the execution team have primary responsibilities and secondary postings. One such primary responsibility is the extraction of the condemned inmate from the holding cell and escorting him to the execution chamber for the execution of sentence. Until this task is complete, members of the execution team responsible for providing security and escort for statutory witnesses are unavailable for those tasks. This means that there would be no way to accommodate a videographer or to set up multiple video cameras prior to the transport of the condemned inmate into the execution chamber. Even if the cameras and tripods were set up in the chamber prior to the transport of the inmate, there are many actions and people required to secure him on the gurney, place the EKG leads, secure the mask,

and conduct required checks. The cameras would be obstacles impeding the ability to complete these tasks.

10.    Additionally, a camera with a wide view of the entirety of Lee's body could record members of the execution team. ADOC has grave security concerns related to the production of any recording of members of the execution team and support personnel performing their duties inside of the execution chamber. Critically, the same is true of a camera inside the control room.

11.    Because Holman Correctional Facility is a maximum-security facility, where the vast majority of Alabama's death row population is housed, certain security precautions must be taken on the date a judicial sentence of death is executed. These security precautions require additional manpower beyond what is typical in the facility. Because ADOC already must draw additional personnel from other facilities, there is no excess personnel to assign to a videographer, who also would have to undergo the same security screening undergone by the statutory witnesses, or to setting up four video cameras.

12.    ADOC has consistently prohibited recording equipment at executions. The prohibition is set out in an Administrative Regulation and restated each execution in the published Media Advisory.

13.  Plaintiffs also demand the placement of an EEG on Lee's head during the execution to continuously collect and preserve data. ADOC does not currently own an EEG that could be used for this purpose, and the execution team members are not trained on the use of an EEG. Although Plaintiffs' expert, Dr. Heath, opines that the EEG leads will not impact the seal of the full-face respirator mask used for executions, ADOC would be required to validate this assertion. Lastly, given the configuration of the execution chamber and the control room, setting up an EEG machine in an appropriate position could prove problematic.

14.  ADOC has a penological interest in not creating additional records for a judicial execution. Judicial executions are not scientific experiments or studies, nor are they medical procedures. ADOC's EKG machines used for executions are not presently configured to create, store, or print data. ADOC declines to change the settings on the EKG machines, to purchase, train, and create data on an EEG machine, or to annotate the time the nitrogen begins to flow.

15.  ADOC has agreed, however, to preserve any pulse oximeter data generated during Lee's execution.

16.  The execution of a judicial sentence of death is among the most solemn duties performed by the ADOC. This is one reason why correctional personnel assigned to the execution chamber carry out their duties in a slightly modified

version of "Attention" or "Parade Rest." As the State official responsible for setting policy for the Alabama Department of Corrections, I find that the act of recording the execution of a judicial sentence of death would severely undermine the solemnity of the occasion. The presence of multiple video cameras on tripods in the chamber creates exactly the opposite image: one of reality TV, a media circus, or a scientific experiment. It would also create significant, unnecessary security risks and may deter the families of victims from attending executions.

Further affiant sayeth not.

I swear and affirm that the above information is true and accurate to the best of my knowledge.

_Greg Lovelace_

Greg Lovelace

Subscribed and sworn to before me on this the 5 day of June 2026.

_Lisa D. Clifton_

NOTARY PUBLIC

My commission expires 02/27/28.

7