IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAREY DALE GRAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-00376-RAH |
| | ) | |
| JOHN Q. HAMM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is Plaintiff's *Motion for Order Permitting Execution of Alan Miller to be Videotaped* (doc. 50) (the "Motion") filed on September 6, 2024. Plaintiff asserts that pursuant to Fed. R. Civ. P. 1, 26, and 34, the Court should permit him, or his designee, to videotape the upcoming Alan Miller execution so that this evidence is preserved for use in Plaintiff's Eighth Amendment challenge to his own execution set for November 21 or 22, 2024. For the reasons below, the Motion is due to be denied.

## DISCUSSION

### I.   Procedural Issue with the Motion[1]

A district court has "wide discretion in discovery matters[.]" *Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009). This is one such matter.

Plaintiff's Motion is premature. "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a

---

[1] Defendants also argue that the Motion is due to be denied based on Plaintiff's failure to comply with the Court's Briefing Order (doc. 16). (Doc. 56 at ¶¶ 1–2.) Though it appears that Plaintiff has not strictly complied with the Court's Briefing Order, the Court elects not to deny the Motion on this basis.

proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). While the Advisory Committee Notes acknowledge it "will be appropriate in some cases" for discovery to begin earlier, the Motion here is not one for expedited discovery. FED. R. CIV. P. 26 advisory committee's note to 1993 amendment; (*see* Doc. 54 (Pl.'s *Motion to Expedite Discovery*)). It is, instead, a motion based on Rule 34(a)(2), which allows a party to request "entry onto . . . land or . . . property . . . controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property . . . or operation on it." Fed. R. Civ. P. 34(a)(2); (*see* Doc. 50 at 3–4). Requests of this sort, however, still must comply with Rule 26(b). Fed. R. Civ. P. 34(a). As there is still a pending Motion to Dismiss, and since the parties have not conducted a Rule 26(f) conference, the Motion is premature and therefore due to be denied.

## II.     Further Considerations

Procedural concerns are not the only grounds for which the Motion is due to be denied. Plaintiff argues that recording the upcoming execution would assist in his Eighth Amendment challenge to the nitrogen hypoxia protocol because there are conflicting reports as to the method's humaneness based on what transpired during the recent Smith execution. (Doc. 50.) While this request may have some relevance to the current proceeding, there are other considerations that have far more weight and importance.

## A.     Alabama Law and ADOC Policy Prohibit the Requested Relief

In some situations, "a court, in enforcing federal law, may order state officials to take actions despite contravening state laws." *Hook v. Arizona*, 907 F. Supp. 1326, 1336 (D. Ariz. 1995) (quoting *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982) (affirming district court order compelling state officials to pay 42 U.S.C. § 1988 attorney fees pursuant to Fed. R. Civ. P. 70 where the state legislature refused to

2

appropriate funds and relying on *Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, *modified sub nom. Washington v. United States*, 444 U.S. 816 (1979))); *see also United States v. Jefferson Cnty.*, Nos. CV–75–S–666–S, CV–74–S–17–S, CV–74–S–12–S, 2008 WL 9391105, at *8 (N.D. Ala. Sept. 12, 2008) ("[A] state statute that thwarts a federal court order enforcing federal rights cannot survive the command of the Supremacy Clause." (quoting *Reynolds v. Ala. Dep't of Transp.*, No. 85CV665, 2006 WL 3924790 (M.D. Ala. Dec. 6, 2006))).  But here, the relevant federal rule that Plaintiff invokes is one of discovery — something that falls within the purview of the Court's "wide discretion."  *Bradley*, 556 F.3d at 1229, 1231 (affirming district court's denial of additional discovery in a § 1983 suit seeking access to evidence the death-row plaintiff hoped to use in his separate habeas proceeding); *cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

Alabama law *expressly* limits those individuals allowed to witness an execution to those performing or assisting in the execution itself, the Commissioner of the Alabama Department of Corrections and legal counsel, medical personnel, a spiritual advisor, the prison's chaplain, reporters approved by the warden, up to six "relatives or friends" requested by the condemned, and up to eight family members of the victim.  ALA. CODE § 15-18-83(a) ("The following persons may be present at an execution *and none other* . . . ." (emphasis added)).

Alabama Department of Corrections ("ADOC") regulations also prohibit recording devices during an execution. (Doc. 56-1 at ¶ 12; *see* ADOC Admin. Regs. 005, §V(H)(4)  (Mar. 21, 2023) ("Electronic, photographic, mechanical, or artistic paraphernalia will not be permitted in the execution witness room.").)

Thus, by both Alabama law and ADOC regulation, no party or person has access or a right to do what Plaintiff proposes here. As such, the Court refuses to impose upon this proceeding a request that contravenes Alabama law and ADOC regulations.[2]

**B.     Security and Solemnity Concerns**

Next, there exists real security and solemnity concerns. First, federal courts have long given considerable deference to substantial governmental interests, such as security and safety inside a prison. *Rice v. Kempker*, 374 F.3d 675, 680–81 (8th Cir. 2004) ("[S]ubstantial governmental interests involving the safety and security of the prison, a set of interests of the sort that long has been given considerable deference by federal courts."); *see also Turner v. Safley*, 482 U.S. 78, 84–85 (1987) ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.").

