IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

***In re. Alabama Nitrogen Hypoxia Protocol Litigation***

| | | |
|---|---|---|
| DAVID WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-111-ECM |
| | ) | |
| GREG LOVELACE, Commissioner, | ) | *DEATH PENALTY CASE* |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF DAVID WILSON'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

BERNARD E. HARCOURT
Alabama Bar No. ASB-4316A31B

Columbia Law School
Jerome Greene Hall, Suite 603
435 West 116th Street
New York, New York 10027
Telephone (212) 854-1997
E-mail: beh2139@columbia.edu

Dated: September 9, 2026

**PLAINTIFF DAVID WILSON'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 16(b) and 15(a), Plaintiff David Wilson respectfully submits this motion for leave to amend his complaint. The proposed amendments all result from this Court's ruling in Mr. Jeffery Lee's case, rendered final when this Court denied Mr. Lee's motion to amend the judgment on July 22, 2026. *Lee v. Lovelace*, No. 2:25-cv-00680-ECM, Doc. 209 (M.D. Ala. July 22, 2026). Although Mr. Lee has since taken an expedited appeal, Plaintiff does not believe that the Eleventh Circuit or the U.S. Supreme Court will disturb the specific legal conclusions and factual findings on which Plaintiff's amendments rely. Therefore, Plaintiff's motion for leave to amend his complaint is not premature, and is filed now to avoid any possibility of delay. Plaintiff attaches to this motion a draft of his proposed amended complaint, pursuant to M.D. Ala. Civ. R. 15.1. *See* Appendix A (draft of amended complaint).

In support of the motion, Plaintiff states the following:

1. Mr. Wilson's original complaint was filed on February 15, 2024, immediately following the first execution of a human being by nitrogen gas asphyxiation. Doc. 1.

2. Pursuant to Fed. R. Civ. P. 15(a), Plaintiff filed his first amended complaint on March 31, 2025, following this Court's denial of Defendant's first motion to dismiss. Doc. 35.

3. On June 9, 2026, this Court held that the Alabama nitrogen gas protocol causes superadded pain in violation of the Eighth Amendment to the U.S. Constitution and that the firing squad method is a feasible, readily available, and pain-reducing alternative to Alabama's nitrogen gas protocol. *Lee v. Lovelace*, No. 2:25-cv-00680-ECM, 2026 WL 1664095, at *2 (M.D. Ala. June 9, 2026).

4. Following an emergency appeal by Defendant to the Eleventh Circuit, which was later withdrawn, this Court's order became final on July 22, 2026, when the Court denied Mr. Lee's motion to amend the judgment. *Lee v. Lovelace*, No. 2:25-cv-00680-ECM, Doc. 209 (M.D. Ala. July 22, 2026).

5. Accordingly, Plaintiff now moves to amend his complaint, first, to plead firing squad as a feasible and readily available alternative to Alabama's nitrogen gas protocol that significantly reduces the risk of severe pain, consistent with this Court's order in *Lee* and satisfying the second prong of the test established under *Baze v. Rees*, 553 U.S. 35 (2008) and *Glossip v. Gross*, 576 U.S. 863 (2015) ("the *Baze-Glossip* test"); and second, to update the list of drugs currently used in medical aid-in-dying ("MAID").

6. Plaintiff has conferred with Defendant, who opposes the first proposed amendment, but does not oppose the second.

## I. THE FIRING SQUAD AMENDMENT

7. Because the scheduling order deadline for amending pleadings has passed, Plaintiff moves to amend his complaint under the two-step standard set forth under Fed. R. Civ. P. 16(b) and 15(a) and Eleventh Circuit caselaw: Plaintiff will establish first that he is diligent in seeking this amendment, which could not reasonably have been sought before the deadline set by the scheduling order and thus satisfies the demanding "good cause" standard under Rule 16(b)(4); and, second, that he satisfies the more liberal Rule 15(a) standard, which focuses on the interests of justice and the lack of prejudice to the Defendant. *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998) ("However, because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."); *Foman v. Davis*, 371 U.S. 178 (1962).

***Step #1: Rule 16 Good Cause Requirement***

8. Rule 16(b) requires Plaintiff to demonstrate that he has been diligent, and therefore has "good cause" for requesting leave to amend after the scheduled deadline has passed, because the original schedule "cannot be met despite the

diligence of the party seeking the extension." *See Sosa,* 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note); *Romero v. Drummond Co*., 552 F.3d 1303 (11th Cir. 2008); *Nobles v. Rural Cmty. Ins. Servs*., 303 F. Supp. 2d 1279 (M.D. Ala. 2004).

9. Plaintiff satisfies this demanding standard. On Plaintiff's theory of the case, he could not have proposed the firing squad as an alternative method to the Alabama nitrogen hypoxia execution protocol until it was held to be an alternative method by a federal court in Alabama, which occurred after the scheduling order deadline.

10. In this § 1983 lawsuit, Plaintiff maintains that the federal constitutional requirement that he propose a method of execution and make up an execution protocol is a form of torture that violates *jus cogens* under international law. Plaintiff contends that this is no different than forcing someone to dig their own grave, which is recognized to be a form of torture under international law. *See* Plaintiff's First Amended Complaint, Doc. 35 ¶ 75 and Count III ¶¶ 92-115. Plaintiff alleges in his complaint that "Torture is a crime under customary international law, belonging in the category of *jus cogens*" and that "forcing someone to dig their own grave is considered such a form of torture." Doc. 35 ¶ 75; *see also* ¶ 74 ("The Nazis forced Jewish persons to dig their own graves. More recently, Russian armed forces were accused of forcing a Ukrainian woman to dig her own grave. According to Amnesty

International, such practices are common in North Korean prisons today. But the practice is roundly understood by the international community as a form of torture for the executed person and a violation of international law.") For this reason, Plaintiff pleaded a count in his complaint (Count III), which states that "From the perspective of the death row prisoner the requirement that a client must develop his own execution protocol—despite the fact that there is no rational relation between the constitutionality of one method of execution and the existence of an alternative method—forces a person to participate in their own execution. It is the moral equivalent of forcing someone to dig their own grave, which has been found to be a form of torture under international law." Doc. 35 ¶ 108 (Count III). Plaintiff has been clear that his legal position is that the pleading requirement corresponding to the second prong of the *Baze-Glossip* test violates *jus cogens*.

11. Plaintiff recognizes that this Court dismissed this count of the complaint (Count III). Plaintiff understands that this Court "concluded that the Plaintiff had abandoned Count 3." Doc. 73 at page 3 ("the Plaintiff's arguments continued to focus almost exclusively on the *jus cogens* norm of international law prohibiting torture and whether the Plaintiff can bring such a claim in federal court pursuant to § 1983."). At the hearing, Plaintiff indeed focused on the question of *jus cogens* because Count III and Count IV involved *jus cogens* and that is a novel legal issue. But again, Plaintiff recognizes that the Court has dismissed Count III. Plaintiff

objected at the hearing to the dismissal of Count III and preserved the issue for appeal.

12. Even though Count III is presently dismissed, though, Plaintiff has not and will not propose a novel method of execution or make up an execution protocol. Plaintiff does recognize that under the *Baze-Glossip* test, he must point to an alternative method of execution to the Alabama protocol. So, Plaintiff has and will only plead that an alternative method that *has been found to be acceptable* by a federal court in Alabama. In other words, to satisfy the second prong of the *Baze-Glossip* standard, Plaintiff will only plead an alternative *that has been ruled* to be a lawful alternative to the Alabama protocol.[1]

[1] Plaintiff also preserves the legal argument that once a federal court in the Middle District of Alabama has found that there is a feasible alternative to the Alabama nitrogen protocol, such as the firing squad, other plaintiffs challenging the same nitrogen protocol have already satisfied the second prong of *Baze-Glossip*. This argument is supported by the two main reasons underlying the alternative method requirement. First, procedurally, the Supreme Court has clearly stated that the alternative method requirement established by *Baze-Glossip* serves to ensure that method of execution challenges are properly brought under §1983 and are not federal habeas petitions in disguise. Without a way to delineate the two types of actions, §1983's broad authorization of lawsuits "against state officials for the 'deprivation of any rights' secured by the Constitution" may easily swamp the core of habeas. *Nance v. Ward*, 597 U.S. 159, 167 (2022). Such a distinction is necessary to maintain, because the vehicle for the challenge determines the procedural requirements governing the litigation and the scope of relief available to the prisoner. An action must be brought in habeas if "granting the prisoner relief would necessarily prevent [the State] from carrying out its execution." *Nance*, 597 U.S. at 168. In two method-of-execution cases prior to the establishment of the contemporary *Baze-Glossip* requirements, the Court found that the cases were

13. It is for that reason that, in his existing complaint, Plaintiff has pleaded that medical-aid-in-dying (MAID) has already effectively been found to be a possible alternative to the Alabama protocol. In his complaint, Plaintiff wrote:

> The United States District Court for the Northern District of Alabama already deemed this alternative to be a lawful alternative method of execution to lethal injection. *See Hamm v. Dunn,* No. 2:17-cv-02083-

---

properly brought under §1983 rather than habeas because "each prisoner had said enough to *leave the Court convinced that alternatives to the challenged procedures were available*. *And that made the difference in both cases*." *Nance*, 597 U.S. at 168 (emphasis added). And ever since prisoners have been required to plead an alternative method of execution, contemporary method of execution challenges "now more than ever, point[] toward §1983." *Id*. at 169. Thus, the requirement that an alternative be pled ensures that method-of-execution challenges do not "necessarily prevent" the state from killing the Plaintiff and therefore are properly brought under §1983. Here, because this Court has already found that firing squad is a feasible alternative to nitrogen gas in the state of Alabama, Mr. Wilson's §1983 method of execution challenge already does not "necessarily prevent" the state from killing him. It may kill him by firing squad regardless of what he now pleads. Second, substantively, the Supreme Court has held that the alternative method requirement exists because "[d]istinguishing between constitutionally permissible and impermissible degrees of pain, *Baze* and *Glossip* explained, is a *necessarily* comparative exercise" and cannot be done by examining the challenged method "in a vacuum." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019). Therefore, under the Supreme Court's reasoning in *Baze-Glossip*, the alternative method is necessary as a foil to the challenged method. In *Lee v. Lovelace*, the nitrogen gas protocol was found to be unconstitutional *because* firing squad was proven to be a feasible and less painful alternative. Applying the *Baze-Glossip* test, the availability of firing squad revealed the nitrogen gas method's unconstitutionality. Once the unconstitutionality of nitrogen gas has been made visible by a feasible alternative, a court may not thereafter turn a blind eye. Therefore, given both the procedural and substantive rationales underlying the *Baze-Glossip* alternative method requirement, a plaintiff does not even need to plead the firing squad as an alternative for the reviewing court to find that the firing squad satisfies the second prong of the *Baze-Glossip* standard.

> KOB (N.D. Ala. Feb. 6, 2018), Doc. 30, *reversed on other grounds*. The evidence regarding this alternative method has already been presented to the federal court in *Hamm v. Dunn,* No. 2:17-cv-02083-KOB (N.D. Ala. Feb. 6, 2018) and is incorporated herein by reference. *See* Appendix D (Hearing on oral injection on January 31, 2018, cross examination starting at page 106, direct examination starting at page 113); and Appendix E (Court order on oral injection alternative). *If the Court should require an alternative method, this is one that has already been approved by a federal judge in Alabama.*

Doc. 35 at ¶ 77 (emphasis added).

14. Plaintiff did not previously plead firing squad because it *had not been found* by a federal court in Alabama to be a possible alternative to the Alabama execution protocol.

15. So, when this Court ruled that firing squad satisfies the second prong of *Baze-Glossip* a few weeks ago, in a finalized order denying a motion to amend the judgment on July 22, 2026, Plaintiff could now plead, consistent with his theory of the case that he has preserved for appeal, firing squad as a possible alternative method found feasible and available by a federal court in Alabama.

16. That is precisely how Plaintiff formulated his papers in his original proposed second amended complaint filed on August 25, 2026:

> 80. Moreover, on June 9, 2026, this Court ruled that the "firing squad is feasible, readily implemented, and significantly reduces the substantial risk of serious harm posed by the Protocol." *Lee v. Lovelace*, 2026 WL 1664095, at *2 (M.D. Ala. June 9, 2026). Thus, this Court has already found that the firing squad is an alternative method that satisfies the second prong of the *Baze-Glossip* standard.

> 81. Mr. Wilson hereby incorporates verbatim the alternative method that was pleaded by Mr. Jeffery Lee in his complaint and that this Court already found satisfies the second *Baze-Glossip* prong:
>
> [Paragraphs 82-84 verbatim from Jeffery Lee's complaint].
>
> 86. This constitutes the exact alternative that this Court reviewed and found to be a feasible alternative in the *Lee v. Lovelace* decision. As this Court described it: "First, a member of the execution team would restrain the condemned inmate to a chair placed "between stacked sandbags." (Doc. 40 at 20, para. 71). Next, an execution team member would place a hood over the inmate's head and a target over his heart. (*Id*.). The firing squad team leader would then direct the execution team to stand at attention twenty-one feet from the condemned inmate. (*Id*. at 21, para. 72). Five trained marksmen armed with .30-caliber rifles would take aim and fire. (*Id*.). If, after the first volley, the condemned "is obviously conscious," the warden "shall immediately instruct the firing squad team leader to prepare the weapons and fire again." (Doc. 40 at 21–22, para. 72; *see also* doc. 173-46 (Utah's protocol))." *Lee v. Lovelace*, 2026 WL 1664095, at *4 (M.D. Ala. June 9, 2026).
>
> 87. Mr. Wilson is not saying that he *wants* to be executed by this method, and still contests the obligation placed on the prisoner to propose his own method of execution, but he alleges that it is an alternative that has been found to satisfy the *Baze-Glossip* standard.

Doc. 156-1 at ¶¶ 80-86 (emphasis in original).

17. Consistent with his prior arguments, Plaintiff is neither proposing a novel method nor drafting a protocol for his own execution. Instead, he is pleading an alternative method that this Court has already ruled satisfies the *Baze-Glossip* standard. Plaintiff could not do this prior to this Court's order in *Lee* without contradicting his own argument preserved for appeal, and therefore could not amend prior to the expiration of the scheduled deadline.

18. Thus, Plaintiff has been diligent and has not delayed filing his motion to amend. He *could not have filed* this amendment, on his theory of the case, *before* a federal court in Alabama ruled that the firing squad was a possible alternative to the Alabama protocol. He could not file any earlier without undermining and effectively waiving his legal argument on *jus cogens*. Plaintiff is willing to accept the risk of filing this Motion early, prior to the Eleventh Circuit ruling on Mr. Lee's motion to amend the judgment, because he appreciates the need for maximum diligence and does not expect that ruling to disturb this Court's findings on the availability or feasibility of firing squad as an alternative method.

19. For this reason, Plaintiff's motion to amend satisfies Rule 16(b). As this Court has previously held, "the relevant inquiry under Rule 16(b) is whether the *schedule* 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Method Pharm., LLC v. H-2 Pharma, LLC*, No. 2:20-CV-753-ECM, 2023 WL 8483491, at *2 (M.D. Ala. Dec. 7, 2023) (citation modified) (finding good cause for plaintiff to amend complaint to add a defendant when information supporting the amendment was not disclosed until *after* scheduling order's amendment deadline); *see also Carter v. Montgomery Housing Authority*, No. 2:09-CV-971-MEF-CSC, 2010 WL 934205, at *2 (M.D. Ala. Mar. 12, 2010) (finding that plaintiffs were diligent in moving to amend complaint to add a request for attorney's fees when law restricting attorney's fees was lifted after the scheduling order's

amendment deadline); *Jones v. Sonic Automotive, Inc.*, No. 2:04-CV-692-F, 2005 WL 8175544, at *1 (M.D. Ala. May 3, 2005) (finding good cause for amendment even when plaintiff's attorney *could have* but *did not* obtain the relevant information before the scheduling order's amendment deadline).

20. In other words, a party has good cause to amend a pleading under Rule 16(b)(4) if the party's requested amendment could not have been reasonably made *before* the scheduling order's amendment deadline. Here, amended pleadings were due February 24, 2026. *See* Doc. 80 §4. Mr. Wilson could not have met that scheduling deadline as *Lee v. Lovelace*, in which this Court found that the firing squad was a feasible method of execution in Alabama, had not yet been decided at that time. He could not have pled the firing squad as an alternative method, under his theory of the case, without affecting the reservation of one of his arguments on appeal. Surely, the requirement to be diligent does not compel parties to be self-defeating. Therefore, Mr. Wilson has been diligent and has good cause to amend at this juncture.

21. In sum, Plaintiff has been diligent and timely, and he satisfies the demanding standard under Rule 16 and the federal decisions on Rule 16 in *Sosa, Romero,* and *Nobles.*

***Step #2: Rule 15 Requirement***

22. Having satisfied the requirement of Rule 16(b), Plaintiff must then meet the more liberal requirement of Rule 15(a). *Sosa*, 133 F. 3d at 1419.

23. Rule 15(a) "reflects a 'liberal policy with respect to amendments.'" *Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 624 (11th Cir. 2019). Given this liberal policy in favor of amendment, District Courts "should grant a motion to amend '[u]nless there [are] substantial reason[s] to deny' it." *Bowers v. U.S. Parole Com'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014) (citing *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984)).

24. The United States Supreme Court has identified only five acceptable reasons to deny leave to amend under Rule 15. *Foman v. Davis*, 371 U.S. 178, 183 (1962). Those five reasons include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* Without a justifying reason for denial, the refusal to grant leave to amend is "inconsistent with the spirit of the Federal Rules." *Id.*

25. Mr. Wilson's motion to amend does not implicate any of the five reasons that the Supreme Court identified in *Foman*. Mr. Wilson is filing his motion for leave to amend in a timely manner, shortly after the Court rendered final its

decision on July 22, 2026. Mr. Wilson has not shown any bad faith or dilatory motive for his motion to amend. Mr. Wilson has not failed to cure deficiencies by amendments previously allowed. Plaintiff's proposed amendment causes no undue prejudice to the Defendant, who has been defending against the firing squad alternative for over a year now, mounted a case against it at Mr. Lee's bench trial, and is presently defending against the alternative in the lawsuits of multiple plaintiffs in the Consolidated Litigation. Permitting Plaintiff to plead firing squad as an alternative cannot conceivably affect Defendant's preparation or strategy in any way. And this amendment would not be futile; to the contrary, it will enable the Court to give Mr. Wilson's case the full consideration appropriate to vindicate his constitutional rights. The amendment will ensure that Mr. Wilson has the opportunity to be meaningfully heard and to test "his claim[s] on the merits" in a situation where "the underlying facts or circumstances relied upon…may be a proper subject of relief." *Foman*, 371 U.S. at 182.

26. The Eleventh Circuit case law is in accord. As the Eleventh Circuit held in *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984), there is no bad faith or undue delay when a plaintiff moves in a timely manner, as Mr. Wilson has, following the recent June 9, 2026 decision by this Court in *Lee v. Lovelace*, which was rendered final on July 22, 2026.

27. In *Phillips v. Dekalb County Detention Officer*, the Eleventh Circuit reversed a District Court's denial of a detainee's opportunity to amend his complaint. The Court ruled that when a "chance to amend the complaint" may allow for a complaint that is "more carefully drafted" to "state a claim," the District Court must give the party a chance to amend his complaint. *Phillips v. Dekalb Cty. Detention*, 2022 WL 2134316, at *2 (11th Cir. 2022) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)).

28. In those rare cases where the Eleventh Circuit has upheld a denial of a plaintiff's leave to amend, it was due to a flagrant violation of a *Foman* factor. For instance, in *Pelmer v. White*, the Eleventh Circuit affirmed a District Court's decision to deny Pelmer's motion to amend his federal habeas corpus complaint because it found that Pelmer had "filed his second Rule 15 motion extremely late." *Pelmer v. White*, 877 F.2d 1518, 1523 (11th Cir. 1989). Plaintiff in *Pelmer* had waited until almost a year after the District Court had already ruled on the merits of his first amended complaint, and the Eleventh Circuit had already agreed to hear the case on appeal, before filing his motion for leave to amend his complaint for a second time. This clearly satisfied the undue delay factor endorsed by the Supreme Court in *Foman*.

29. No such factors are triggered in the instant case, where Mr. Wilson is seeking leave to amend his petition shortly after this Court's finalized ruling in *Lee v. Lovelace*.

## II. One Unopposed Amendment

30. Plaintiff also moves to make one amendment to his complaint concerning the drug cocktail that is currently used for medical-aid-in-dying ("MAID"). Plaintiff's counsel has spoken with Defendant's counsel, and Defendant does not object to this amendment.

31. In consultation with Plaintiff's expert in preparation for the expert disclosures that are due on September 15, 2026, Plaintiff has recently become aware that doctors who specialize in end-of-life care have begun to use more regularly a cocktail of drugs for purposes of MAID which contains one different drug. The cocktail is called "DDMAPh," and it is composed of 100mg of digoxin, 1g of diazepam, 15g of morphine, 8g of amitriptyline, and 5g of phenobarbital. This is a slightly different combination of drugs then had previously been used by physicians, a drug cocktail known to doctors as "DDMP II," which is composed of 100 milligrams of digoxin, 1 gram of diazepam, 15 grams of morphine sulfate, and 2 grams of propranolol.

32. Accordingly, Plaintiff is updating his complaint to reflect the new combination of drugs for MAID.

33. Here too, Plaintiff satisfies both Rules 16 and 15. Plaintiff has good cause to amend his pleading under Rule 16(b)(4) because Plaintiff has only become aware of these changes in medical practice after the scheduling order's amendment deadline. *Method Pharm., LLC v. H-2 Pharma, LLC*, 2023 WL 8483491, at *2. Plaintiff has been diligent in raising this amendment, and it does not trigger any of the *Foman* factors. Most importantly, it does not prejudice the Defendant, and the Defendant does not oppose the amendment. Plaintiff therefore satisfies Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure.

34. Finally, in compliance with this Court's direction to Plaintiff to delete the dismissed causes of action from the complaint, Plaintiff is removing Count III and Parts A and B of Count IV of his First Amended Complaint—without, of course, waiving his objections to the Court's rulings dismissing those challenges. Plaintiff reasserts here his objection to the dismissal of Count III and Parts A and B of Count IV.

## CONCLUSION

35. Plaintiff David Wilson is seeking to amend his complaint in a timely and diligent manner. In the proposed Amended Complaint attached to this motion, Mr. Wilson has made the following amendment:

a. Plaintiff has added allegations concerning the firing squad as a feasible and readily available alternative under the *Baze-Glossip* standard;

b. Plaintiff has updated the information concerning the MAID cocktail; and

c. Plaintiff has edited out Count III and Parts A and B of Count IV.

WHEREFORE, Plaintiff prays this Court grant him leave to amend his complaint.

Dated this 9th day of September 2026.

Respectfully submitted,

BERNARD E. HARCOURT
Alabama Bar No. ASB-4316A31B

Columbia Law School
Jerome Greene Hall, Suite 603
435 West 116th Street
New York, New York 10027

Telephone (212) 854-1997
E-mail: beh2139@columbia.edu

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, the foregoing motion has been electronically filed with the Clerk of the Court and therefore a copy has been electronically served upon counsel for Respondent:

Office of the Attorney General
Attn: Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130

Bern E. Harcourt

________________________________
Bernard E. Harcourt