**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

In Re: Alabama Nitrogen Hypoxia Protocol Litigation ) Case No. 2:24-cv-00111-ECM

# OBJECTION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT


Steve Marshall
*Attorney General*

Robert M. Overing
*Principal Deputy Solicitor General*

Polly S. Kenny
Talmadge Butts
Brenton S. Thompson
Paxton B. Weeks
*Assistant Attorneys General*

Lauren A. Simpson
*Deputy Attorney General*

State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov


September 17, 2026

# TABLE OF CONTENTS


Table of Authorities ....................................................................................3

Introduction ....................................................................................................6

Procedural History .........................................................................................8

A. Plaintiffs, claims, and alternative methods ..............................................8

B. The *Lee* litigation ....................................................................................12

C. Developments in this litigation since *Lee* ..............................................16

D. Defendants dispute the motion's list of "undisputed material facts" ...........17

Standard of Review .......................................................................................20

Argument .......................................................................................................20

I. Plaintiffs are not entitled to summary judgment on their Eighth Amendment claim simply because of *Lee*. ...........................................20

A. *Lee*'s findings of fact and conclusions of law were limited to the record and posture of that case. ...............................................21

B. The Eleventh Circuit's unpublished opinion is not preclusive. ..........25

C. Judicial economy alone cannot justify estoppel. ................................27

II. The State is not collaterally estopped in any way. ....................................29

A. *Hercules* bars nonmutual collateral estoppel against the State. ..........29

B. The elements of nonmutual collateral estoppel are not met, and its application here would be unfair and inequitable. .........................33

III. Alternatively, the Court should defer consideration of the motion or deny it pursuant to Rule 56(d). ..........................................................35

# TABLE OF AUTHORITIES

## Cases

*Alaska Air Grp. v. Anthem, Inc.*, 2:21-cv-01209 (N.D. Ala. Dec. 3, 2024) ............27

*Armour & Co. v. Wantock*, 323 U.S. 126 (1944)..................................................25

*Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir. 1990) ..............................................32

*BNSF v. Ala. Dep't of Revenue*, 21-11371, 2026 WL 2210922 (11th Cir. July 31, 2026) ..........................................................................................26

*Boyd v. Hamm*, 2:25-cv-00529, 2025 WL 2884410 (M.D. Ala. Oct. 9, 2025).......19

*Brandon v. Holt*, 469 U.S. 464 (1985)...................................................................31

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ............................................... 14, 15, 28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................20

*Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793 (6th Cir. 1998) .................33

*Demaree v. Fulton Cnty. Sch. Dist.*, 515 F. App'x 859 (11th Cir. 2013)................30

*Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232 (11th Cir. 2009) ..................................................................27

*Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) ..........................................................................................35

*Frazier v. Hamm*, 2:24-cv-00732, 2025 WL 361172 (M.D. Ala. Jan. 31, 2025)....29

*Georgia ex rel. Olens v. McCarthy*, 833 F.3d 1317 (11th Cir. 2016) .....................27

*Grayson v. Commissioner*, 121 F.4th 894 (11th Cir. 2024) ...................................26

*Grayson v. Hamm*, 2:24-cv-00376, 2024 WL 4701875 (M.D. Ala. Nov. 6, 2024) 19

*Gregory Constr. Co. v. Blanchard*, 691 F. Supp. 17 (W.D. Mich. 1988) ...............26

*Hercules Carriers, Inc. v. Claimant State of Fla.*, 768 F.2d 1558 (11th Cir. 1985) 6, 30, 32

*In re Excise Tax Litig.*, 3:21-cv-39, 2024 WL 3552580 (D.V.I. July 26, 2024) .....33

*In re Zantac (Ranitidine) Prods. Liab. Litig.*, 9:20-md-02924 (S.D. Fla. Mar. 31, 2023) ....................27

*Jones v. Cannizzaro*, 2:18-cv-00503, 2019 WL 2289470 (E.D. La. May 28, 2019) ....................32

*Kanter v. Commissioner*, 590 F.3d 410 (7th Cir. 2009) ....................33

*Kentucky v. Graham*, 473 U.S. 159 (1985)....................31

*Lee v. Comm'r*, 26-1207, 2026 WL 1741802 (11th Cir. June 10, 2026)................29

*Lee v. Comm'r, Ala. Dep't of Corr.*, 731 F. App'x 885 (11th Cir. 2018) ..............15

*Liebert v. Millis*, 733 F. Supp. 3d 698 (W.D. Wis. 2024) ....................33

*Matter of McWhorter*, 887 F.2d 1564 (11th Cir. 1989)....................34

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)....................31

*New Port Largo, Inc. v. Monroe Cty.*, 985 F.2d 1488 (11th Cir. 1993)..................25

*Obergefell v. Hodges*, 576 U.S. 644 (2015)....................26

*Petchem, Inc. v. Canaveral Port Auth.*, 6:04-cv-01080, 2005 WL 1862412 (M.D. Fla. Aug. 2, 2005) ....................30

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010)....................25

*Smith v. Hamm*, 2:23-cv-00656, 2024 WL 116303 (M.D. Ala. Jan. 10, 2024).......19

*State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708 (9th Cir. 2005) ....................33

*Stewart v. LaGrand*, 526 U.S. 115 (1999)....................29

*Sunset Novelties of Hinesville, LLC v. City of Hinesville*, 409CV138, 2010 WL 11613514 (S.D. Ga. Apr. 22, 2010) ....................26

*Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166 (11th Cir. 2023) ....................20

*Tugz Int'l, L.L.C. v. Canaveral Port Auth.*, 6:03-cv-01782, 2005 WL 6046066 (M.D. Fla. Feb. 2, 2005) ....................30

*U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir. 2001) ....................18

*United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994) ....................18

*United States v. Mendoza*, 464 U.S. 154 (1984) .................... 29, 30

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) ....................31

**Rules**

11TH CIR. R. 36-2 ....................25

11TH CIR. R. 40-6 ....................25

FED. R. APP. P. 36 ....................25

FED. R. CIV. P. 56 .................... passim

FED. R. EVID. 403 ....................18

FED. R. EVID. 801 ....................18

## INTRODUCTION

On August 25, 2026—three months after this Court's findings in *Lee* and just weeks before expert-witness disclosures are due (DE80:3)—Plaintiffs filed their motion for summary judgment (DE155), premised on the idea that *Lee* permanently resolved the constitutionality of Alabama's nitrogen-hypoxia method of execution.

The Court should deny the motion. It ignores disputes of material fact, misreads *Lee*, and flies in the face of binding circuit precedent that nonmutual collateral estoppel does "not apply[ ] … to state governments," *Hercules Carriers, Inc. v. Claimant State of Fla.*, 768 F.2d 1558, 1579 (11th Cir. 1985).

For starters, there are *many* genuine disputes of material fact. As established by its responsive pleadings, the State disputes "that the challenged method presents a substantial risk of serious harm," that "a feasible and readily implemented alternative method of execution exists that would significantly reduce a substantial risk of severe pain," and "that the State has refused to adopt [any] proposed alternative without a legitimate penological reason." DE155-1:10-11 (alterations accepted). The State also disputes many of the allegations underlying the elements of each claim, such as the contention that an inmate executed by nitrogen hypoxia "would consciously experience one to three minutes of severe air hunger and associated distress." *Id.* at 1. As the parties dispute issues of material fact, the motion could succeed only if the State were barred from litigating those issues.

Plaintiffs would prohibit the State from defending its method on two grounds: judicial economy (*id.* at 15-17) and collateral estoppel (*id.* at 17-20). The first is a nonstarter. As convenient as it may be to import findings and conclusions from *Lee*—or *Boyd*, *Hoffman*, *Frazier*, *Grayson*, *Miller*, *Smith*, or any other case—that's not how litigation works. Lee did not sue on behalf of a class or any nonparties, and the Court enjoined only *Lee's* execution by nitrogen hypoxia. As a matter of civil procedure, equity, and due process, Plaintiffs cannot receive permanent injunctive relief on their Eighth Amendment claims without proving them.

What Plaintiffs need is nonmutual offensive collateral estoppel, but *Hercules* has made it unavailable against States in the Eleventh Circuit. That's why Plaintiffs have failed to identify a single example of collateral estoppel against Alabama, Florida, or Georgia. Their motion can be denied on this ground alone.

Collateral estoppel based on *Lee* would be especially improper. For one, the Court's injunction—issued just one day after remand—was expressly limited to that "record" and that "posture." *Lee v. Lovelace*, 2:25-cv-680, 2026 WL 1664095, at *10 (M.D. Ala. June 9, 2026) (*Lee III*). For another, there was never any suggestion from this Court or the Eleventh Circuit that the first trial on hypoxia would be the last one. If State had won *Lee*, surely Plaintiffs would object to their claims being extinguished without their day in court. An estoppel ruling now—without any warning to or from the parties before the April trial—would be fundamentally unfair.

## PROCEDURAL HISTORY

### A. Plaintiffs, claims, and alternative methods

There are, at present, eight plaintiffs in this consolidated litigation:

***Rick Belisle*****:** Belisle's active complaint is the first amended complaint filed on May 4, 2026. DE135. He has one remaining cause of action, the Eighth Amendment claim common to all Plaintiffs. *Id.* at 18-20. Belisle has named three alternative methods of execution (summarized):

- 500 mg midazolam by IV to induce unconsciousness, followed by 30 mg morphine by IV, followed by nitrogen, *id.* at 20-22,
- Sevoflurane by inhalation to induce unconsciousness, then nitrogen, *id.* at 22-23, and
- Firing squad, largely following the Utah protocol, *id.* at 23-24.

***Jimmy Brooks, Jr.*****:** Brooks's active complaint is the first amended complaint filed on May 4, 2026. DE137. He has one remaining cause of action, the Eighth Amendment claim common to all Plaintiffs. *Id.* at 18-20. Brooks has named two alternative methods of execution (summarized):

- 500 mg midazolam by IV to induce unconsciousness, followed by 30 mg morphine by IV, followed by nitrogen, *id.* at 20-22, and
- Sevoflurane by inhalation to induce unconsciousness, then nitrogen, *id.* at 22-23.

***Larry George*****:** George's active complaint is the first amended complaint filed on February 3, 2026. First Amended Complaint, *George v. Hamm*, 2:25-cv-675

(M.D. Ala. Feb. 3, 2026), DE37. He has one remaining cause of action, the Eighth Amendment claim common to all Plaintiffs, although he also argues that forcing him to name an alternative method of execution violates his rights under RFRA and RLUIPA. *Id.* at 18-21. As to an alternative method of execution:

- George notes that the Code of Alabama provides for lethal injection if nitrogen hypoxia is held unconstitutional. However, he "reserves the right to challenge Alabama's application of lethal injection." *Id.* at 21 & n.49.

***Mark Jenkins*:** Jenkins's active complaint is his initial complaint filed on August 22, 2025. Complaint, *Jenkins v. Hamm*, 2:25-cv-676 (M.D. Ala. Aug. 22, 2025), DE1. He has four causes of action: (1) the Eighth Amendment claim common to all Plaintiffs, *id.* at 25-26; (2) an as-applied Eighth Amendment claim due to alleged PTSD and panic disorder, *id.* at 26-27; (3) a First Amendment Free Exercise claim because of restrictions on the spiritual advisor and the chance that the spiritual advisor might decline to participate due to fear of inadvertent hypoxia, *id.* at 28-29; and (4) a RLUIPA claim based on the same allegations, *id.* at 30-31. Jenkins has named two alternative methods of execution (summarized):

- A highly modified version of ADOC's nitrogen hypoxia protocol, including optional anti-nausea and anti-seizure medication, an optional IV sedative administered by "a qualified medical professional" to render Jenkins unconscious, a physician to oversee mask placement and medical monitoring, more time for Jenkins to meet with his spiritual advisor in which Jenkins is not masked, physical contact with the spiritual advisor, counsel in the execution chamber, and unspecified "comprehensive training" for the execution team, *id.* at 22-24, and

- Firing squad; the specifics Jenkins wants are not specified, but he notes that Utah and South Carolina have protocols, *id.* at 24.

***Jarrod Taylor*:** Taylor's active complaint is the first amended complaint filed on May 1, 2026. DE127. He has one remaining cause of action, the Eighth Amendment claim common to all Plaintiffs. *Id.* at 42-49. Taylor has named three alternative methods of execution (summarized):

- Midazolam by IV "sufficient to render the inmate unconscious," then nitrogen hypoxia, *id.* at 37-38,
- MAID via an oral dose of secobarbital or DDMP II, *id.* at 39-40, and
- Firing squad, largely following the Utah protocol, *id.* at 41-42.

***Kim Van Pelt*:** Van Pelt's active complaint is the first amended complaint filed on May 4, 2026. DE136. He has one remaining cause of action, the Eighth Amendment claim common to all Plaintiffs. *Id.* at 18-20. Van Pelt has named four alternative methods of execution (summarized):

- 500 mg midazolam by IV to induce unconsciousness, followed by 30 mg morphine by IV, followed by nitrogen, *id.* at 20-22,
- The current nitrogen protocol, albeit with an exit bag[1] instead of a full-face respirator, *id.* at 22,

---

1. An "exit bag" is a plastic bag filled with an inert gas (e.g., nitrogen, helium) and quickly placed over the user's head. The gas continuously flows into the bag from an attached gas cylinder, but the user is able to exhale carbon dioxide normally, and it is displaced, preventing hypercapnia. *See, e.g.*, PHILIP NITSCHKE & FIONA STEWART, THE PEACEFUL PILL EHANDBOOK 135 (2025).

- IM (intramuscular) injection of ketamine at 4 mg/kg, then IM injection of 2 mg fentanyl, *id.* at 22-23, and
- Firing squad, largely following the Utah protocol, *id.* at 23-25.

***Marcus Williams*****:** Williams's active complaint is his initial complaint filed on August 22, 2025. Complaint, *Williams v. Hamm*, 2:25-cv-677 (M.D. Ala. Aug. 22, 2025), DE1. He has one remaining cause of action, the Eighth Amendment claim common to all Plaintiffs. *Id.* at 18-20. Williams has named two alternative methods of execution (summarized):

- Firing squad, largely following the Utah protocol, *id.* at 21-22, and
- Electrocution as provided in the ADOC protocol, *id.* at 22.

***David Wilson*****:** Wilson's active complaint is the first amended complaint filed on March 31, 2025. Complaint, *Wilson v. Hamm*, 2:24-cv-111 (M.D. Ala. Mar. 31, 2025), DE35. He has three remaining causes of action: (1) the Eighth Amendment claim common to all Plaintiffs, *id.* at 30-35; (2) an as-applied Eighth Amendment claim due to alleged pulmonary issues, autism, light sensitivity, and visual impairment, *id.* at 35-39; and (3) a claim that the development and use of the nitrogen hypoxia protocol violates international law norms prohibiting torture, *id.* at 45-53. Wilson has named one alternative method of execution (summarized):

- MAID via an oral dose of DDMP II, *id.* at 34-35.[2]

## B. The *Lee* litigation

In late August 2025, seven of the current plaintiffs and Jeffery Lee, another death-row inmate, filed 42 U.S.C. § 1983 complaints in this Court concerning ADOC's nitrogen hypoxia execution protocol. The Court initially consolidated these eight cases, Order, *Van Pelt v. Hamm*, 2:25-cv-671 (M.D. Ala. Jan. 15, 2026), DE36, but Lee was deconsolidated two weeks later in light of the State's intent to move for his execution, Order, *Lee v. Hamm*, 2:25-cv-680 (M.D. Ala. Jan. 24, 2026), DE36. Following a late-January status conference, the Court contemplated a bench trial on April 27, 2026. *Id.* at 1.

The State moved the Alabama Supreme Court to authorize Lee's execution on February 9, the motion was granted on April 2, and on April 15, Governor Ivey scheduled the execution for June 11.

In this Court, the parties filed the report of their Rule 26(f) planning meeting on February 4. Report of Parties' Planning Meeting, *Lee*, *supra* (M.D. Ala. Feb. 4, 2026), DE44. Because of the compressed timeline, the parties agreed to the simultaneous disclosure of expert witnesses. *Id.* at 3; *see* Uniform Scheduling Order at 3, *Lee*, *supra* (M.D. Ala. Feb. 6, 2025), DE45.

---

2. Defendants have agreed to Wilson's proposed amendment adding the DDMAPh MAID protocol to his methods of execution. On information and belief, Defendants note that Wilson will be withdrawing his as-applied challenge.

In the federal hypoxia litigation prior to *Lee*, the State defendants (both in Alabama and in Louisiana) retained Dr. Joseph Antognini, an anesthesiologist. The plaintiffs' experts in Alabama had varied but included:

- Dr. Philip Bickler, an anesthesiologist (and director of a hypoxia research laboratory) (*Miller v. Hamm*, *Boyd v. Hamm*),
- Dr. Brian McAlary, an anesthesiologist (*Grayson v. Hamm*, *Frazier v. Hamm*),
- Dr. Philip Nitschke, a physician, inventor, and advocate of voluntary euthanasia (*Smith v. Hamm*),
- Dr. Katherine Porterfield, a clinical psychologist (*Smith v. Hamm*),
- Dr. James Williams, an ER physician who testified about firing squad (*Boyd v. Hamm*),
- Dr. Robert Yong, a pain specialist (*Smith v. Hamm*), and
- Dr. Carly Zapata, an end-of-life physician who testified about MAID (*Boyd v. Hamm*).

In *Lee*, the State defendants again retained Dr. Antognini, while Lee offered expert reports from:

- Dr. Philip Bickler,
- Dr. James Williams,
- Dr. Julie Bastarache, a pulmonologist, and
- Dr. Richard Schwartzstein, a pulmonologist.

Rebuttal expert reports were due on March 6. On March 30, Lee filed a *Daubert* motion against Dr. Antognini, arguing that as an anesthesiologist, he was

not qualified to opine on hypoxia. DE103. Dr. Bickler, Lee's anesthesiologist with a hypoxia lab, was apparently demoted to "consulting expert witness" and did not testify at trial. *See* Plaintiff-Appellant's Opening Brief at 2, *Lee v. Comm'r, Ala. Dep't of Corr.*, 26-11864 (11th Cir. June 1, 2026), DE20 (CIP).

This Court held a three-day trial on April 27–29, at which, among other things, Dr. Antognini's credentials were established and Dr. Williams revealed for the first time that he had been working for the family of an inmate executed by firing squad in South Carolina. On May 28, the Court issued two memorandum orders. The first denied Lee's *Daubert* motion. Mem. Op. & Order, *Lee*, *supra* (M.D. Ala. May 28, 2026), DE175. The second granted judgment to Defendants, as the Court concluded that Lee "failed to show by a preponderance of the evidence that the ADOC's nitrogen hypoxia execution protocol causes severe pain or suffering 'well beyond what's needed to effectuate a death sentence.'" *Lee*, *supra*, 2026 WL 1493098, at *22 (M.D. Ala. May 28, 2026) (*Lee I*) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 136-37 (2019)).

Lee appealed. After expedited briefing, the Eleventh Circuit reversed and remanded for this Court to determine whether Lee's alternative, firing squad, was feasible, readily available, and significantly safer than hypoxia, and had not been rejected on a legitimate penological ground. *Lee*, *supra*, 2026 WL 1651147, at *8 (11th Cir. June 8, 2026) (*Lee II*).

The Court issued its second memorandum opinion on June 9. *Lee III*, 2026 WL 1664095. Therein, the Court wrote:

> On this record, and given the Eleventh Circuit's legal conclusion that the Protocol poses an unconstitutional risk of pain, the Court finds that Lee has shown by a preponderance of the evidence that firing squad is feasible, readily implemented, and significantly reduces the substantial risk of serious harm posed by the Protocol, and that the State failed to proffer a legitimate penological reason not to adopt it.

*Id*. at *1. Repeatedly, the Court stressed that it was making findings "on this record." *E.g.*, *id.* at *3 ("Because each of those issues resolves in Lee's favor on this record…"), *5 ("On this record, Lee has made that showing."), *7 ("On this record, the firing squad produces a painless death."). The Court concluded:

> On this record, and in this posture, Lee has shown that the ADOC's nitrogen hypoxia execution protocol violates the Eighth Amendment. Consequently, the Court will enter judgment in Lee's favor and enjoin the State from executing Lee pursuant to the Protocol.
>
> To be clear, the Court's decision does not disturb the State's ability to administer capital punishment. Lee successfully challenged only the ADOC's nitrogen hypoxia protocol, not its electrocution or (this time) its lethal injection protocol. *Cf. Lee v. Comm'r, Ala. Dep't of Corr.*, 731 F. App'x 885 (11th Cir. 2018) (per curiam) (Lee's challenge to the ADOC's lethal injection protocol). An Eighth Amendment method of execution claim is a "*necessarily* comparative exercise," *Bucklew*, 587 U.S. at 136 (emphasis in original), and Lee only asks this Court to compare nitrogen hypoxia and firing squad. On this record, and in light of the Eleventh Circuit's opinion, Lee has shown that his proposed firing squad alternative significantly reduces a substantial risk of severe pain *as compared to* nitrogen hypoxia. The result is that the State of Alabama cannot execute Lee by nitrogen hypoxia—no more, no less.

*Id*. at *10.

When this Court, the Eleventh Circuit, and the Supreme Court declined to stay the injunction, Lee's June execution was cancelled. He is presently scheduled to be executed by lethal injection on September 17. The parties dismissed the appeal then pending before the Eleventh Circuit. *See* DE155-10.

### C. Developments in this litigation since *Lee*

On June 18, counsel for Plaintiffs contacted counsel for Defendants and asked to meet and confer. DE155-11:3. Counsel spoke by videoconference on June 22, *id.* at 2, at which time Plaintiffs' counsel expressed their belief that they were entitled to summary judgment and Defendants' counsel disagreed, *id.* As Defendants' counsel noted, ADOC's nitrogen hypoxia protocol was enjoined as to Lee, based upon the record in Lee's expedited case. *Id.* at 1.

That was the last that Defendants' counsel heard about the matter until the afternoon of August 21, when Plaintiffs' counsel gave notice of their intent to move for summary judgment. DE155-12. They asked whether Defendants "would be willing to stipulate to the relief requested." *Id.* at 3. Defendants declined. *Id.* at 2. The motion at bar was filed on August 25. DE155.

ADOC has not revised the protocol since *Lee*. Based on the facts now known, ADOC expects to execute these Plaintiffs by nitrogen hypoxia, which they elected, using the challenged protocol. This present expectation should not be misinterpreted as a commitment to Plaintiffs or representation to the Court that the State will

execute any inmate by a particular method or protocol no matter what intervening events may occur. *Cf.* Pl.'s Mot. to Amend, *Lee*, *supra*, DE204 (M.D. Ala. July 7, 2026).

**D. Defendants dispute the motion's list of "undisputed material facts"**

Plaintiffs list thirteen "undisputed material facts" in their motion for summary judgment. DE155-1:12-14 (¶¶ 1-13). These are not facts premised on "materials in the record" in the usual sense, FED. R. CIV. P. 56(c)(1)(A), but consist mostly of incomplete (and sometimes incorrect) descriptions of the *Lee* proceedings, this Court's findings in *Lee*, and the Eleventh Circuit's first opinion in *Lee*.

The motion equivocates as to which facts are undisputed. To the extent that Plaintiffs suggest that certain findings *underlying* the judgment in *Lee* are undisputed—e.g., facts about what an inmate executed by nitrogen hypoxia experiences—their suggestion is false. The State denies that nitrogen hypoxia involves "severe air hunger" for "one to three minutes," DE155-1 ¶ 6, and that it poses a "substantial risk" of "severe pain," *id*. ¶ 8. As established in its responsive pleadings, the State denies these and any similar factual allegations. Plaintiffs have not cited "materials in the record" that "support" these allegations or "establish the absence … of a genuine dispute" over them. FED. R. CIV. P. 56(c)(1). While judicial opinions from other cases may be noticeable, the State objects that the findings therein are not "admissible in evidence" to support the factual allegations in this

case. FED. R. CIV. P. 56(c)(2); *see, e.g.*, *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1286-88 (11th Cir. 2001) (applying FED. R. EVID. 403); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) (applying FED. R. EVID. 801(c)).

To the extent that Plaintiffs suggest that certain facts about what this Court found and what the Eleventh Circuit held are undisputed—e.g., the fact that the Court "found an Eighth Amendment violation" in *Lee III*, DE155-1 ¶ 9—their suggestion is partially correct. Plaintiffs quote from *Lee I (id.* ¶ 6), *Lee II (id.* ¶ 8), and *Lee III (id.* ¶¶ 9-10). The State concedes that those quotations appear in those opinions. But the State disputes these "facts" to the extent they imply *Lee* established any conclusion of law for purposes of this case. The State does not agree, for example, "that the Protocol constitutes cruel and unusual punishment," *id.* ¶ 9. Likewise, the State disputes that what "Lee ha[d] shown," *id.*, entailed an Eighth Amendment violation; that's a legal conclusion, not "a fact" based on "materials in the record," FED. R. CIV. P. 56(c)(1)(A).[3] To the extent that truncated descriptions of findings and conclusions reached in another case can be considered "facts," the State also disputes the motion's characterizations of *Lee*, including what *Lee I* found that

3. Paragraph 1 suffers a similar infirmity, and the State disputes it to the extent it contains a legal conclusion about what "rights to challenge any nitrogen hypoxia protocol" were "reserv[ed]" upon their election. As the State has argued, e.g., Mem. Op., *Wilson*, *supra*, at 15-16, inmates who choose hypoxia cannot have reserved claims inconsistent with their election, such as method claims that do not plead an alternative hypoxia protocol.

"Lee ha[d] shown," DE155-1 ¶ 9, and the Eleventh Circuit's holding in *Lee II*, *id.* ¶ 8.[4]

As argued more fully below, the Court can deny the motion without deciding whether there's a genuine dispute as to *any* of the motion's "undisputed facts" because they are not material. Even if Plaintiffs had correctly described *Lee*, that judgment does not entitle the nonparty Plaintiffs to the same relief.

With the benefit of full discovery, on the Court's schedule, DE80, the State will disprove, among other things, that an inmate executed by nitrogen hypoxia

4. For example, *Lee I* expressly "assume[d] without deciding that the level of air hunger is the same throughout" a hypoxia execution, 2026 WL 1493098, at *13 n.26, so it did not find that an inmate executed under the protocol "experiences severe air hunger" for "'one to three minutes,'" *contra* DE155-1 ¶ 6. "[N]ot significantly more than one to three minutes" was the Court's finding on the time to unconsciousness, which could imply (up to) that length of severe air hunger *only* if combined with footnote 26's hypothetical assumption of constant severity. *Lee I*, 2026 WL 1493098, at *13 n.26, *18.

Like Plaintiffs, the Eleventh Circuit overlooked that crucial footnote and the Court's modifier "not [ ] more," so paragraph 8 is a materially incomplete summary of *Lee II*. The court of appeals also erred in thinking this Court found that air hunger is worse than pain. *See Lee III*, 2026 WL1664095, at *9 n.17 (explaining that "[t]he Court did not find that air hunger is 'worse than pain'").

The State also disputes the characterization of the *Lee* record as especially "extensive," DE155-1 ¶ 6, compared to other proceedings. In *Smith*, for example, the Court heard fourteen live witnesses and received over one hundred exhibits. *Smith v. Hamm*, 2:23-cv-00656, 2024 WL 116303, at *4 (M.D. Ala. Jan. 10, 2024). *Grayson* had ten live witnesses and a two-day hearing. *Grayson v. Hamm*, 2:24-cv-00376, 2024 WL 4701875, at *3 (M.D. Ala. Nov. 6, 2024). *Boyd* had eighteen live witnesses and a two-day hearing. *Boyd v. Hamm*, 2:25-cv-00529, 2025 WL 2884410, at *7 (M.D. Ala. Oct. 9, 2025). In at least one respect, *Boyd*'s record was superior to *Lee*'s. *See, e.g.*, *Lee I*, 2026 WL 1493098, at *13 n.26 (contrasting *Boyd*).

likely "experiences severe air hunger," that any air hunger would be "severe" for the duration of the execution, and that any air hunger would be "worse than pain." *See infra* § III (invoking FED. R. CIV. P. 56(d)). But it is enough for present purposes that "the materials cited [in the motion] do not establish" any *material* facts beyond genuine dispute, FED. R. CIV. P. 56(c)(1)(B), for the reasons below.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must "draw[ ] all inferences in the light most favorable to the non-moving party." *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). The movant can meet his burden by presenting evidence showing there is no dispute of material fact or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

## ARGUMENT

### I. Plaintiffs are not entitled to summary judgment on their Eighth Amendment claim simply because of *Lee*.

Plaintiffs contend that they are entitled to summary judgment on their shared Eighth Amendment claim because of the *Lee* litigation: they claim that "the

undisputed record establishes" that ADOC's hypoxia protocol presents a risk of harm and firing squad is available to ADOC, and relitigating these issues would "be contrary to principles of judicial economy." DE155-1:15-22. But *Lee*'s findings were limited to *Lee*'s record, the Eleventh Circuit's unpublished opinion is not law, and judicial economy alone cannot justify estoppel.

### A. *Lee*'s findings of fact and conclusions of law were limited to the record and posture of that case.

This Court's findings in *Lee*—both in its initial opinion of May 28 and in its opinion on remand of June 9—were rendered on the specific record before the Court. For example, in the May 28 order, the Court wrote:

- "While Lee has shown that executions under the Protocol involve some suffering, on this record he has failed to prove that the Protocol causes more than 'the necessary suffering involved in any method employed to extinguish life humanely.'" *Lee I*, 2026 WL 1493098, at *1.

- "Although the Court cannot, on this record, determine which executions these data represent, the Court finds it noteworthy that they consistently show a rapid decline in oxygen saturation levels." *Id.* at *10.

- "But the Court begins by addressing one factor upon which Lee relies which, on this record, does not contribute to or exacerbate air hunger: the chest restraints. On this record, the Court does not credit Dr. Schwartzstein's opinion that the chest restraints prevent inmates from breathing deeply, thus exacerbating their feelings of breathlessness." *Id.* at *14.

- "The Court first addresses Dr. Schwartzstein's view on the unconscious experience of suffering and explains why, on this record, any unconscious experience of dyspnea does not rise to the level of an Eighth Amendment violation." *Id.* at *17.

Indeed, the Court used the phrase "on this record" thirteen times. *See also id.* at *12 ("The Court must determine whether this record supports the conclusion that the Protocol causes severe suffering well beyond what is necessary to extinguish human life, thus rendering it cruel and unusual in violation of the Eighth Amendment.); *21 ("[I]t does not follow that this record supports figures of five, six, or seven minutes."). This pattern continues in the June 9 opinion, in which the Court used the same phrase another thirteen times, including:

- "Because each of those issues resolves in Lee's favor on this record, the Court concludes that the Protocol violates the Eighth Amendment." *Lee*, *supra*, 2026 WL 1664095, at *3.
- "On this record, Lee has made that showing." *Id.* at *5.
- "On this record, the firing squad produces a painless death." *Id.* at *7.
- "Nonetheless, on this record the State's concern about potential problems with firing squad executions is unavailing for several reasons." *Id.* at *8.

The Court concluded, "***On this record, and in this posture***, Lee has shown that the ADOC's nitrogen hypoxia execution protocol violates the Eighth Amendment." *Id.* at *10 (emphasis added). The State highly doubts that the Court's choice of words was accidental.

Yes, Lee ultimately won an injunction in his case, but as the Court repeatedly wrote, its findings were limited to ***that*** record and ***that*** posture, which, among other things, involved an expedited trial, an expedited appeal, and an eleventh-hour reversal, culminating in a single day for this Court to rule on Lee's alternative. That

record was also a product of some unique gamesmanship from Lee, none of which was illicit per se, but it still impacted the defense. For example, Lee disclosed Dr. Bickler and his report, forcing the State to spend time and its expert to respond to Dr. Bickler in good faith. Lee suddenly pushed Dr. Bickler aside before trial, perhaps because using an anesthesiologist would have undermined Lee's meritless *Daubert* challenge to Dr. Antognini. For another, Lee had pleaded MAID as an alternative method but intended to drop it *long* before disclosing that fact to the State at his deposition; meanwhile, the State and its expert had been preparing to contest MAID, and Lee was seeking discovery based on that alternative. And then there was the matter of Dr. Williams, who shied from discussing South Carolina's firing squad protocol, failing to mention (in both *Lee* and *Boyd*—and in his expert report in this case) the *highly* relevant fact that he was working with a party in a challenge concerning one of the 2025 executions in that state.

Unlike *Lee*, this litigation has proceeded on a standard civil schedule, including staggered expert disclosures. The State intends to present a much more robust case in terms of both expert and lay testimony; importantly, the State will have a better opportunity to defend against any expert testimony Plaintiffs intend to offer because they will have a chance to see those opinions and provide appropriate

rebuttal experts rather than guessing. Accordingly, the State expects to shore up some of the Court's factual concerns from *Lee*.[5]

Thus, *Lee* did not resolve every dispute of material fact that likely will be litigated in this case. Indeed, *Lee* did not even resolve every dispute in *that* case. For instance, in *Lee I*, the Court "assume[d] without deciding that the level of air hunger is the same throughout" the execution once nitrogen begins to flow, 2026 WL 1493098, at *13 n.26, and found that this air hunger would be severe due to "[t]he total oxygen deprivation," *id.* at *15. The Court did not revisit this assumption in *Lee III*. In other words, the Court assumed a critical fact for Lee—that the condemned's level of air hunger would be severe until he loses consciousness—but never found that fact to exist. Even if *Lee* were binding or preclusive (*but see infra*), it could not justify summary judgment because "the materials cited do not establish the absence … of a genuine dispute" over the length and severity of any air hunger. FED. R. CIV. P. 56(c)(1)(B).

---

5. For example, the Court discounted Dr. Antognini's opinion (citing, inter alia, an OSHA publication) that greater carbon dioxide, rather than reduced oxygen, predominantly causes the sensation of breathlessness under certain conditions. The study on which the Court relied was not disclosed by Dr. Schwartzstein until his rebuttal report. For another, the Court had questions about extrapolating from suicides, accidents, and pilot studies. *Lee I*, 2026 WL 1493098, at *20. The State will answer those questions and show that Dr. Schwartzstein's extrapolation from sick or dying hospital patients on mechanical ventilation is no more probative. And the State will rebut testimony deemed "credible" and "unrebutted" with respect to executions by firing squad. *Lee III*, 2026 WL1664095, at *7. Et cetera.

### B. The Eleventh Circuit's unpublished opinion is not preclusive.

For all the reasons that this Court's *Lee* findings do not preclude litigation here, neither does the Eleventh Circuit's unpublished opinion in *Lee II*. The Eleventh Circuit's decision must "be read in the light of the facts of the case." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *accord*, *e.g.*, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."); *New Port Largo, Inc. v. Monroe Cty.*, 985 F.2d 1488, 1499 (11th Cir. 1993) (Edmondson, J., concurring) ("[A] judicial decision[ ] is inherently limited to the facts of the case then before the court and the questions presented to the court in the light of those facts."). Consequently, because there are (and will be) factual disputes in this case that go beyond the record in *Lee*, the Eleventh Circuit's decision is distinguishable.

In any event, the Eleventh Circuit's *Lee II* opinion was not published, so it is not "binding precedent." 11TH CIR. R. 36-2. The Eleventh Circuit "generally does not [even] cite to its 'unpublished' opinions because they are not binding precedent." FED. R. APP. P. 36, I.O.P. 7. Unpublished decisions are rarely, if ever, reheard en banc. *See* 11TH CIR. R. 40-6 ("A petition for en banc consideration … is an extraordinary procedure intended to bring to the attention of the entire court a precedent-setting error…" (emphasis added)). Some say they're "bur[ied]," *BNSF v.*

*Ala. Dep't of Revenue*, 21-11371, 2026 WL 2210922, at *23 (11th Cir. July 31, 2026) (Tjoflat, J., dissenting).

If this Court were to take *any* Eleventh Circuit decision as preclusive in future method-of-execution litigation, the only candidate would be *Grayson v. Commissioner*, 121 F.4th 894, 896 (11th Cir. 2024), because it was published. But what the Court said there applies here: "We of course express no view on what the result would have been had the district court's factual findings been different." *Id.* at 901 n.4. Plaintiffs cite no authority for their view that the Eleventh Circuit ended all nitrogen-hypoxia litigation in *Lee* but not in *Grayson*.[6] If the State "should be required to show cause," DE155-1:8, 22, 26, so should Plaintiffs.

That the Eleventh Circuit's decision is not precedent undermines the motion in another way, too. This Court's injunction rested critically on *the Eleventh Circuit's* ruling—on the *Lee* record—that the protocol creates "a substantial risk of

---

6. What little case law Plaintiffs cite is inapposite. In *Sunset Novelties of Hinesville, LLC v. City of Hinesville*, a district court granted a preliminary injunction based on a published Eleventh Circuit decision declaring unconstitutional "the entire" law at issue. 409CV138, 2010 WL 11613514, at *3 (S.D. Ga. Apr. 22, 2010). The precedent "heavily—if not completely—support[ed]" the plaintiff's claims, and the government "elected not to respond to the Eleventh Circuit opinion at th[at] stage." *Id.* Plaintiffs cite decisions applying *Obergefell v. Hodges*, 576 U.S. 644 (2015), which, like any Supreme Court decision, is binding unless distinguishable. Again, *Lee II* is not binding, and it is distinguishable by its unique record. *Cf. Gregory Constr. Co. v. Blanchard*, 691 F. Supp. 17, 20 (W.D. Mich. 1988) ("Does the Act pass constitutional muster? … [T]his very same scrutiny has already been undertaken and completed by the Sixth Circuit … in a ruling which is binding upon this Court and upon the defendants in this case.").

serious harm." *Lee III*, 2026 WL 1664095, at *5. The Court is not required to apply the Eleventh Circuit's nonprecedential views in this case.

### C. Judicial economy alone cannot justify estoppel.

Plaintiffs ask the Court for a drastic remedy—permanent injunctions against their executions by nitrogen hypoxia—because it would be more "expeditious" than litigation. DE155-1:15. Of course, the same could be said for any dispositive motion, and there is no doctrine that precludes litigation purely because it is a "burden." *Id.* at 16. To be sure, there are many ways to promote "the general principle of avoiding duplicative litigation." *Id.* (citation modified). But those ways have names, doctrines, and rules: *Rooker–Feldman*, Federal Rule of Civil Procedure 23, claim preclusion, and stare decisis—to name a few. No authority supports a standalone appeal to "judicial efficiency" to bar the State from litigating this case. *Id.* at 17.[7] If such a doctrine could be imagined, the Court should not apply it to the State for the same federalism and equitable reasons that collateral estoppel is not applied to States in the Eleventh Circuit. *See infra*.

---

7. Plaintiffs cite a case involving dismissal for "fail[ure] to prosecute [ ] or comply with a court order," *Equity Lifestyle Props., Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009); a case applying *Colorado River* abstention, *Georgia ex rel. Olens v. McCarthy*, 833 F.3d 1317, 1321 (11th Cir. 2016); a case in which a court *invited* relitigation of a legal issue it decided in a similar case, *Alaska Air Grp. v. Anthem, Inc.*, 2:21-cv-01209 (N.D. Ala. Dec. 3, 2024), DE493; and a ruling applied to all cases in an MDL to "serve[ ] the purpose of MDLs," *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 9:20-md-02924 (S.D. Fla. Mar. 31, 2023), DE6444:11. These are not analogies to this case.

The efficiency gains from entering summary judgment are overstated, too, because even if *Lee* were somehow preclusive, it would not end this case because Plaintiffs raise distinct alternatives. As the Supreme Court held in *Bucklew*:

> Distinguishing between constitutionally permissible and impermissible degrees of pain … is a *necessarily* comparative exercise. To decide whether the State has cruelly "superadded" pain to the punishment of death isn't something that can be accomplished by examining the State's proposed method in a vacuum, but only by "compar[ing]" that method with a viable alternative.

587 U.S. at 136. Accordingly, *Lee III* compared the alleged risks of nitrogen hypoxia with the risks of firing-squad executions because that's what Lee had pleaded. Here, Plaintiffs Brooks, George, and Wilson did not name firing squad as an alternative to the challenged nitrogen hypoxia protocol. Even if the motion were correct that *Lee*'s findings as to firing-squad executions should bind the Court today, DE155-1:19-20, at least three plaintiffs would not be entitled to judgment, for they allege distinct reasons to rule that nitrogen hypoxia is cruel. There are also distinctions among the different firing-squad protocols Plaintiffs pleaded, which may affect the outcome.

Finally, Plaintiffs request "a permanent injunction," DE155-1:7, which would require an evaluation of the equities and the public interest as to each claim. Various factors specific to each Plaintiff could affect the analysis, and the State has not yet deposed each Plaintiff. *Infra* § III (invoking FED. R. CIV. P. 56(d)). Such factors could include a given plaintiff's litigation history, *Lee, supra*, 2026 WL 2111728, at *5 (M.D. Ala. July 22, 2026) (denying motion to amend); *Frazier v. Hamm*, 2:24-

cv-00732, 2025 WL 361172, at *38-39 (M.D. Ala. Jan. 31, 2025); *cf. Stewart v. LaGrand*, 526 U.S. 115, 119 (1999), or the methods available for a given inmate, *Lee v. Comm'r*, 26-1207, 2026 WL 1741802, at *7 (11th Cir. June 10, 2026) ("[T]he injury to the State caused by a delay would not be irreparable because the district court's injunction allows it to execute Mr. Lee by any other authorized method (including lethal injection or the electric chair)."). Summary judgment on claims for equitable relief without briefing the equities would be inappropriate.

## II. The State is not collaterally estopped in any way.

The State cannot be collaterally estopped under binding circuit precedent, and even if it could, the elements and the equities counsel against it.

### A. *Hercules* bars nonmutual collateral estoppel against the State.

In *United States v. Mendoza*, the Supreme Court recognized that nonmutual offensive collateral estoppel could not be applied against the federal government. 464 U.S. 154, 158 (1984). Otherwise, the government would be forced to exhaust its full appellate rights with respect to "every adverse decision … in order to avoid foreclosing further review." *Id.* at 161. First, "[u]nlike a private litigant who generally does not forego an appeal if he believes that he can prevail," the government has many "prudential" and "institutional concerns," including "limited resources" and "the crowded dockets of the courts." *Id.* Second, "the panoply of important public issues raised in government litigation" may lead officials over time

"to take differing positions with respect to the resolution of a particular issue." *Id.* "It would be idle to pretend" that government litigation "involves no policy choices." *Id.* Third, estoppel would inhibit "thorough development of legal doctrine." *Id.* at 163. Thus, while "res judicata, of course, prevents the government from relitigating the same cause of action against the parties to a prior decision, [ ] beyond that point principles of nonmutual collateral estoppel give way." *Id.* (citation modified).

Heeding the Court's instruction to "be careful" when asked to "expand[ ] rules of collateral estoppel to government," *id.* at 161, the Eleventh Circuit barred its application to States in *Hercules Carriers, Inc. v. Claimant State of Florida, Department of Transportation*, 768 F.2d 1558, 1579 (11th Cir. 1985). "We hold that the rationale outlined by the Supreme Court in *Mendoza* for not applying nonmutual collateral estoppel against the government is equally applicable to state governments." *Id.* Since then, the Eleventh Circuit and district courts have consistently recognized and applied *Hercules* to reject the application of nonmutual collateral estoppel to government entities. *See, e.g.*, *Demaree v. Fulton Cnty. Sch. Dist.*, 515 F. App'x 859, 864 (11th Cir. 2013) ("We have extended *Mendoza* to hold that state governments are not subject to offensive, non-mutual collateral estoppel."); *Petchem, Inc. v. Canaveral Port Auth.*, 6:04-cv-01080, 2005 WL 1862412, at *3 (M.D. Fla. Aug. 2, 2005); *Tugz Int'l, L.L.C. v. Canaveral Port Auth.*, 6:03-cv-01782, 2005 WL 6046066, at *7 (M.D. Fla. Feb. 2, 2005).

"Plaintiffs acknowledge that the Eleventh Circuit has extended [*Mendoza*] to restrict nonmutual collateral estoppel against state agencies," DE155-1:23, and that should be enough to deny the motion. Their arguments about "the concerns animating that rule," *id.*, would require the Eleventh Circuit to reconsider *Hercules*, which this Court cannot do. In any event, what *Mendoza* sought to forbid—"freezing the first final decision rendered on a particular [and 'important'] legal issue," *id.* at 24—is *exactly* what Plaintiffs seek here. All the reasons behind *Mendoza* apply in full force, and the State should not be permanently hamstrung by its one loss when the future of nitrogen hypoxia and Eighth Amendment doctrine hang in the balance.

Plaintiffs say *Hercules* involved collateral estoppel against one state agency based on prior litigation by another state agency, *id.*, but they won't say that the *Hercules* rule is limited to that context. Nor could it be. A suit against any office or arm of the State is "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, two suits may involve different state agencies or officials, but the State is "the real party in interest" in both. *Cf. Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Brandon v. Holt*, 469 U.S. 464, 472 (1985); *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 n.55 (1978). It would make little sense to allow the use of collateral estoppel against the State of

Alabama depending on the case caption, for the State's interests are prejudiced no matter which State entity is sued.[8]

Plaintiffs cite two out-of-circuit authorities, neither of which is persuasive here. DE155-2:25. In *Benjamin v. Coughlin*, the Second Circuit declined to extend *Mendoza* in "significant[ ]" part because New York had "appealed two prior judgments resolving the same issues to the state's highest court," whereas in *Mendoza*, the government "had decided not to appeal a previous adverse judgment." 905 F.2d 571, 576 (2d Cir. 1990). In *Lee*, Alabama sought a stay from the Eleventh Circuit but dismissed its appeal. Likewise, *Jones v. Cannizzaro*, 2:18-cv-00503, 2019 WL 2289470 (E.D. La. May 28, 2019), supports the State's position. There, the district court (not bound by any circuit precedent) distinguished *Mendoza* on the ground that the case involved "discrete facts applicable only to the petitioners involved," rather than "widely-applicable questions of law or policy." *Id.* at *6. Plaintiffs here request the Court effectively abolish a method of execution the State has worked over eight years to develop and defend. Estoppel based on *Lee* would be

---

8. To be sure, when the State party is a different agency with "different functions and interests," this could be an additional and "stronger" reason not to apply collateral estoppel. *Hercules*, 768 F.2d at 1580. But *Hercules*'s discussion of the Florida agencies was mostly a rejoinder to the assertion of mutuality on the private party side. *Id.* at 1579-80 ("[E]ven assuming that Hercules and Lerro are the same parties for collateral estoppel purposes, we find that the State of Florida DPR and DOT are not[.]"). Whether nonmutuality exists on the private side or the State side was not necessary to the holding, and there's no dispute over mutuality here.

inappropriate. If *Hercules* weren't enough, the weight of persuasive authority on this question strongly favors the State.[9]

**B. The elements of nonmutual collateral estoppel are not met, and its application here would be unfair and inequitable.**

Even if nonmutual collateral estoppel could be applied to the State, the elements are not satisfied in this case. The issues are not identical, for each Plaintiff has his own allegations, claims, and especially alternative methods, and the equitable analysis may be distinct as well. *Supra* § I.C. If the State is correct that *Lee* left unresolved the dispute about the duration and intensity of any air hunger, then at least that issue was not "a critical and necessary to the judgment." DE155-1:23. And given the expedited nature of the *Lee* proceedings—particularly the expedited appeal that formed the critical basis of this Court's injunction—there was not the "full and fair opportunity to litigate," *id.*, that one hope to see before collateral estoppel ends all future litigation.[10]

---

9. *Kanter v. Commissioner*, 590 F.3d 410, 420 (7th Cir. 2009) ("[T]he Court intended to create a uniform rule precluding the use of the doctrine against the government."); *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 714 (9th Cir. 2005); *In re Excise Tax Litig.*, 3:21-cv-39, 2024 WL 3552580, at *5 (D.V.I. July 26, 2024) ("[T]he Court finds it appropriate to extend the ruling in *Mendoza* to … the Government of the Virgin Islands."); *cf. Liebert v. Millis*, 733 F. Supp. 3d 698, 711 (W.D. Wis. 2024) ("[A]pplying nonmutual issue preclusion against the [state] government is, at most, the very rare exception to the general rule."); *Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793, 801 n.14 (6th Cir. 1998) (*Mendoza* "may" apply to States).

10. The rush had real consequences. For example, the Eleventh Circuit mistakenly suggested that "air hunger can be worse than pain," *Lee II*, 2026 WL 1651147,

It would also be fundamentally unfair. *See Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) ("The actual decision whether to apply collateral estoppel undoubtedly involves equitable considerations[.]"). Neither the parties nor the Court gave any indication that they believed the outcome in *Lee* would decide the fate of nitrogen hypoxia permanently. And the State highly doubts that Plaintiffs would have agreed to be bound by *Lee* in advance; if that's what they wanted, they could have easily moved to try their claims alongside *Lee*. The Court should reject the motion based on its opportunistic timing.

Tellingly, Plaintiffs have not identified a case applying nonmutual collateral estoppel against the government in any method-of-execution case. There would be serious federalism problems with any ruling that permanently intrudes on a State's means of punishment, especially without class certification or any warning that a single-plaintiff judgment would have preclusive effect.

---

at *3, leading this Court to clarify that it "did not find that air hunger is 'worse than pain' but instead recounted patients' descriptions in a clinical setting that air hunger can be '"worse than pain" because it is associated with the fearing of dying.'" *Lee III*, 2026 WL1664095, at *9 n.17. The Eleventh Circuit also stated bluntly that the alleged air hunger "lasts for one to three minutes," *Lee II*, 2026 WL 1651147, at *3, whereas this Court had found that it might last "[n]ot significantly more than one to three minutes," *Lee I*, 2026 WL 1493098, at *18.

## III. Alternatively, the Court should defer consideration of the motion or deny it pursuant to Rule 56(d).

In the alternative, if the Court were inclined to find that there is no genuine dispute as to any material fact, Defendants urge the Court to defer consideration of the summary judgment motion or deny it outright on the ground that Defendants cannot presently, but will in due course, "present facts essential to justify its opposition." FED. R. CIV. P. 56(d); *see* Ex. A (Simpson Declaration).

"Before entering summary judgment the district court must ensure that the parties have an adequate opportunity for discovery." *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990). In the present case, Plaintiffs disclosed most of their expert reports only on September 15, and Defendants' expert reports are not due until October 15. DE80 § 8. Moreover, Defendants have not yet had the opportunity to depose Plaintiffs or their experts; depositions are not scheduled to commence until October. Defendants fully anticipate that the expert depositions and their experts' reports will establish genuine issues of material fact in this litigation, including the time to unconsciousness, the likelihood of any sensation of air hunger, and the severity of any such air hunger.

Plaintiffs' recent expert disclosures also include reports from two experts who did not testify in *Lee*, Dr. Margaret Campbell (discussing her Respiratory Distress Observation Scale) and Dr. Carly Zapata (discussing MAID and hybrid lethal injection–nitrogen hypoxia protocols). Defendants intend to offer rebuttal evidence

in their forthcoming expert reports. Indeed, Defendants anticipate filing their own motion for summary judgment after the close of discovery, as contemplated by the Court's scheduling order. DE80 § 2.

Therefore, Defendants request that, in the alternative, the Court delay consideration of Plaintiffs' motion or deny it pursuant to Rule 56(d).

***

Nitrogen hypoxia has been litigated since 2024. It survived four challenges in Alabama and one in Louisiana prior to *Lee*, the first of the inmate cases to proceed to trial (albeit an expedited trial) instead of preliminary injunction hearing. Defendants should the fullest opportunity to prove that ADOC's hypoxia protocol is constitutional that the Court can provide. Summary judgment based upon *Lee* is unwarranted.

Respectfully submitted on September 17, 2026.

Steve Marshall
*Attorney General*

Robert M. Overing
*Principal Deputy Solicitor General*

***/s/ Lauren A. Simpson***
Lauren A. Simpson
*Deputy Attorney General*

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to counsel of record.

***/s/ Lauren A. Simpson***
Lauren A. Simpson
*Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov