**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| IN RE:<br>ALABAMA NITROGEN HYPOXIA PROTOCOL LITIGATION | Case No. 2:24-cv-00111-ECM<br><br>**CAPITAL CASE** |

# CONSOLIDATED PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THEIR FACIAL EIGHTH AMENDMENT CLAIMS

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page


INTRODUCTION ....................................................................................1

ARGUMENT ............................................................................................3

I. The State Identifies No Genuine Dispute of Material Fact. ............................3

II. *Stare Decisis* and Judicial Economy Militate in Favor of Summary Judgment for Plaintiffs. ........................................................................7

III. The State's "Distinct Alternatives" Argument Also Fails to Create a Genuine Dispute of Material Fact. .....................................................12

A. The First *Glossip* Prong Does Not Depend on the Alternative Protocol. ......................................................................12

B. *Lee*'s Firing-Squad Findings Apply to All Consolidated Plaintiffs, and Differences in Proposed Alternatives Do Not Defeat Summary Judgment. ...................................................13

IV. The Eleventh Circuit's Collateral Estoppel Jurisprudence Does Not Entitle the State to Relitigate What Was Already Decided in *Lee*. ...............15

V. The State's Rule 56(d) Request Should Be Denied. ....................................18

A. The Simpson Declaration Fails to Meet the Rule 56(d) Standard. ......................................................................18

B. The State's Own Conduct Cuts Against Rule 56(d) Relief. ...............21

CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ala. Lethal Injection Protocol Litig.*,
2018 WL 3014802 (M.D. Ala. June 15, 2018) .......... 9

*Alaska Air Grp., Inc. v. Anthem, Inc.*,
No. 2:21-cv-01209-RDP, Doc. 493 (N.D. Ala. Dec. 3, 2024) .......... 11

*Best v. Comm'r of Social Security*,
2018 WL 3569255 (M.D. Fla. July 25, 2018) .......... 9

*Boyd v. Hamm*,
2025 WL 2884410 (M.D. Ala. Oct. 9, 2025) .......... 20

*Boyd v. Hamm*,
No. 2:25-cv-529 .......... 11, 16, 19

*Burns v. Town of Palm Beach*,
999 F.3d 1317 (11th Cir. 2021) .......... 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 3

*Dixon v. Hamm*,
2023 WL 6614435 (M.D. Ala. July 20, 2023) .......... 8

*Frazier v. Hamm*,
2025 WL 361172 (M.D. Ala. Jan. 31, 2025) .......... 20

*Frazier v. Hamm*,
No. 2:24-cv-00732 .......... 19

*Glossip v. Gross*,
576 U.S. 863 (2015) .......... *passim*

*Grayson v. Hamm*,
2024 WL 4701875 (M.D. Ala. Nov. 6, 2024) .......... 20

*Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*,
869 F.3d 1204 (11th Cir. 2017) .......... 5, 11, 19

*Home Depot USA, Inc. v. Lafarge North America, Inc.*,
59 F.4th 55 (3d Cir. 2023) ....................................................................................11

*Isaac Indus., Inc. v. Petroquimica De Venezuela, S.A.*,
127 F.4th 289 (11th Cir.), *cert. denied*, 145 S. Ct. 2817 ....................................18

*James River Ins. Co. v. Retro, LLC*,
2016 WL 3360698 (M.D. Ala. June 9, 2016).......................................................5

*Lee v. Comm'r*,
2026 WL 1741802 (11th Cir. June 10, 2026)............................................*passim*

*Lee v. Lovelace*,
2026 WL 1493098 (M.D. Ala. May 28, 2026).......................................5, 11, 20

*Lee v. Lovelace*,
2026 WL 2111728 (M.D. Ala. July 22, 2026) .......................................................8

*Lee v. Lovelace*,
No. 2:25-00680 ....................................................................................................19

*Lee v. Lovelace*,
No. 2:25-cv-00680-ECM (Pretrial Conf. Tr.) (M.D. Ala. Apr. 23, 2026) ..........................................................................................................12, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...............................................................................................3

*Nance v. Ward*,
597 U.S. 159 (2022)...............................................................................................14

*Peters v. Elsheikh*,
2022 WL 163622 (M.D. Ala. Jan. 18, 2022).........................................................4

*Smith v. Hamm*,
2024 WL 116303 (M.D. Ala. Jan. 10, 2024)........................................................20

*Smith v. Hamm*,
No. 2:22-cv-00497 ...........................................................................................11, 19

*Turner v. Ala. & Gulf Coast Ry. LLC*,
286 F. Supp. 3d 1312 (S.D. Ala. 2017) ..............................................................18

*United States v. Stein*,
769 F. App'x 828 (11th Cir. 2019) ....................................................................3

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
No. 20-MD-2924, Doc. 6444 (S.D. Fla. Mar. 31, 2023) ....................................11

**Statutes**

Ala. Code § 15-18-82.1 .......................................................................................15

**Rules**

Fed. R. Civ. P. 56(d) .........................................................................18, 19, 21, 22

Fed. R. Civ. P. 56(c)(2) ..........................................................................................6

Fed. R. Civ. P. 56(e)(2) ..........................................................................................3

**INTRODUCTION**

After a full merits trial in *Lee* on a facial challenge to the State's nitrogen hypoxia protocol (the "Protocol"), this Court concluded that the Protocol violates the Eighth Amendment's prohibition against cruel and unusual punishment.[1] The State unsuccessfully sought emergency relief from this Court, the Eleventh Circuit, and the Supreme Court, and then dismissed its appeal on the merits. Now it wants a do-over of the trial. But its Opposition identifies ***no*** genuine dispute of material fact that would warrant relitigating what this Court already decided in *Lee*.

The Opposition rests largely on reasons why the State believes *Lee* should have come out differently. It disagrees with this Court's findings, criticizes Mr. Lee's litigation choices, and promises a "much more robust case" at another trial. Opp. at 23. But disagreement with the result is not contrary evidence, and a promise to develop a better defense does not identify a genuine dispute of material fact. The State had a full and fair opportunity to defend the Protocol in *Lee* and did so by presenting an identical defense of the Protocol to the defense it presented in cases over the past three years. It identifies ***not a single*** new fact, witness, or piece of evidence that was unavailable then or that would materially change the record now.

[1] Defendants are Greg Lovelace, Commissioner of the Alabama Department of Corrections ("ADOC"), and Terry Raybon, Warden of William C. Holman Correctional Facility. Because Defendants are State officials sued in their official capacity, this brief refers to them as either Defendants or "the State."

Nor does the State explain why this Court's findings concerning the Protocol's effects would differ for these Consolidated Plaintiffs. *Lee* was a facial challenge that addressed the physiological consequences of execution under the Protocol and the State's ability to implement a less harmful alternative. Those findings did not depend on circumstances unique to Mr. Lee. The Court's references to "this record" in its opinion and the unpublished status of the Eleventh Circuit's opinion do not diminish the force of that analysis. And differences among the Consolidated Plaintiffs' proposed alternatives do not justify denying summary judgment or retrying the questions of whether the Protocol presents a substantial risk of serious harm and whether the firing squad is a feasible, readily implemented, less painful alternative method of execution.

The Court should grant summary judgment for the Consolidated Plaintiffs or, at a minimum, grant partial summary judgment for the Consolidated Plaintiffs on the first and second prongs of *Glossip*. In the alternative, the Court should enter an order requiring the State to show cause, supported by admissible evidence, why the judgment in *Lee* should not govern the Consolidated Plaintiffs' materially identical challenges.

## ARGUMENT

### I. The State Identifies No Genuine Dispute of Material Fact.

A party opposing a properly supported summary judgment motion must do more than deny in an opposition brief the movant's factual assertions. It must identify evidence "of sufficient quality and weight 'that a reasonable jury could return a verdict' in [its] favor[,]" not merely "colorable" evidence or "metaphysical doubt" about the material facts. *United States v. Stein*, 769 F. App'x 828, 832 (11th Cir. 2019); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The State's Opposition does not meet that standard.

***First***, the State neither responds point-by-point to Plaintiffs' Statement of Undisputed Material Facts ("SUMF"), *see* Mot. at 7–9, nor identifies any ***evidence*** rebutting those facts. The State's narrative response to the SUMF, *see* Opp. at 17–20, invokes denials "as established in its responsive pleadings." But pleading denials are not evidence and cannot defeat a properly supported motion for summary judgment. *See Celotex*, 477 U.S. at 324. To the extent the State has failed to properly controvert Plaintiffs' supported factual assertions, the Court should treat them as undisputed for purposes of this Motion. Fed. R. Civ. P. 56(e)(2).

The State's promises of future evidence fare no better. The State says it "intend[s] to present a much more robust case" at trial, *see* Opp. at 23, and "intend[s]

to offer rebuttal evidence in [its] forthcoming expert reports." *Id.* at 35–36.[2] But it does not explain how or why its case will be more robust than it was in *Lee*, nor does it specify what *any* of that rebuttal evidence will be. This is precisely the kind of "mere conclusions and unsupported factual allegations" that this Court has found "legally insufficient to defeat a summary judgment motion." *Peters v. Elsheikh*, 2022 WL 163622, at *2 (M.D. Ala. Jan. 18, 2022) (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam)).

***Second***, the State's selective reading of *Lee* does not identify a material distinction between that case and this one. The State concedes that the Protocol has not changed since *Lee* and that it "expects to execute these Plaintiffs by nitrogen hypoxia … using the challenged protocol." Opp. at 16. It nevertheless disputes the Court's prior findings concerning severe air hunger and conscious suffering, invoking footnote 26 of *Lee I*, which assumed without deciding that the level of air

[2] The State's footnote promises better responses to Dr. Schwartzstein's opinions and better explanations of the suicide, workplace-accident, and pilot studies on which it relied in *Lee*. Opp. at 24 n.5. But the State had a full and fair opportunity to explore each of these subjects in *Lee*. Dr. Schwartzstein disclosed his opinions concerning mechanically ventilated patients in his initial report on February 28, 2026. His March 6, 2026 rebuttal report disclosed the Moosavi study, which showed that hypoxia can cause air hunger even without elevated carbon dioxide. The State deposed Dr. Schwartzstein two weeks later, on March 19, for the full seven hours during which both topics were discussed at length. The State then had more than a month to prepare for trial. As for the suicide, workplace-accident, and pilot studies, the State has relied on those same materials since the first nitrogen hypoxia challenge in January 2024.

hunger remained constant during the execution.[3] That footnote does not erase the Court's ultimate findings that an inmate executed under the Protocol consciously experiences severe air hunger and associated distress for one to three minutes. *Lee I*, 2026 WL 1493098, at *25. The Eleventh Circuit reviewed those findings and held that the Protocol presents a "substantial risk of serious harm"—"severe pain over and above death itself." *Lee II*, 2026 WL 1651147, at *2–4.

***Third***, the State's evidentiary objections do not establish that the rulings in *Lee* have no application here. The State concedes that Plaintiffs' quotations from the record in *Lee* "appear in those opinions," Opp. at 18, but objects to treating the underlying findings as admissible evidence. *Id.* at 17–18. The Court may take judicial notice of the existence and contents of those decisions. *See James River Ins. Co. v. Retro, LLC*, 2016 WL 3360698, at *3–4 & n.1 (M.D. Ala. June 9, 2016); Opp. at 17 (conceding that "judicial opinions from other cases may be noticeable").[4]

---

[3] The evidence at the *Lee* trial suggested that the severity of air hunger increases as hypoxia worsens. *See* 4/27/2026 Tr. at 43:17–44:6 (explaining that when an individual becomes severely hypoxic, the ventilatory drive "takes off and becomes almost a vertical line here. . . . I'm desperate to try to do something to correct the hypoxemia. This is a very strong stimulus to breathing."). If anything, the Court's assumption that the level of air hunger remained constant during the execution benefited the State.

[4] The Eleventh Circuit's decision in *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1224–26 (11th Cir. 2017)—that the district court could not "rely on judicial notice to make its findings in *Arthur* conclusive" in other inmates' cases and that "[t]he District Court, in *Arthur*, found for the ADOC on both issues did not transform the findings into indisputable adjudicative facts subject to judicial notice"—is distinguishable. *Id.* (citing Fed. R. Evid. 201(b)). Plaintiffs do not rely

Moreover, the information underlying those factual findings, and on which Plaintiffs rely, "can[] be presented in a form that would be admissible in evidence"—it *was*, in fact, presented as evidence in the *Lee* trial. *See* Fed. R. Civ. P. 56(c)(2). As a result, there is no reason why the Court cannot rely on that evidence under Rule 56.

The State's cited cases, *see* Opp. at 18, address a different question. In *U.S. Steel, LLC v. Tieco, Inc.*, the court held that a state court judge's opinion was inadmissible evidence, as he was not the proper factfinder in the underlying state court case and his opinion was therefore more prejudicial than probative. 261 F.3d 1275, 1286–88 (11th Cir. 2001). Here, the State cannot credibly dispute that this Court was the factfinder in the *Lee* trial. The State's hearsay argument under Rule 801(c) fares no better—in *United States v. Jones*, the Eleventh Circuit held that "factual findings made in a separate case *by another district court*" were inadmissible hearsay. 29 F.3d 1549, 1554 (11th Cir. 1994) (emphasis added). Here, Plaintiffs offer this Court's *own* prior factual findings in a separate but essentially identical case. Mot. at 13–16. And, as discussed above, the facts underlying this Court's findings are evidence that can be admitted at trial and so are appropriate evidence for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c)(2).

---

on judicial notice under Rule 201 to render *Lee*'s findings indisputable adjudicative facts. They rely on (1) the binding legal effect of a successful facial challenge, (2) the State's failure to come forward with any contrary evidence to raise a genuine dispute of material fact, (3) principles of judicial economy, and (4) collateral estoppel.

## II. *Stare Decisis* and Judicial Economy Militate in Favor of Summary Judgment for Plaintiffs.

The Court should not be required to relitigate issues it has already resolved against the State after a full trial on the merits. Unless the State can identify new admissible evidence that would materially change the record on which this Court ruled—which it has failed to do—there is no reason to repeat that trial plaintiff-by-plaintiff as many as eight times, once for each Consolidated Plaintiff.

Importantly, the findings in *Lee* did not turn on circumstances unique to Mr. Lee. This Court addressed how the Protocol operates on any human being, not a specific plaintiff, with respect to the physiological consequences of breathing nitrogen gas under the Protocol: air hunger, the time to unconsciousness, and flash pulmonary edema. Accordingly, this Court's findings based on that evidence concerned the *general* operation and effects of the Protocol, not its operation specific to Mr. Lee or any other particular person.

The State has not identified *a single case* in which, following a successful facial constitutional challenge, a court required other plaintiffs bringing the same challenge to relitigate the constitutional question. The absence of such authority is telling. Although a successful facial challenge does not immediately result in universal injunctive relief, such a ruling effectively precludes the challenged provision's continued application to similarly situated parties. The State's position here would reduce a successful facial challenge to a series of plaintiff-by-plaintiff

as-applied challenges, requiring the same constitutional defect to be proved each time the State seeks to apply the same Protocol to another person. That is not the law, and the constitutionality of the Protocol does not depend on whether the State likes the result in *Lee*. The Consolidated Plaintiffs are subject to the same Protocol that *Lee* held unconstitutional on its face, and they are a similarly situated group entitled to equal treatment. *Cf. Dixon v. Hamm*, 2023 WL 6614435, at *5 (M.D. Ala. July 20, 2023) ("'[A]ll persons similarly situated should be treated alike.'" (citation omitted)).[5]

Faced with this clear hurdle, the State splits procedural hairs. It relies on the Court's references to the "record" in *Lee I* and *Lee III*, contending that those references confine the Court's findings to Mr. Lee's individual case. They do not. Describing a finding as based "on this record" is simply a recognition that all judicial findings rest on the evidence before the court. It does *not* mean that findings concerning matters of general applicability—like those reached in a trial on a facial constitutional challenge—cease to have force whenever another plaintiff challenges

[5] The subsequent decisions in *Lee* serve only to reinforce this point. The Eleventh Circuit concluded in *Lee V* that this Court's factual findings were "amply supported by the evidence." *Lee v. Comm'r*, 2026 WL 1741802, at *5 (11th Cir. June 10, 2026). And in addressing Mr. Lee's request for post-judgment relief, this Court in *Lee VI* expressly reaffirmed that Lee had "successfully established that the ADOC's nitrogen hypoxia protocol is facially unconstitutional." *Lee v. Lovelace*, 2026 WL 2111728, at *5 (M.D. Ala. July 22, 2026). The word "facially" was not mere surplusage. The constitutional defect this Court identified was a defect in the Protocol itself, not merely in the Protocol's application to Mr. Lee personally.

the same issue on materially similar evidence. Every court makes findings "on the record before it," and citing that language from the *Lee* decisions cannot create a genuine factual dispute where none exists.

Nor is the fact that *Lee II* is unpublished a reason to deny summary judgment. Opp. at 25–27. As an initial matter, the Eleventh Circuit explained that it was declining to publish its *Lee II* opinion because of the "impending execution window for Mr. Lee." 2026 WL 1651147, at *8. If the Eleventh Circuit had published *Lee II*, it "could not expedite the issuance of the mandate without providing 'reasonable notice' to the other members of this Court." *Id.* at *8 & n.6 (quoting 11th Cir. R. 41-2). And, in any event, Rule 36-2 expressly permits unpublished opinions to be cited as persuasive authority. *See, e.g., In re Ala. Lethal Injection Protocol Litig.*, 2018 WL 3014802, at *2 (M.D. Ala. June 15, 2018) (treating an unpublished decision as highly persuasive); *Best v. Comm'r of Social Security*, 2018 WL 3569255, at *7 (M.D. Fla. July 25, 2018) (similar). The State fails to show that the result reached in *Lee II* was poorly reasoned. In fact, *Lee II* is particularly persuasive here because it followed a full trial on the merits, reflected the unanimous judgment of the panel, and was followed by a second appeal to the same panel without any change in outcome. Neither the Eleventh Circuit nor the U.S. Supreme Court disturbed the resulting injunction.

Judicial economy independently weighs heavily against more trials on the same issues. The Court has already invested extensive resources in resolving the questions at issue here—through deciding multiple discovery disputes, visiting Holman, overseeing a three-day trial, drafting findings of fact and conclusions of law, holding proceedings on remand, and resolving post-judgment disputes. Requiring the Court to repeat that process plaintiff-by-plaintiff, on materially identical facts, does not serve any cognizable interest. Indeed, courts have resolved parallel constitutional claims at summary judgment in light of prior constitutional rulings rather than unnecessarily relitigate the same issues. *See* Mot. at 12 & n.4, *id.* at 13–14.

Plaintiffs' concerns about judicial economy are reinforced by events after *Lee*. Once the Court entered its final order resolving Mr. Lee's challenge, the State forwent its opportunity to appeal the merits of that order. It now seeks to retry its case with a blank slate to avoid the determinations that this Court properly made, but does not identify any material facts that will be different. There is no justification for bringing each of the Plaintiffs' cases to trial merely to recreate the record the Court already developed and adjudicated in *Lee*. The State's separate suggestion that summary judgment on equitable relief would be inappropriate without additional briefing on the equities is also misplaced. Once the merits of a constitutional claim are established, the balance of equities and the public interest strongly favor

injunctive relief because the public has no interest in enforcing an unconstitutional policy.

At a minimum, the Court should order the State to show cause, supported by admissible evidence, why the judgment in *Lee* should not govern the Consolidated Plaintiffs' challenges. Specifically, the State should be required to identify what material facts it expects to establish differently from *Lee*, what admissible evidence would support those different findings, and why those differences could alter the constitutional analysis. That approach properly places the burden on the party seeking to relitigate issues the Court has already adjudicated after a full trial. Courts have employed show-cause procedures in similar circumstances to determine whether previously resolved issues require further litigation. *See Home Depot USA, Inc. v. Lafarge North America, Inc.*, 59 F.4th 55 (3d Cir. 2023); *Alaska Air Grp., Inc. v. Anthem, Inc.*, No. 2:21-cv-01209-RDP, Doc. 493 (N.D. Ala. Dec. 3, 2024); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924, Doc. 6444 (S.D. Fla. Mar. 31, 2023).[6]

---

[6] The State also attempts to weaken the force of the record in *Lee* by claiming it was not especially "extensive" compared to *Smith*, *Grayson*, and *Boyd*, by pointing to the number of witnesses and length of hearings in those cases. Opp. at 19. This is not an apt comparison—each of those was a preliminary injunction hearing, while *Lee* was a full merits trial on a facial constitutional challenge. The State's attempt to minimize *Lee* because it involved certain "expedited" steps is similarly misguided, as it was the State's announcement that it would seek an execution date for Mr. Lee that prompted his deconsolidation from these cases and the expedited schedule. *See Lee I*, 2026 WL 1493098, at *4; Opp. at 12. At no point during the *Lee* proceedings

## III. The State's "Distinct Alternatives" Argument Also Fails to Create a Genuine Dispute of Material Fact.

The Court should reject the State's argument that differences between the Plaintiffs' alleged alternative methods somehow foreclose summary judgment or preclude summary judgment for the Plaintiffs who did not plead the firing squad as an alternative method. Opp. at 28.

### A. The First *Glossip* Prong Does Not Depend on the Alternative Protocol.

The first *Glossip* prong asks whether the State's chosen method creates a constitutionally intolerable risk of pain. *See Bucklew*, 587 U.S. at 136 (citing *Glossip v. Gross*, 576 U.S. 863 (2015)). It does not require a showing of an alternative execution method.

*Lee II* concluded that the first prong was satisfied because the Protocol poses "a substantial risk of serious harm—severe pain over and above death itself." 2026 WL 1651147, at *2 (citing *Nance v. Ward*, 597 U.S. 159, 164 (2022)). As noted, this was a holding with respect to the Protocol itself—not one unique to any individual

---

did the State complain that it did not have sufficient time to develop its case—a case that it has been litigating for the last three years. *Cf. Lee v. Lovelace*, No. 2:25-cv-00680-ECM (Pretrial Conf. Tr. at 14:25–15:1) (M.D. Ala. Apr. 23, 2026) (With respect to late-produced evidence relating to the pulse oximeters, counsel for the State explained: "The State's position would be that we do not need more time to develop it."). In addition, the State identifies no evidence it was unable to offer as a result of the "expedited" process. The State's belated complaints ring hollow.

or based upon any particular proposed alternative. *See id.* at *7. Because the State concedes it has not changed the Protocol, *see* Opp. at 16, the constitutional defect identified by the Eleventh Circuit exists for every Plaintiff who challenges the same Protocol. Therefore, at a minimum, the Court should grant partial summary judgment for the Consolidated Plaintiffs on the first *Glossip* prong regardless of which alternative protocol each of the Consolidated Plaintiffs has alleged.

### B. *Lee*'s Firing-Squad Findings Apply to All Consolidated Plaintiffs, and Differences in Proposed Alternatives Do Not Defeat Summary Judgment.

The second prong of *Glossip* introduces a comparative analysis between the challenged method and the plaintiff's proposed alternative. *See Bucklew*, 587 U.S. at 136. The State argues that because different Consolidated Plaintiffs proposed different alternative methods, summary judgment must be denied as to the Plaintiffs who did not, like Mr. Lee, plead firing squad as an alternative method. *See* Opp. at 28. That argument incorrectly treats the second *Glossip* prong as requiring a plaintiff-specific inquiry, when all it requires is proof of "an alternative that is 'feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain.'" 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 52).

Here, the comparative exercise has already been completed in *Lee* and does not need to be relitigated plaintiff-by-plaintiff. This Court found in *Lee III* that firing squad is "feasible, readily implemented, and significantly reduces the substantial risk

of serious harm posed by the Protocol." 2026 WL 1664095, at *1. That finding had nothing to do with Mr. Lee himself; it was instead a finding based upon consideration of a specific firing squad protocol that could be used with any inmate. *Lee III* has thus identified for the State a pathway forward: firing squad is feasible, readily implemented, and would significantly reduce the risk of substantial harm associated with the Protocol. The animating concern behind *Glossip*'s alternative-method requirement—ensuring that a court does not simply halt an execution but instead identifies a viable path forward for the State, *see Nance*, 597 U.S. at 169—is fully satisfied here. The Court need not parse which Plaintiff sought which alternative to reach that conclusion.

The State, however, has identified no evidence showing that the facts underlying this Court's holding on the second *Glossip* prong in *Lee III* have changed. This Court's determination that the State can obtain rifles, modify space at Holman, train personnel, and carry out a firing squad execution did not depend on which condemned inmate is scheduled to be executed or any of their individual characteristics. *Lee III*, 2026 WL 1664095, at *5. The State's vague suggestion that minor firing squad protocol differences might "affect the outcome," *see* Opp. at 28, creates no specific factual dispute warranting a different result.

The State's own response to *Lee* further undermines its insistence on litigating each Plaintiff's proposed alternatives separately. After *Lee* established that the firing

squad was feasible, readily implemented, and significantly less painful, the State did not adopt that alternative. It instead proceeded with Mr. Lee's execution by lethal injection—a method that Mr. Lee had not proposed as his alternative and, pursuant to Ala. Code § 15-18-82.1, had elected against. Having taken the position in *Lee* that the State is not required to actually use the alternative found to satisfy the second prong of *Glossip*, the State cannot persuasively argue that differences among these Plaintiffs' proposed alternatives require another trial.

## IV. The Eleventh Circuit's Collateral Estoppel Jurisprudence Does Not Entitle the State to Relitigate What Was Already Decided in *Lee*.

The State mistakenly argues that "[w]hat Plaintiffs need is nonmutual collateral estoppel." Opp. at 7. Plaintiffs do not "need" a finding of estoppel; they have presented sufficient grounds for granting summary judgment in their favor and the State has failed to identify a genuine dispute of material fact. Collateral estoppel simply provides additional support for the Court's grant of summary judgment for the Consolidated Plaintiffs, not the fundamental basis for that relief.

Plaintiffs acknowledged the Eleventh Circuit's jurisprudence on applying nonmutual collateral estoppel against state governments but explained in the opening Motion that the facts here are distinguishable from *Hercules Carriers*. Mot. at 18–20. The State fails to explain why the concern animating *Hercules Carriers*—that one state agency's loss should not bind another agency, Opp. at 31–32—should control here. As the Eleventh Circuit explained, the "distinction [between different

state agencies] is a *critical* one given the varied interests a governmental body must pursue." *Hercules Carriers*, 768 F.2d at 1580 (emphasis added). No similar concern is present here, where the *same* Defendants in the same agency, represented by the *same* counsel, face *identical* facial constitutional challenges. To credit the State's position on collateral estoppel would extend *Hercules Carriers* beyond its express and intended reach.

Nor do the State's unfounded accusations of "gamesmanship" in *Lee*, Opp. at 22–23, establish that it lacked a full and fair opportunity to litigate that case. The State cites counsel for Mr. Lee's decisions not to call an expert (Dr. Bickler) at trial and to drop the MAID alternative method,[7] as well as Dr. Williams's initial refusal to testify as to attorney-client communications involving his separate retention in South Carolina. But a litigant is entitled to make ordinary strategic choices to narrow the case. If anything, Mr. Lee's decision to drop an expert and proposed alternative made defending the Protocol easier for the State—not harder. Nor was the State prejudiced by Dr. Williams's consulting relationship in South Carolina. Putting aside that the State was offered but *declined* the opportunity to depose Dr. Williams in *Lee*, Dr. Williams answered the State's questions at trial about his work in South

[7] The State complains that it and its expert were "forc[ed] . . . to spend time . . . to respond to Dr. Bickler" and Mr. Lee's proposed alternative of MAID. Opp. at 23. But the State was offered an opportunity to depose Dr. Bickler in *Lee* and ***declined***. And Dr. Antognini's expert report discussing MAID and his supplemental expert report responding to Dr. Bickler were recycled from the *Boyd* litigation.

Carolina. After evaluating that testimony, this Court found Dr. Williams "credible" and his evidence "unrebutted." *Lee III*, 2026 WL 1664095, at *7.

The State also mischaracterizes the record by claiming that "there was never any suggestion from this Court or the Eleventh Circuit that the first trial on hypoxia would be the last one." Opp. at 7; *see also id.* at 34 (claiming that "[n]either the parties nor the Court gave any indication that they believed the outcome in *Lee* would decide the fate of nitrogen hypoxia permanently"). That is simply not true. The *Lee* case was originally consolidated with the cases here, and it was deconsolidated only after the State announced that it would seek an execution date for Mr. Lee. Days before the start of trial, the Court bent over backwards to ensure that late-discovered evidence related to the pulse oximeters would be included, explaining: "[It is] important for the Court to make a good decision in this case, ***which is a bellwether case with other—seven other cases to follow***. I need a fully developed record in this case . . . . I don't want to go into this trial with less information. I need to come in with more information. . . . ***This record needs to be as complete as it can possibly be***." *Lee v. Lovelace*, No. 2:25-cv-00680-ECM (Pretrial Conf. Tr. at 15:15–16:4, 17:3–4) (M.D. Ala. Apr. 23, 2026) (emphases added). The State was on full notice that it should present its best case and hold nothing back in *Lee*.

## V. The State's Rule 56(d) Request Should Be Denied.

### A. The Simpson Declaration Fails to Meet the Rule 56(d) Standard.

The Court should deny the State's Rule 56(d) request. Fed. R. Civ. P. 56(d) permits a court to defer or deny a summary judgment motion when a nonmovant demonstrates by affidavit or declaration the specific "facts essential to justify its opposition" that it expects to discover. That burden is demanding: the supporting affidavit or declaration must "specifically show how a postponement would enable the party to rebut the movant's showing of no genuine issue of material fact," *Isaac Indus., Inc. v. Petroquimica De Venezuela, S.A.*, 127 F.4th 289, 303 (11th Cir.), *cert. denied*, 145 S. Ct. 2817, and "set forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment," *Turner v. Ala. & Gulf Coast Ry. LLC*, 286 F. Supp. 3d 1312, 1319 (S.D. Ala. 2017).

The Simpson Declaration fails to meet this exacting standard. It identifies no specific facts the State expects to discover and does not articulate how further discovery would enable the State to rebut this Court's findings in *Lee*. It instead offers generalized hopes that depositions and expert reports ***might*** create genuine disputes. For example, the Simpson Declaration states that "Defendants ***anticipate*** that the Plaintiff depositions ***may*** bear on the equities and the feasibility of the pleaded alternative execution methods." Doc. 164-1 ¶ 4 (emphases added). It asserts

that "Defendants ***expect*** the expert depositions and reports to establish genuine issues of material fact, including the time to unconsciousness, the likelihood of any sensation of air hunger, and the severity of any such air hunger." *Id.* ¶ 5 (emphasis added). And it notes that "Defendants anticipate offering rebuttal evidence" to the two Plaintiffs' experts who did not testify in *Lee*. *Id.* ¶ 6. These are precisely the kinds of "vague assertion[s] that additional discovery will produce needed, but unspecified, facts" that Rule 56(d) is designed to reject. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021).

Nor can the State's failure be excused. The State has litigated six challenges to its nitrogen hypoxia Protocol over the last three years: five in the preliminary injunction context (*Smith*, *Miller*, *Grayson*, *Frazier*, and *Boyd*) and one after a full merits trial (*Lee*). The State, moreover, possesses *all* of the underlying evidence—evidence related to the development of the Protocol, the construction and testing of the nitrogen hypoxia system, and the prior nitrogen hypoxia executions. Yet, in each of the prior challenges, the State presented substantially the same evidence: testimony from Dr. Joseph Antognini that the Protocol causes unconsciousness within one minute or less and does not itself cause pain.[8] There is no reason to think

[8] Plaintiffs attach as Exhibit A a chart comparing Dr. Antognini's core expert opinions in *Smith v. Hamm*, No. 2:22-cv-00497; *Frazier v. Hamm*, No. 2:24-cv-00732; *Boyd v. Hamm*, No. 2:25-cv-529; and *Lee v. Lovelace*, No. 2:25-00680. As the exhibit makes clear, Dr. Antognini's opinions on time to unconsciousness, pain, and time to death have been virtually unchanged since the *Smith* case.

the State will do anything differently. Indeed, the Simpson Declaration identifies neither new experts nor new evidence that the State believes will create genuine issues of material fact.

The fact that Plaintiffs have identified two new experts who would be called if this case proceeded to trial, Dr. Campbell and Dr. Zapata, does not alter the analysis. These experts are prepared to address non-firing squad alternative methods (*e.g.*, MAID) and reasons why an inmate subject to oxygen deprivation is conscious beyond three minutes. But their opinions would not alter the Court's findings about the Protocol's facial constitutional defects—that an inmate subject to the Protocol will experience severe air hunger and related distress for not significantly more than

---

This fact is further exemplified in the case law. *See Boyd v. Hamm*, 2025 WL 2884410 (M.D. Ala. Oct. 9, 2025) ("Dr. Antognini opines that the Protocol causes unconsciousness within thirty-five to forty seconds and a physically painless death thereafter."); *Frazier v. Hamm*, 2025 WL 361172, at *11 (M.D. Ala. Jan. 31, 2025) (describing "Dr. Antognini's expert opinion that an inmate loses consciousness closer to thirty to forty seconds after nitrogen gas is introduced"); *Grayson v. Hamm*, 2024 WL 4701875, at *6 (M.D. Ala. Nov. 6, 2024) (describing Dr. Antognini's expert opinion that the Protocol "will lead to unconsciousness within 10 to 40 seconds after the nitrogen begins to flow"); *Smith v. Hamm*, 2024 WL 116303, at *20 (M.D. Ala. Jan. 10, 2024) ("In his declaration, Dr. Antognini opined the time to unconsciousness when nitrogen is introduced into a virtually air-tight mask is 35 to 40 seconds . . . ."); *Lee v. Lovelace*, 2026 WL 1493098, at *18 (M.D. Ala. May 28, 2026) ("This timeframe considers both the data on which Dr. Antognini relies, including the hypoxia system demonstrations and literature which consistently shows hypoxia resulting in unconsciousness in one minute or less . . .").

one to three minutes—or the availability of firing squad as an alternative that substantially reduces the risk of severe pain.

**B. The State's Own Conduct Cuts Against Rule 56(d) Relief.**

The State's own conduct contradicts its request for Rule 56(d) relief. The State has argued, both in person and on the papers, that the Consolidated Plaintiffs filed their motion for summary judgment much too late because it was filed "three months after this Court's findings in *Lee*." Doc. 164 at 6; Doc. 161 at 2 ("[T]he State represented to the Plaintiffs as early as June 22, 2026, that the State intends to carry out the Plaintiffs' executions by nitrogen hypoxia. . . . Yet the Consolidated Plaintiffs did not file their motion for summary judgment until August 25, 2026—over two months later.").

But Plaintiffs were not required to move for summary judgment immediately after the June 9 judgment while post-judgment proceedings remained pending. Plaintiffs filed this Motion approximately one month after the Court's July 22, 2026 order denying amendment of the *Lee* judgment[9]—and months before the January 13, 2027 deadline for summary judgment motions. The State identifies no deadline Plaintiffs missed. Nor does its account of the June 22, 2026 meet-and-confer support its timing objection, *see* Opp. at 16: contrary to the State's representation, the parties

[9]The appeals from the Court's July 22, 2026 opinion did not conclude until September 17, 2026.

never discussed summary judgment during that conference. The discussion simply confirmed whether the State intended to execute the Consolidated Plaintiffs by nitrogen hypoxia despite this Court's decision in *Lee*.

The State cannot have it both ways. It cannot simultaneously argue that the Motion was filed too late after the *Lee* trial but also that the record is too undeveloped for consideration of summary judgment. The internal contradiction exposes the Rule 56(d) request for what it is: not a genuine request for additional discovery, but a tactical effort to delay resolution of a motion that the State has said should have been filed earlier.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Motion, the Court should grant summary judgment for the Consolidated Plaintiffs or, at a minimum, grant partial summary judgment for the Consolidated Plaintiffs on the first and second prongs of *Glossip*.

In the alternative, the Court should order the State to show cause—supported by admissible evidence and identifying with specificity which material facts it can establish differently than in *Lee*—why the *Lee* judgment should not apply with equal force to the Consolidated Plaintiffs.

Dated: October 1, 2026

Respectfully submitted,

/s/ Samuel R. Diamant

J. Andrew Pratt (ASB-3507-J)
Joshua Toll (pro hac vice)
Samuel R. Diamant (pro hac vice)

**King & Spalding LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
(404) 572-4600
apratt@kslaw.com
jtoll@kslaw.com
sdiamant@kslaw.com

*Attorneys for Plaintiff Mark Jenkins*

/s/ David K. Kessler

David K. Kessler (pro hac vice)
Justin D. Lerer (pro hac vice)
Kyle T. Sieber (pro hac vice)

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
dkessler@paulweiss.com
jlerer@paulweiss.com
ksieber@paulweiss.com

Andrew J. Ehrlich (pro hac vice)

**Brief Ehrlich, P.C.**
355 Riverside Drive, 5W
New York, NY 10025

(917) 405-7928
ajehrlich@gmail.com

*Attorneys for Plaintiff Jarrod Taylor*

*/s/ Bernard E. Harcourt*

Bernard E. Harcourt (ASB-4316-A31B)

**Columbia Law School**
435 West 116th Street
New York, New York 10027
Telephone: (212) 854-1997
Fax: (212) 854-7946
Email: beh2139@columbia.edu

*Attorney for Plaintiff David Wilson*

*/s/ Paige H. Sharpe*

Angelique A. Ciliberti (ASB: 1504T44C)
Paige H. Sharpe (pro hac vice)
Anna K. Thompson (pro hac vice)
Kevin A. Cline (pro hac vice)

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
angelique.ciliberti@arnoldporter.com
paige.sharpe@arnoldporter.com
anna.thompson@arnoldporter.com
kevin.cline@arnoldporter.com

*Attorneys for Plaintiffs Kim Van Pelt, Rick Belisle, Jimmy Brooks, Jr., Larry George, and Marcus Williams*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Samuel R. Diamant*
Samuel R. Diamant