# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

***In re. Alabama Nitrogen Hypoxia Protocol Litigation***

| | | |
|---|---|---|
| DAVID WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-00111-ECM |
| | ) | *DEATH PENALTY CASE* |
| | ) | |
| GREG LOVELACE,<br>Commissioner, Alabama<br>Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT

Defendant Greg Lovelace, Commissioner of the Alabama Department of Corrections, responds to Plaintiff David Wilson's Motion for Leave to Amend His Complaint (Doc. 162). The motion is six months late, and Plaintiff cannot show the good cause Rule 16(b)(4) requires. By his own account, the only thing that kept him from pleading firing squad before the deadline to amend was a legal theory of his own devising. That theory is contradicted by his existing pleading, it represents a view not shared by his fellow plaintiffs, and it has nothing to do with diligence under Rule 16(b)(4). Defendant does not oppose the proposed update to Plaintiff's allegations concerning the medical-aid-in-dying drug combination. Nor does Defendant oppose the deletion of the previously dismissed Count III and Parts A and B of Count IV. But adding a new alternative

method of execution—fundamentally altering the claim two and a half years after Wilson filed his first complaint—is a bridge too far.

## BACKGROUND

Plaintiff filed this § 1983 action on February 15, 2024. (Doc. 1). He filed his First Amended Complaint on March 31, 2025. (Doc. 35). That complaint pleaded oral injection of a medical-aid-in-dying ("MAID") drug combination as his alternative method of execution under the *Baze-Glossip* standard. (Doc. 35 ¶ 77). This Court's scheduling order required amended pleadings by February 24, 2026. (Doc. 80 § 4). On June 9, 2026, the Court ruled in *Lee v. Lovelace*, No. 2:25-cv-00680-ECM. Plaintiff now seeks leave to plead firing squad as an alternative method of execution. He does so by incorporating verbatim the allegations Lee pleaded in his complaint. (Doc. 162 ¶ 16; Doc. 156-1 ¶¶ 80-86).

## LEGAL STANDARD

Plaintiff concedes that, because the deadline for amending pleadings has passed, he must first satisfy Rule 16(b)(4) before the Court even considers Rule 15(a). (Doc. 162 ¶ 7). As Plaintiff acknowledges, *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998), and Federal Rule of Civil Procedure 16(b)(4) provide that a pleading deadline may be modified "only for good cause and with the judge's consent." That standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note). It is an exacting standard, and in applying it, courts in this circuit ask whether the information supporting the proposed amendment was available to the movant before the scheduling order's deadline to amend. *Id.* at 1418, n.2, 1419. If the movant cannot show diligence, "the good cause inquiry should end." *Sosa*, 133 F.3d at 1418 (alterations adopted and quotations omitted).

## ARGUMENT

### I. Plaintiff cannot establish good cause under Rule 16(b)(4).

Plaintiff's only asserted basis for good cause is that he "could not have proposed the firing squad as an alternative method to the Alabama nitrogen hypoxia execution protocol until it was held to be an alternative method by a federal court in Alabama, which occurred after the scheduling order deadline." (Doc. 162 ¶ 9). He elaborates that he will plead "only . . . an alternative method that has been found to be acceptable by a federal court in Alabama." (*Id.* ¶ 12). That is a rule Plaintiff invented for himself. It appears nowhere in Rule 16, *Sosa*, *Baze*, or *Glossip*. And in any event, it is one Plaintiff hasn't even followed.

#### A. The *Baze-Glossip* standard for pleading alternative methods does not require that such methods have been "found to be acceptable by a federal court in Alabama."

Plaintiff defends his untimely amendment on the ground that he could plead only an alternative "found to be acceptable by a federal court in Alabama." (Doc. 162 ¶ 12). That position has no basis in the existing law. A prisoner's alternative must be feasible, readily implemented, significantly safer, and not reasonably rejected by the State. *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citing *Baze v. Rees*, 553 U.S. 35, 52 (2008)). That is a factual showing the prisoner makes, first through plausible allegations and then through proof. Nothing in that standard requires that the proposed alternative have been resolved in another plaintiff's favor in an earlier case.

The *Lee* litigation itself disproves Plaintiff's theory. Lee won an injunction with firing squad as his alternative despite this method never having been "found to be acceptable by a federal court in Alabama." Indeed, if Plaintiff were correct then no alternative could *ever* be pleaded and credited for the first time, and Lee would have failed to state a claim. Aside from Plaintiff, the State is unaware of any prisoner declaring himself limited by what alternatives local federal courts had blessed in past cases.

Plaintiff's theory also fits poorly with *Nance v. Ward*, which held that a prisoner need not plead an alternative authorized by state law for his § 1983 claim to proceed. 597 U.S. 159, 164-65 (2022); *accord Bucklew v. Precythe*, 587 U.S. 119, 140 (2019) (similar in dicta). If a prisoner need not limit his proposed alternative method to those the State's *legislature* has approved, there is no reason to think he must limit his proposed alternative to methods a *federal court* has already approved.

Nor does any aspect of the Federal Rules support Plaintiff's position. A complaint must contain factual allegations sufficient to state a plausible claim for relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not condition a plaintiff's ability to plead a fact on another court's having found that fact in another case. Plaintiff could have alleged facts about the firing squad, including the protocols of the States that use it, exactly as Lee did, *see Lee*, Doc. 40 at 20-22, ¶¶ 71-72, and as Plaintiff does now, *see* Doc. 162-1 at 34, ¶ 76 (referencing firing squad executions from 1867); *id.* at 35-36, ¶ 80 (noting that "[e]xecution by firing squad is a method of execution authorized in five states"); *id.* (noting firing squad executions carried out in South Carolina in 2025); *id.* at 37, ¶ 83 (referencing Utah's firing squad protocol, which was effective as of June 10, 2010).

### B. Plaintiff's operative complaint includes an alternative method never endorsed by a federal court in Alabama, thus contradicting Plaintiff's self-imposed rule.

Plaintiff's First Amended Complaint pleads a MAID drug combination as his alternative method. (Doc. 35 ¶ 77). No federal court in Alabama has found that method to be a qualifying alternative to Alabama's nitrogen hypoxia protocol. Indeed, Defendant is unaware of any court that has made such a finding. MAID has never been authorized or used as a method of execution in Alabama or in any other State.

Plaintiff attempts to reconcile this tension by asserting that MAID "has already ***effectively*** been found to be a possible alternative to the Alabama protocol." (Doc. 162 at 8, ¶ 13 (emphasis added)). In support he cites an order in *Hamm v. Dunn*, No. 2:17-cv-02083-KOB (N.D. Ala. Feb. 6, 2018), Doc. 30. (Doc. 162 ¶ 13; Doc. 35 ¶ 77), but *Hamm* made no finding that MAID satisfies the second prong of *Baze-Glossip* as to the nitrogen hypoxia protocol challenged here. The February 6, 2018, order from *Hamm* made no "finding that Hamm established a substantial likelihood of success on the merits" of his Eighth Amendment claim, *Hamm v. Comm'r*, 2018 WL 2171185, at *3 (11th Cir. Feb. 13, 2018), meaning that the district court made no finding, "effectively" or otherwise, that MAID was "a possible alternative to the Alabama protocol."[1] By Plaintiff's own logic, then, he could not have pleaded MAID either. But he did, proving that even under Plaintiff's own logic his proposed reading of *Baze-Glossip* and his proposed pleading rule are not genuine constraints on what he could have pleaded. He applied them selectively and presents them now only to excuse the untimeliness of this amendment. Novel post hoc legal interpretations strategically applied to long-known facts do not satisfy Rule 16's "good cause" standard.

### C. The firing squad alternative was available to plead, and was pleaded by others, well before the deadline.

Nothing prevented Plaintiff from pleading the firing squad before February 24, 2026. Other plaintiffs in this consolidated litigation did exactly that. For example, the plaintiff in *Williams* pleaded firing squad as an alternative method of execution in a complaint filed on August 22, 2025,

[1] Similarly telling is Plaintiff's use of the phrase "Alabama protocol." In *Hamm*, the "protocol" at issue was Alabama's *lethal injection* protocol, not the nitrogen hypoxia protocol Plaintiff now challenges. So even if the court in *Hamm* made some finding that MAID was a viable alternative method (and it did not), that finding would be limited to MAID's status as an alternative to a method that Plaintiff does not challenge here. And whether MAID would significantly reduce a substantial risk of severe pain under Alabama's lethal injection protocol is wholly distinct from whether it would do so relative to Alabama's nitrogen hypoxia protocol.

six months before the scheduling order's deadline in this case. *Williams v. Lovelace*, No. 2:25-cv-677, Doc. 1 at 21, ¶ 71. Most tellingly, the *Williams* complaint was filed ***before*** this Court's firing-squad findings in *Lee*. If Williams could plead firing squad without a prior ruling, so could Plaintiff.

Plaintiff's own motion to amend confirms the point. Plaintiff argues that Defendant would suffer no prejudice because Defendant "has been defending against the firing squad alternative for over a year now." (Doc. 162 ¶ 25). Plaintiff cannot maintain that firing squad has been actively litigated, for more than a year, as an alternative method of execution proposed by Alabama hypoxia plaintiffs and also that he could not have pleaded it as an alternative until July 2026. And against that backdrop, a straightforward application of *Sosa* resolves this issue in the State's favor:

First, the information supporting the amendment was available well before the deadline. The firing squad protocols of other States, which Lee (*see Lee*, Doc. 40 at 21-22, ¶ 72) and Williams (*see Williams*, Doc. 1 at 21, ¶ 71 nn.49-50) pleaded, were publicly available before Plaintiff filed suit. *See Sosa*, 133 F.3d at 1419 ("[T]he information supporting the proposed amendment to the complaint was available to [Plaintiff] even before she filed suit.").

Second, Plaintiff's counsel is plainly familiar with the governing law. The alternative-method requirement has been settled since *Baze* and *Glossip* and was reaffirmed in *Bucklew*. Plaintiff's counsel has litigated that requirement throughout this case. (*See, e.g.*, Doc. 35 ¶¶ 75-77, 92-115); *see also Sosa*, 133 F.3d at 1419 (noting plaintiff's counsel's "familiarity and experience with" governing law as first reason for denying amendment under Rule 16).

**D. Plaintiff's legal theories have nothing to do with Rule 16(b) good cause.**

Plaintiff makes a number of irrelevant arguments that fail to establish good cause. He first argues that pleading firing squad earlier would have been "self-defeating" because of his *jus*

*cogens* theory that the requirement to plead an alternative is torture. (Doc. 162 ¶¶ 10-12, 17-18, 20). That theory underpinned Plaintiff's original Count III, which this Court dismissed. (Doc. 73). To the extent that there was a conflict between the two options, Plaintiff made a strategic choice to challenge the alternative requirement rather than satisfy it. That litigation choice does not render a scheduling deadline impossible to meet "despite . . . diligence." *Sosa*, 133 F.3d at 1418.

Plaintiff next incorrectly argues that *Baze* and *Glossip*, expressly or implicitly, altered Rule 16(b)'s good cause standard. As noted above, those decisions do not create a special exemption from scheduling orders for § 1983 plaintiffs who prefer to wait for the outcome of another lawsuit challenging the same method.

Plaintiff's footnote argument fares no better. He argues that, after *Lee*, any Alabama plaintiff challenging the nitrogen hypoxia protocol "does not even need to plead the firing squad as an alternative for the reviewing court to find that the firing squad satisfies the second prong of the *Baze-Glossip* standard." (Doc. 162 at 7-8 n.1). That contention is wrong for the reasons detailed in the State's opposition to the motion for summary. (Doc. 164). It is also irrelevant to the only question now before the Court: whether Plaintiff was diligent in seeking to amend.

## II. The Court need not reach the Rule 15(a) issue, but Plaintiff cannot show that leave to amend should be granted under that Rule.

When a movant fails to establish good cause under Rule 16(b), the Court need not consider whether amendment would be proper under Rule 15(a). *Sosa*, 133 F.3d at 1419. Should the Court reach Rule 15, however, leave should be denied. Although leave is to be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), it is not automatic. The Court may deny leave for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff contends that

denial is appropriate only upon a “flagrant” violation of a *Foman* factor (Doc. 162 ¶ 28), but *Foman* contains no such limitation, and Rule 15(a) leaves the decision to this Court’s discretion. *Id.*

***Undue Delay.*** As noted above, the delay here is substantial and unexplained by anything other than litigation strategy. The firing squad alternative was available to Plaintiff when he filed suit in February 2024, when he amended in March 2025, and at every point before the February 24, 2026 deadline. But Plaintiff chose not to plead it, and there is no basis in fact or law to measure delay or diligence only from the *Lee* ruling, as Plaintiff does (Doc. 162 ¶¶ 25-26, 29). Plaintiff’s reliance on *Espey v. Wainwright*, 734 F.2d 748 (11th Cir. 1984), is misplaced for the same reason: there is no timeliness to credit when the amendment could have been made more than two years earlier. And this amendment represents a continuation of a pattern of delay that this Court has made clear it will not tolerate. *Frazier v. Hamm*, 2025 WL 361172, at *15 (M.D. Ala. Jan. 31, 2025) (“[T]he equities are not in Frazier's favor because he unreasonably delayed filing this § 1983 action and seeking injunctive relief.”); *id.* at *16-17 (“Based on the totality of the circumstances, the Court finds Frazier’s delays inexplicable and inexcusable, and he has thus left little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.”) (citation modified).; *id.* at 38-39 (“That Fraizer now challenges the Protocol because it deprives a conscious person of oxygen strikes the Court as a change in legal position intended to apart to the ‘exigencies of the moment,’ rather than a bona fide legal argument that depriving a conscious person of oxygen is constitutionally suspect. While Frazier might not be estopped from advancing his current position, his change in position, although

not dispositive, bolsters the Court's conclusion that the equities do not favor injunctive relief on this record.").[2]

***Undue Prejudice.*** Plaintiff argues Defendant suffers no prejudice because Defendant has defended against the firing squad alternative in other cases. (Doc. 162 ¶ 25). But this case is at an advanced stage—Plaintiff's September 15, 2026 expert disclosure deadline has already passed, for instance. *Cf. Bucklew*, 587 U.S. at 149 ("[T]he long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive."). And Defendant has made litigation decisions and committed finite resources in reasonable reliance on Plaintiff's operative pleading that existed as of this Court's deadline to amend. That the same alternative is at issue in other cases does not eliminate the burden of litigating it anew in this one, on this record, against this Plaintiff.

## CONCLUSION

For the reasons above, this Court should deny Plaintiff's Motion for Leave to Amend (Doc. 162) to the extent it seeks to add firing squad as an alternative method of execution.

Respectfully submitted on this the 1st day of October 2026.

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA
BY—

***/s/ Brenton L. Thompson***
Brenton L. Thompson
*Assistant Attorney General*

[2] But even if this Court were to measure delay and diligence from June 9, 2026 (and it should not), Plaintiff could not explain why he took more than 77 days from the date of this Court's order to file the proposed amended complaint now at issue. Considering that all he did was cut and paste the firing squad allegations from past Alabama hypoxia complaints, this Court should view his proposed amendment, one that came so close to the expert disclosure deadline, as dilatory and the sort of late hour amendment that Rule 15(a) will not sanction.

Polly S. Kenny
*Assistant Attorney General*

Lauren A. Simpson
*Deputy Attorney General*

Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that on October 1, 2026, I served a copy of the foregoing upon counsel for the Plaintiff by filing the same via the Court's CM/ECF system.

Respectfully submitted,

Steve Marshall
*Alabama Attorney General*

***/s/ Brenton L. Thompson***
Brenton L. Thompson
*Assistant Attorney General*
Counsel for Defendant

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Brenton.Thompson@AlabamaAG.gov