**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| Alabama Nitrogen Hypoxia Protocol | ) | Case No. 2:24-cv-111-ECM |
| Litigation | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF TAYLOR'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT

Defendants respond to Plaintiff Jarrod Taylor's Motion for Leave to Amend His Complaint. (Doc. 167.) Like Wilson's recent motion, this motion is far too late, and Plaintiff cannot show the good cause Rule 16(b)(4) requires. Defendants do not oppose the proposed update to Plaintiff's allegations concerning the medical-aid-in-dying (MAID) drug combination, just as Defendants did not oppose plaintiff David Wilson's parallel amendment. But the two remaining amendments materially alter Plaintiff's previously pleaded alternatives and come too late to satisfy Rule 16's exacting diligence standard.

## BACKGROUND

Plaintiff filed this 42 U.S.C. § 1983 action on August 22, 2025. Complaint, *Taylor v. Hamm*, 2:25-cv-00678 (M.D. Ala. Aug. 22, 2025), Doc. 1. That complaint pleaded intravenous administration of midazolam prior to nitrogen gas and oral injection of a MAID drug combination under the *Baze–Glossip* standard. *Id.* at ¶¶ 146-59, 160-74. He filed his First Amended Complaint on May 1, 2026, to plead the

additional alternative method of execution of firing squad. (Doc. 127.) This Court's scheduling order required Plaintiff to file his amended pleadings by May 1, 2026. (Doc. 124.) Plaintiff now seeks leave to plead (1) intravenous administration of morphine, in addition to midazolam, prior to the flow of nitrogen gas, (2) administration of an anti-emetic medication prior to morphine, hypoxia, or the MAID cocktail, and (3) DDMAPh as his MAID cocktail.

**LEGAL STANDARD**

Plaintiff concedes that because the deadline for amending pleadings has passed, he must first satisfy Rule 16(b)(4) before the Court even considers Rule 15(a). (Doc. 167 at 8.) As Plaintiff acknowledges, *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998), and Federal Rule of Civil Procedure 16(b)(4) provide that a pleading deadline may be modified "only for good cause and with the judge's consent." That standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting FED. R. CIV. P. 16 advisory committee's note). It is an exacting standard, and in applying it, courts in this circuit ask whether the information supporting the proposed amendment was available to the movant before the scheduling order's deadline to amend. *Id.* at 1418 n.2, 1419. If the movant cannot show diligence, "the good cause inquiry should end." *Id.* at 1418 (citation modified).

## ARGUMENT

### I. Amendment to add the administration of morphine prior to midazolam and nitrogen.

Plaintiff proposes to plead an intravenous injection of 30 milligrams of morphine before a dosage of midazolam sufficient to render an inmate unconscious is administered and nitrogen begins to flow. He argues he satisfies the Rule 16(a)(4) and Rule 15(a) requirement to amend his pleading months after the Court-set deadline.

#### A. Plaintiff cannot establish good cause under Rule 16(b)(4).

Plaintiff's only asserted basis for good cause is that he "was not and could not reasonably have been aware of the benefits of including morphine" before "expert consultations, which occurred as the time to prepare expert disclosures approached[.]" (Doc. 167 at 9.) He reasons that in preparation for the September 15, 2026, expert disclosure deadline, Dr. Carly Zapata "reached and articulated the expert conclusion that the addition of morphine…would assist in more effectively ensuring respiratory suppression and deep sedation, and would more effectively reduce the risk of severe pain and suffering during a nitrogen hypoxia execution." *Id*.

This alternative was available to plead, and was pleaded by others, well before the deadline. Nothing prevented Plaintiff from pleading the administration of morphine to the alternative nitrogen hypoxia protocol method propounded. For

example, Plaintiffs Belisle, Van Pelt, and Brooks pleaded the intravenous administration of midazolam followed by 30 milligrams of morphine and then the nitrogen protocol on May 4, 2026. (Docs. 135 ¶ 70, 136 ¶ 70, 137 ¶ 70.) Plaintiff cannot claim that this alternative "was not and could not" have been discovered before speaking with Dr. Zapata on the eve of expert disclosures when three other plaintiffs pled the alternative in May. A straightforward application of *Sosa* resolves this issue in the State's favor: the information supporting the amendment was available before the scheduling order deadline, as demonstrated by Plaintiffs Belisle, Van Pelt, and Brooks. This is even truer considering discovery was consolidated on March 16, 2026. (Doc. 103.) It appears what Plaintiff actually complains of, then, is not that the facts were *not* ascertainable, but that it took Plaintiff too long to conduct discovery. That is not due diligence, and it is thus not good cause under Rule 16(b)(4).

### B. The Court need not reach the Rule 15(a) issue, but Plaintiff cannot show that leave to amend should be granted under that Rule.

When a movant fails to establish good cause under Rule 16(b), the Court need not consider whether amendment would be proper under Rule 15(a). *Sosa*, 133 F.3d at 1419. Should the Court reach Rule 15, however, leave should be denied. Although leave is to be "freely give[n] when justice so requires," FED. R. CIV. P. 15(a)(2), it is not automatic. The Court may deny leave for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party,

or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff contends that denial is appropriate only upon a "flagrant" violation of a *Foman* factor (Doc. 167 at 12), but *Foman* contains no such limitation, and Rule 15(a) leaves the decision to this Court's discretion.

***Undue Delay.*** As noted above, the delay here is substantial and unexplained by anything other than litigation strategy. The morphine and midazolam combination before the nitrogen hypoxia protocol alternative was available to Plaintiff as late as May 4, 2026. But Plaintiff chose not to plead it then. Plaintiff's reliance on *Espey v. Wainwright*, 734 F.2d 748 (11th Cir. 1984), is misplaced for the same reason: there is no timeliness to credit when the amendment could have been made months earlier. And this amendment represents a continuation of a pattern of delay that this Court has made clear it will not tolerate. *Frazier v. Hamm*, 2025 WL 361172, at *15 (M.D. Ala. Jan. 31, 2025) ("[T]he equities are not in Frazier's favor because he unreasonably delayed filing this § 1983 action and seeking injunctive relief."); *id.* at *16-17 ("Based on the totality of the circumstances, the Court finds Frazier's delays inexplicable and inexcusable, and he has thus left little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.") (citation modified); *id.* at 38-39 ("That Fraizer now challenges the Protocol because it deprives a conscious person of oxygen strikes the Court as a change in legal position intended to apart to

the ‘exigencies of the moment,’ rather than a bona fide legal argument that depriving a conscious person of oxygen is constitutionally suspect. While Frazier might not be estopped from advancing his current position, his change in position, although not dispositive, bolsters the Court’s conclusion that the equities do not favor injunctive relief on this record.”).[1]

***Undue Prejudice.*** Plaintiff argues Defendants suffer no prejudice because Defendants have defended against similar claims by Plaintiffs Belisle, Van Pelt, and Brooks in this consolidated action. (Doc. 167 at 11.) But this case is at an advanced stage—Plaintiff’s September 15, 2026, expert disclosure deadline has already passed, for instance. *Cf. Bucklew v. Precythe*, 587 U.S. 119, 149 (2019) (“[T]he long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive.”). And Plaintiff’s addition of morphine is pleaded differently from Belisle’s, Van Pelt’s, and Brooks’s complaints because Plaintiff wants morphine administered *before* midazolam. (Doc. 167-3 ¶¶ 151-53.) Defendants have made litigation decisions and committed finite resources in reasonable reliance on Plaintiff’s operative pleading that existed as of this Court’s deadline to amend. That a substantially similar alternative is at issue does not

[1] Considering that all Plaintiff did was rearrange a similar claim established by three other plaintiffs, this Court should view his proposed amendment, one that came so close to the expert disclosure deadline, as dilatory and the sort of late-hour amendment that Rule 15(a) will not sanction.

eliminate the burden of litigating it anew in this one, on this record, against this Plaintiff.

## II. Amendments to add an anti-emetic to the modified nitrogen hypoxia and MAID alternatives.

Plaintiff moves to amend his complaint to add the administration of an anti-emetic to prevent nausea and vomiting one hour prior to being transported to the execution chamber in an alternative nitrogen hypoxia or MAID execution. (Doc. 167 at 5; Doc. 167-3 ¶¶ 144, 161.) He again argues he satisfies the Rule 16(a)(4) and Rule 15(a) requirement to amend his pleading months after the Court set deadline.

### A. Plaintiff cannot establish good cause under Rule 16(b)(4).

Plaintiff's only asserted basis for good cause is that after "consulting with his experts in connection with the expert disclosures deadlines," he learned that an anti-emetic would "reduce the risk of nausea and vomiting" in the modified nitrogen hypoxia protocol or a MAID protocol. (Doc. 167 at 13.) He claims he became aware of this after the Court's amendment deadline. (*Id.*)

This alternative was available to plead, and was pleaded by another, well before the deadline. Nothing prevented Plaintiff from pleading the administration of an anti-emetic during a modified nitrogen hypoxia or MAID execution. For example, Plaintiff Jenkins pleaded the option of an anti-nausea medication before the administration of nitrogen. Complaint ¶ 78(a), *Jenkins v. Hamm*, 2:25-cv-00676 (M.D. Ala. Aug. 22, 2025), Doc. 1. Plaintiff cannot claim he "recently learned" that

the administration of an anti-emetic would be beneficial when Plaintiff Jenkins pleaded it over a year ago. The information supporting the amendment was available before the deadline, as demonstrated by Jenkins. *See Sosa*, 133 F.3d at 1419 ("[T]he information supporting the proposed amendment to the complaint was available to [Plaintiff] even before she filed suit."). Even if Plaintiff was unable to plead the addition of an anti-emetic in his initial complaint, he certainly had the resources to plead it before the Court's amendment deadline because discovery was consolidated among the cases on March 16, 2026. (Doc. 103.) Again, Plaintiff has not shown due diligence, and there is thus not good cause under Rule 16(b)(4).

**B. The Court need not reach the Rule 15(a) issue, but Plaintiff cannot show that leave to amend should be granted under that Rule.**

Plaintiff refers the Court to the same arguments he made in Section I.B. of his motion for why his addition of an anti-emetic does not implicate the *Foman* factors. (Doc. 167 at 13.) He further elaborates that an anti-emetic "plays no role in causing death under his pleaded alternatives" but refines his two of his alternatives. (*Id.*) However, the addition of a mandatory anti-emetic before a modified nitrogen hypoxia or MAID execution implicates undue delay and prejudice.

***Undue Delay.*** As noted above, the delay here is substantial and unexplained by anything other than litigation strategy. The administration of an anti-emetic before an execution was available to Plaintiff before the filing of his initial complaint. And Plaintiff offers no explanation for why he chose not to plead it then.

When the amendment could have been made over a year ago, Plaintiff's reliance on *Espey* is futile. Again, this amendment represents a continuation of a pattern of delay that this Court has made clear it will not tolerate. *See Frazier*, 2025 WL 361172, at *16-17 ("Based on the totality of the circumstances, the Court finds Frazier's delays inexplicable and inexcusable, and he has thus left little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.") (citation modified).

***Undue Prejudice.*** Plaintiff argues Defendant suffers no prejudice because Defendant has defended against a similar claim made by Plaintiff Jenkins. (Doc. 167 at 14.) But this case is at an advanced stage—Plaintiff's September 15, 2026, expert disclosure deadline has already passed, for instance. *Cf. Bucklew*, 587 U.S. at 149 ("[T]he long delays that now typically occur between the time an offender is sentenced to death and his execution are excessive."). And Plaintiff's addition of an anti-emetic is different from Jenkins's complaint, which currently pleads that Jenkins should be provided with "an option of anti-nausea and anti-seizure medication to prevent [Jenkins] from vomiting or seizing that could complicate the execution." Doc. 1 ¶ 78(a), *Jenkins*, 2:25-cv-00676. Defendant has made litigation decisions and committed finite resources in reasonable reliance on Plaintiff's operative pleading that existed as of this Court's deadline to amend. That a

substantially similar alternative is at issue does not eliminate the burden of litigating it anew in this one, on this record, against this Plaintiff.

## CONCLUSION

For the reasons above, this Court should deny Plaintiff's Motion for Leave to Amend to the extent it seeks to add the administration of morphine and an anti-emetic to his alternative methods of execution.

Respectfully submitted on October 5, 2026.

Steve Marshall
*Attorney General*

***/s/ Lauren A. Simpson***
Lauren A. Simpson
*Deputy Attorney General*

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to counsel of record.

***/s/ Lauren A. Simpson***
Lauren A. Simpson
*Deputy Attorney General*

ADDRESS OF COUNSEL:

Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Lauren.Simpson@AlabamaAG.gov