IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE:<br>ALABAMA NITROGEN HYPOXIA<br>PROTOCOL LITIGATION | CASE NO. 2:24-cv-00111-ECM |
| THIS DOCUMENT RELATES TO<br><br>MARK JENKINS,<br><br>Plaintiff,<br><br>v.<br><br>GREG LOVELACE, in his official capacity as Commissioner, Alabama Department of Corrections, and<br><br>TERRY RAYBON, in his official capacity as Warden, Holman Correctional Facility,<br><br>Defendants. | CASE NO. 2:25-cv-00676-ECM<br><br>CAPITAL CASE |

**PLAINTIFF MARK JENKINS'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

# INTRODUCTION

Defendants' opposition (Doc. 181, the "Opposition") asks this Court to prohibit Mr. Jenkins from adding expert-informed detail to the modified nitrogen hypoxia protocol alternative he pleaded in his original Complaint in August 2025. *See Jenkins v. Hamm*, 2:25-cv-00676 (Doc. 1) (M.D. Ala. Aug. 22, 2025). But Defendants cannot dispute that Mr. Jenkins sought leave to amend just days after his expert, Dr. Carly Zapata, timely disclosed the opinions on which the amendments rest, and well before Defendants' expert reports are due and discovery closes.

The Opposition overstates the changes Mr. Jenkins proposes, counting as "new" provisions that simply track the State's existing nitrogen hypoxia protocol (the "Protocol"), and listing deletions tied to claims the State has agreed may be dismissed. Once these are removed from the State's list of changes, all that remains is what Mr. Jenkins described in his motion (the "Motion"): further medical detail regarding modifications he already proposed. The State contends that (1) Mr. Jenkins's alternative is the same one three other plaintiffs pleaded in May 2026, and (2) it is different enough to impose a new litigation burden. It cannot be both.

The amendments neither change his theory nor prejudice Defendants. They simply provide helpful additional detail to an already-pleaded alternative as required by *Glossip* and *Baze*. Accordingly, the Court should grant the Motion.

# ARGUMENT

## I. The State Fails to Articulate Why Mr. Jenkins Was Not Diligent in Seeking Amendment, or How It Would Be Prejudiced by His Proposed Amendments.

1. The State asserts that Mr. Jenkins seeks to "substantially modify his modified hypoxia protocol alternative" and that the amendments "materially alter his previously pleaded alternatives." Opp. at 1–2. Neither characterization survives scrutiny. The State devotes much of its Opposition to cataloguing every difference between the modified protocol in Mr. Jenkins's original complaint and the one in his proposed amended complaint. *See id*. at 3–5. Those differences (to the extent they even *are* differences from the State's Protocol or Mr. Jenkins's original pleaded alternative) track precisely the purpose stated in the Motion: to add helpful and expert-informed "detail on the specific medications, dosages, and ordering of processes, based on further consultation with his expert witness." Mot. at 1–2.

2. Nor does the State engage with the Motion's showing that the amendments are "not a new theory" but "a refinement" of the pleaded alternative. Opp. at 6 (quoting Mot. at 7). The State quotes that language but offers no argument against it. The original complaint pleaded a modified protocol under which Mr. Jenkins would receive medication—including an IV sedative "in [a] dose sufficient to render [him] unconscious"—before the mask is placed, to ameliorate the superadded pain the Protocol inflicts. *See* Opp. at 3–4 (summarizing Doc. 1 ¶ 78(a)–

(c)). The proposed amended complaint does the same thing, specifying the drugs (an anti-emetic, morphine, and midazolam), dosages, and sequence. Doc. 166-2 ¶ 61(a), (f)–(j). That is the definition of a refinement. *See Perez Ramones v. AR Res., Inc.*, 2021 WL 247999, at *3 (S.D. Fla. Jan. 7, 2021) (granting leave where amendment "will not change Plaintiff's theory of liability"); *Adr1assist, LLC v. Lima One Cap., LLC*, 2022 WL 18459643, at *3 (N.D. Ga. Sept. 7, 2022) (granting leave to plead "additional facts" supporting a claim the court had already found adequately stated).

***a. The State Fails to Show a Lack of Diligence by Mr. Jenkins, or Rebut the Good Cause Shown for His Proposed Amendments***

3. Diligence under Rule 16(b)(4) is assessed in light of the circumstances as a whole. Courts in the Eleventh Circuit commonly consider (1) whether the movant failed to ascertain facts before filing the pleading or during discovery, (2) whether the information supporting the amendment was available to the movant, and (3) whether the movant delayed in seeking leave after acquiring that information. *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, 2020 WL 1905219, at *13 (S.D. Fla. Apr. 17, 2020) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). The good-cause determination rests in the Court's discretion. *Virciglio v. Work Train Staffing LLC*, 674 F. App'x 879, 885 (11th Cir. 2016). Each factor favors Mr. Jenkins.

4. The State's principal argument is that the "alternative was available to plead well before the deadline" because Plaintiffs Belisle, Brooks, and Van Pelt

pleaded an "alternative nitrogen gas protocol with midazolam and morphine" in May. Opp. at 6–7. But Rule 16(b)(4) asks whether the schedule could be met "despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation omitted). Here, the amendments rest on the specific medical judgments of Mr. Jenkins's own expert—which drugs, in what doses, and in what order would mitigate the air hunger the Protocol inflicts. Those judgments were developed in connection with Dr. Zapata's report which was timely disclosed on September 15, 2026 under the Court's schedule. Mot. at 4–7. Good cause exists where, as here, the movant "did not have the information necessary to assert" the amendment until after the deadline despite his diligence. *Virciglio*, 674 F. App'x at 885; *accord Havana Docks*, 2020 WL 1905219, at *14. By contrast, in *Sosa*, good cause was lacking because the facts underlying the amendment were available to the plaintiff before he even filed suit. *133 F.3d* at 1419; *see Perez Ramones*, 2021 WL 247999, at *3 (distinguishing *Sosa*).

5. Mr. Jenkins diligently moved to amend his complaint immediately after Dr. Zapata developed her opinions. He met and conferred with Defendants on September 14, served the medical opinions underlying his proposed amendments with Dr. Zapata's report on September 15, and filed the Motion three days later. Mot. at 5. Courts find diligence on comparable—or longer—timelines. *See Havana Docks*, 2020 WL 1905219, at *14 (excusing two-and-a-half-week delay after

deadline); *Perez Ramones*, 2021 WL 247999, at *3 (post-deadline interval of several months between receipt of discovery and motion did not show lack of diligence).

6. Mr. Jenkins acknowledges that Plaintiffs Belisle, Brooks, and Van Pelt amended their complaints shortly after the extended May 1 amendment deadline. *See* Opp. at 2. The timing of Mr. Jenkins's amendments reflects the importance of fully consulting with his medical experts and the fact that such expert analysis was not available to Mr. Jenkins at the time that the other Plaintiffs amended. These considerations amply establish good cause under Rule 16(b)(4) and *Sosa*. In addition, Mr. Jenkins has alleged (and does not seek to amend) the separate alternative method of the firing squad under the Utah or South Carolina protocols which has already been found to be feasible and readily implemented in the *Lee* case.

***b. The State Fails to Show Undue Delay or Prejudice***

7. Having satisfied Rule 16(b), Mr. Jenkins readily meets Rule 15(a)'s liberal standard, under which leave should be "freely given" absent an apparent or declared reason to deny it. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Adr1assist*, 2022 WL 18459643, at *2 (court must provide a "substantial reason" for denial). The State invokes only undue delay and undue prejudice. Opp. at 7–9. Neither applies.

8. The State's undue-delay argument repackages its Rule 16 argument and fails for the same reasons. Opp. at 8. Its reliance on *Frazier v. Hamm*, 2025 WL

361172 (M.D. Ala. Jan. 31, 2025), is misplaced. *Frazier* addressed whether the equities supported preliminary injunctive relief where the plaintiff had "unreasonably delayed filing this § 1983 action and seeking injunctive relief," and where the Court perceived a change in legal position adopted to meet the "exigencies of the moment." *Id.* at *15–17 (quoted in Opp. at 8–9). It did not involve a motion for leave to amend, and nothing comparable is present here. Mr. Jenkins has pleaded a modified-protocol alternative from the outset of this case and does not change his legal position; he adds detail to it. Mot. at 4–5, 8. Nor is *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984), inapposite merely because the State believes the amendment could have come sooner, Opp. at 8; the Motion was filed promptly once its factual basis was available. The amendment is driven by a desire to present Mr. Jenkins's allegations in their most complete form and with notice to all parties, and Mr. Jenkins has not previously moved to amend. Mot. at 7–9.

9. The State contends that the case is at an "advanced stage" because Mr. Jenkins's expert-disclosure deadline has passed. Opp. at 9. But the schedule provides for Defendants' expert reports on October 15, 2026 and the close of all discovery on December 14, 2026, Mot. at 2. The amendments require no change to any of those deadlines. *See Perez Ramones*, 2021 WL 247999, at *3 & n.3 (rejecting prejudice argument where amendment would not "affect any future deadlines in the Court's Scheduling Order"). The State's citation to *Bucklew v. Precythe*, 587 U.S. 119, 149

(2019), which concerns delays between sentence and execution, says nothing about whether adding detail to a pleaded alternative during open discovery prejudices a defendant. Opp. at 9. And the State had notice of the amendments before its expert reports were due.

10. The State's claimed reliance on Mr. Jenkins's original pleading fares no better. Opp. at 9. The State is already defending, in these consolidated proceedings, a modified protocol using the same drugs—midazolam and morphine—pleaded by three other plaintiffs since May. Opp. at 6–7. The only difference the State identifies is the order in which the two drugs are administered. Opp. at 9. A difference in sequence does not expand the scope of discovery or require the State to develop evidence it is not already developing. *See* Mot. at 8–9.

11. Finally, the State's footnoted suggestion that the amendment is "dilatory" because "all Jenkins did was rearrange a similar claim established by three other plaintiffs," Opp. at 9 n.2, undercuts its own prejudice argument. If the amendment merely rearranges an alternative the State is already litigating, the State suffers no cognizable prejudice from it. The State cannot have it both ways. And the State does not contend that the amendments would be futile; they add expert-informed factual detail to an alternative pleaded from the outset. *See Adr1assist*, 2022 WL 18459643, at *3; Mot. at 9.

12. Because Mr. Jenkins satisfies both Rule 16(b) and Rule 15(a), the Court should grant leave to amend with respect to the proposed protocol-modification amendments.

## II. Mr. Jenkins's Proposed Amendments Add Expert-Informed Detail, Delete Material Related to Claims the State Has Agreed He May Dismiss, or Track Provisions in the State's Existing Protocol

13. Moreover, some of the differences catalogued on the State's chart are not actually changes to the Protocol *at all*. Mr. Jenkins simply included them so that his alternative would track the State's usual execution practice. For instance, the provisions that Mr. Jenkins "will be placed on the gurney," and that he "shall then be allowed to make a final statement," Doc. 166-2 ¶ 61(b)–(d), are consistent with the State's existing execution protocol. *See, e.g.,* Doc. 155-4 (ADOC Execution Procedures) § X.A.iii ("The condemned inmate will be escorted to the execution chamber by the Execution Team and placed on the gurney."); *id.* § X.A.ix ("The condemned inmate will be given the opportunity to make a final statement (no more than two minutes.)"). The State cannot credibly argue that Mr. Jenkins is proposing new modifications to the Protocol by further aligning his proposed alternative with what already exists.

14. The State also counts, as evidence of a substantial change, text from the original complaint that Mr. Jenkins proposes to delete. *See* Opp. at 4–5. But those deletions—such as the provisions concerning physical proximity to his spiritual

advisor and the presence of counsel in the execution chamber—follow from the religious-liberty and as-applied claims Mr. Jenkins has agreed to dismiss. *Compare* Doc. 1 ¶ 78(d)–(f), *with* Doc. 166-2 ¶ 61(e). Likewise, the original request to "[r]emedy any other problems disclosed through release of [the] unredacted protocol" was removed because, as the State itself notes, the unredacted protocol has since been disclosed to counsel. Opp. at 5. The State consented to the dismissals, Opp. at 1, and should not then count the resulting deletions against Mr. Jenkins.

15. The chart below is copied from the Opposition and modified to indicate, for each change the State identifies, Mr. Jenkins's rationale for the proposed amendment:

| **ORIGINAL COMPLAINT** | **PROPOSED AMENDED (DOC. 166-2)** | **RATIONALE** |
|---|---|---|
| 78(a). Jenkins will have option of antinausea and anti-seizure medication. | 61(a). Jenkins will receive anti-emetic, such as 20 mg metoclopramide or 8 mg ondansetron, one hour prior to being transported to execution chamber. | Expert-informed additional detail. |
| *Not discussed.* | 61(b). Jenkins will be placed on the gurney. | Tracks the State's existing nitrogen hypoxia Protocol. |
| *Not discussed.* | 61(c). IV lines will be connected to Jenkins consistent with lethal injection executions. | Expert-informed additional detail; tracks the State's existing lethal injection protocol. |
| *Not discussed.* | 61(d). Jenkins can make final statement. | Tracks the State's existing nitrogen hypoxia Protocol. |
| 78(b). Jenkins will have | 61(f). Jenkins will receive | Expert-informed |

| ORIGINAL COMPLAINT | PROPOSED AMENDED (DOC. 166-2) | RATIONALE |
|---|---|---|
| option of IV sedative administered by qualified medical professional in dose sufficient to render Jenkins unconscious. | 30 mg morphine by IV. | additional detail. |
| *Not discussed.* | 61(g). Jenkins will receive midazolam by IV "sufficient to render the inmate unconscious." Preparation and administration of the dose should follow ADOC's lethal injection protocol for injecting midazolam. | Expert-informed additional detail. |
| 78(c). Licensed physician or other medical professional will be present to observe placement of mask, administer optional IV sedative, monitor EKG and pulse oximeter, remove mask if Jenkins should vomit, and pronounce time of death. | *Not discussed.* | Related to claims Jenkins has agreed to dismiss. |
| 78(d). Jenkins will have opportunity to speak and audibly pray with spiritual advisor without being masked; ensure that mask fit will allow for audible | 61(e). Before and after final statement, Jenkins can be ministered to by his spiritual advisor, according to approved plan. | Tracks the State's existing nitrogen hypoxia Protocol. |

| ORIGINAL COMPLAINT | PROPOSED AMENDED (DOC. 166-2) | RATIONALE |
|---|---|---|
| prayer without dislodging the seal or imposing other risks on Jenkins. | | |
| 78(e). Jenkins will have opportunity to be in close physical proximity to spiritual advisor, to touch spiritual advisor, and to hold spiritual advisor's hand. | 61(e). Before and after final statement, Jenkins can be ministered to by his spiritual advisor, according to approved plan. | Tracks the State's existing nitrogen hypoxia Protocol. |
| 78(f). Jenkins's counsel will be with him in execution chamber during execution, including observing placement of mask; in the alternative, audio of execution will be provided to counsel's observation room. | *Not discussed.* | Related to claims Jenkins has agreed to dismiss. |
| *Not discussed.* | 61(h). Five minutes after midazolam, member of execution team will conduct consciousness assessment identical to that used in ADOC's lethal injection protocol. | Expert-informed additional detail. |
| *Not discussed.* | 61(i). If Jenkins is still conscious, a second, identical dose of midazolam will be administered, followed by a five-minute wait and | Expert-informed additional detail. |

| ORIGINAL COMPLAINT | PROPOSED AMENDED (DOC. 166-2) | RATIONALE |
|---|---|---|
| | another consciousness check. | |
| *Not discussed.* | 61(j). If Jenkins is unconscious, and at least fifteen minutes after injection of morphine, execution team members will place mask on Jenkins and proceed as provided in ADOC protocol. | Expert-informed additional detail. |
| 78(g). Comprehensive training for execution team members placing and adjusting mask; state team members' level of experience with mask being used, and state metrics that will be used to ensure the mask is properly placed. | 61(k). Provisions for comprehensive training for individuals administering the medications and placing the mask on Jenkins; state team members' level of experience with mask being used, and state metrics that will be used to ensure the mask is properly placed. | Expert-informed additional detail. |
| 78(h). Remedy any other problems disclosed through release of unredacted protocol. | *Not discussed* (NB: unredacted protocol has been disclosed to counsel). | As noted by the State, the unredacted Protocol has been disclosed to counsel. |
| *Not discussed.* | 62. If IV route for morphine and midazolam is not possible, IM or oral administration can be used. | Expert-informed additional detail. |

16. As seen above, nearly half of the changes the State lists in its attempt to overstate the scope of Mr. Jenkins's proposed amendments relate to the claims

Mr. Jenkins has agreed to dismiss, reflect the State's disclosure of the unredacted Protocol, or track the Protocol more closely. The State can hardly claim that prejudice or burden results from changes made for such reasons.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Mr. Jenkins respectfully requests that this Court grant him leave to amend his complaint to:

(1) Remove the as-applied Eighth Amendment challenge and religious-liberty claims, which Mr. Jenkins no longer intends to pursue, and which Defendants agree may be removed; and

(2) Add expert-informed factual detail to the proposed modifications to the Protocol.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Samuel R. Diamant*

J. Andrew Pratt (ASB-3507-J)
Joshua Toll (pro hac vice)
Samuel R. Diamant (pro hac vice)

**King & Spalding LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
(404) 572-4600
apratt@kslaw.com
jtoll@kslaw.com
sdiamant@kslaw.com

*Attorneys for Plaintiff Mark Jenkins*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Samuel R. Diamant*
Samuel R. Diamant