A prison is an institution that requires utmost security to protect inmates, the public, and prison staff. Recording an execution (that is, the entirety of the proceeding) likely will capture many of those persons involved—the execution team members, witnesses, media members, medical personnel, or other necessary security staff—and what they do, which would create a permanent record of those individuals and the proceedings within the chamber. The fact that "ADOC has grave security concerns related to the production of any recording of members of the Execution Team, and support personnel, performing their duties inside of the execution chamber" cannot be understated, especially since many of these individuals agree to serve on the execution team with the understanding that the proceedings will not be

---

[2] Indeed, to allow such relief here, would likely encourage condemned inmates to make future requests to have their own—or other condemned inmates'—executions videotaped under the guise of the Eighth Amendment.

recorded and that their identities will be protected at all costs. (Doc. 56-1 at ¶ 9.) Security concerns not only exist for the individuals involved and present at the execution proceeding, but security concerns also arise for the maximum-security facility and its other staff (not involved in the execution). And further, the additional burden of accommodating an additional person and his equipment would only add to that existing concern. (*See id.* at ¶ 11 (discussing the additional security precautions and additional manpower that is required during an execution and how each person must undergo security screening).)

Finally, an execution is one of the most solemn of a state's proceedings. *See Gregg v. Georgia*, 428 U.S. 153, 183 (1976) (plurality opinion) (explaining that the death penalty is "an expression of society's moral outrage at particularly offensive conduct"). And recording Mr. Miller's execution would "severely undermine the solemnity of the occasion." (Doc. 56-1 at ¶ 13.) This alone strongly weighs against granting the Motion.[3]

## C.    Consent

Another important factor, the Court notes, is that there is no direct evidence that Mr. Miller consents to anyone, let alone the Plaintiff here, videotaping his execution. Mr. Miller is not a party to this litigation. And his privacy rights are of significant concern in the determination of whether to allow the videotaping of his execution. *See Campbell v. Blodgett*, 982 F.2d 1356, 1358–60 (9th Cir. 1993) (affirming district court's decision to refuse execution recording after considering

---

[3] In his Motion, Plaintiff suggests that the video camera will only document the same things that the witnesses will view from the witness room. (Doc. 50 at 6–7.) That is incorrect, as Plaintiff seeks to videotape from the instant Mr. Miller enters the chamber until the end of the execution as well as to videotape the readings on certain devices such as a pulse oximeter. (*Id.* at 7.) Under the protocol, non-ADOC witnesses do not view the entirety of the proceeding or the displays of any devices inside the chamber. (Doc. 56-1 at ¶ 7 (explaining that the witness windows are covered until the execution begins).)

condemned prisoner's violation of privacy, amongst other considerations, where the prisoner did not consent).

In support of his request, Plaintiff cites to a district court order in *Fierro v. Gomez*, No. C-92-1482-MHP (N.D. Cal. Apr. 21, 1992), ECF No. 33, where a district court ordered the videotaping of a condemned prisoner's execution where the prisoner *consented* to the recording. (Doc. 50-2 at 4.)  But here, there is no such consent or evidence other than a vague statement referenced in a footnote.  In that footnote, Plaintiff states merely that "Mr. Miller, *through his counsel*, has no objection."  (Doc. 50 at 2 n.3 (emphasis added); Doc. 50-1 at 3 (email exchange between parties).)  That one-line hearsay statement from an attorney on behalf of Mr. Miller does not carry the same weight, authenticity, or credibility as a signed document with Mr. Miller's own signature.  Because of the issue at hand, much more is required for the Court to strongly consider any assertion that Mr. Miller has knowingly and willingly consented to have his execution videotaped.  As such, the Court does not find that Mr. Miller has expressly consented to such an invasion of his privacy.  Mr. Miller, a condemned prisoner with a looming execution date, still deserves privacy and dignity during the proceeding.

## D.   Delay on Part of Plaintiff

The Court also considers Plaintiff's delay in filing the Motion.  The Court held a telephone status conference with the parties on August 23, 2024.  (Doc. 33.)  At that conference, Plaintiff made no mention of his desire to videotape the Miller execution.  Instead, Plaintiff waited to file the Motion until three weeks later, in the same month as the scheduled Miller execution—the intended subject of the Motion.  The little amount of time that Plaintiff allowed between filing the Motion and Mr. Miller's execution is concerning to the Court, as there appears to be a consistent pattern of unnecessary delay by the Plaintiff.

6

## CONCLUSION

For all of these reasons, Plaintiff's Motion (doc. 50) to videotape the execution of Alan Miller is due to be and is hereby DENIED.

**DONE** and **ORDERED** on this the 19th day of September 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE