**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| IN RE:<br>ALABAMA NITROGEN HYPOXIA<br>PROTOCOL LITIGATION | Case No. 2:24-cv-00111-ECM<br><br>**CAPITAL CASE** |

# PLAINTIFF JARROD TAYLOR'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND HIS COMPLAINT

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ... 1

ARGUMENT ... 2

I. LEAVE FOR THE MORPHINE AMENDMENT SHOULD BE GRANTED ... 2

A. Mr. Taylor Was Diligent in Seeking Amendment ... 2

B. Defendants Face No Undue Delay or Undue Prejudice ... 4

II. LEAVE FOR THE ANTI-EMETIC AMENDMENTS SHOULD BE GRANTED ... 8

A. Mr. Taylor Was Diligent in Seeking Amendment ... 8

B. Defendants Face No Undue Delay or Undue Prejudice ... 9

III. THE COURT SHOULD APPROVE MR. TAYLOR'S UNOPPOSED AMENDMENT TO ADD THE DDMAPH COCKTAIL TO THE MAID ALTERNATIVE ... 11

CONCLUSION ... 11

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Adr1assist, LLC* v. *Lima One Cap., LLC*,
2022 WL 18459643 (N.D. Ga. Sept. 7, 2022) ....................2

*Bowers* v. *U.S. Parole Comm'n, Warden*,
760 F.3d 1177 (11th Cir. 2014) ....................5, 11

*Davis* v. *Wing Enters., Inc.*,
2021 WL 4478247 (M.D. Fla. Sept. 30, 2021) ....................4

*Floyd v. E. Airlines, Inc.*,
872 F.2d 1462 (11th Cir. 1989) ....................6

*Foman* v. *Davis*,
371 U.S. 178 (1962) ....................1

*Fox* v. *Safeco Ins. Co. of Ill.*,
2017 WL 8809488 (M.D. Fla. June 6, 2017) ....................7

*Frazier* v. *Hamm*,
2025 WL 361172 (M.D. Ala. Jan. 31, 2025) ....................6

*Johnson* v. *Precythe*,
954 F.3d 1098 (8th Cir. 2020) ....................7

*L.Z.* v. *BigAirBag B.V.*,
721 F. Supp. 3d 169 (D. Conn. 2024) ....................4

*March* v. *Best Buy Stores, LP*,
111 F. Supp. 3d 1236 (N.D. Ala. 2015) ....................4

*Method Pharm., LLC* v. *H-2 Pharma, LLC*,
2023 WL 8483491 (M.D. Ala. Dec. 7, 2023) ....................2

*Perez Ramones* v. *AR Res. Inc.*,
2021 WL 247999 (S.D. Fla. Jan. 7, 2021) ....................2, 3, 7, 10

*Sosa* v. *Airprint Sys., Inc.*,
133 F.3d 1417 (11th Cir. 1998) ....................1, 2, 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15 .................... *passim*

Fed. R. Civ. P. 16 .................... *passim*

**PRELIMINARY STATEMENT**

Plaintiff Jarrod Taylor's motion to amend his First Amended Complaint ("FAC") should be granted. Mr. Taylor proposes three modest amendments to the alternative methods to ADOC's nitrogen hypoxia protocol that he already pleaded: (i) the addition of morphine to his modified nitrogen hypoxia alternative method; (ii) the addition of an anti-emetic to his modified nitrogen hypoxia and MAID alternative methods; and (iii) the addition of the most current drug cocktail for MAID, which is unopposed by Defendants. Mr. Taylor does not seek to add any claims to the FAC or to allege any new alternative methods of execution. It is undisputed that Mr. Taylor moved to amend the FAC promptly after learning from his expert witness, Dr. Carly Zapata, the benefits that would be afforded by adding morphine to his modified nitrogen hypoxia alternative and by adding an anti-emetic to his nitrogen hypoxia and MAID alternatives.

The legal standards governing this motion are also undisputed. The relevant standard under Rule 16(b) is whether the original schedule "cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa* v. *Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). Rule 15(a) provides a liberal standard for amending a complaint. The United States Supreme Court has identified five reasons to deny leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). Because Mr. Taylor was diligent in proposing his amendments and because none of the *Foman* concerns are present, his motion should be granted.

What remains in dispute is narrow. Defendants oppose two refinements to the alternatives that Mr. Taylor has already pleaded, refinements that would ensure those methods are detailed with greater specificity and reflect the recently proffered medical opinions of Mr. Taylor's expert

witness. But they identify no concrete prejudice they would face as the result of these amendments, particularly given that Defendants are already preparing to address these same allegations with respect to other Consolidated Plaintiffs. Mr. Taylor's motion should be granted for the reasons described below and in his opening brief.

## ARGUMENT

### I. LEAVE FOR THE MORPHINE AMENDMENT SHOULD BE GRANTED

#### A. Mr. Taylor Was Diligent in Seeking Amendment

The ultimate inquiry under Rule 16(b)(4) is whether the moving party acted diligently. *Sosa*, 133 F.3d at 1418 ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension.") (internal quotation marks omitted); *Method Pharm., LLC* v. *H-2 Pharma, LLC*, 2023 WL 8483491, at *2 (M.D. Ala. Dec. 7, 2023) (Marks, J.) (citing *Sosa* and finding good cause). Mr. Taylor has demonstrated his diligence in seeking amendment, and thus has established good cause under Rule 16(b)(4).

In his opening brief, Mr. Taylor provided the chronology associated with his proposed amendment. As a threshold matter, Mr. Taylor has already pleaded a modified nitrogen hypoxia alternative. *See Adr1assist, LLC v. Lima One Cap., LLC*, 2022 WL 18459643, at *3 (N.D. Ga. Sept. 7, 2022) (granting leave to plead "additional facts" supporting a claim the court had already found adequately stated); *Perez Ramones* v. *AR Res., Inc.*, 2021 WL 247999, at *3 (S.D. Fla. Jan. 7, 2021) (granting leave where amendment "will not change Plaintiff's theory of liability"). In preparing for the September 15, 2026 expert disclosure deadline, Dr. Zapata concluded that administering morphine—an opioid that depresses ventilatory drive and relieves air hunger—in addition to midazolam would more effectively ensure respiratory suppression and deep sedation, and thereby reduce the risk of severe pain during a nitrogen hypoxia execution. Mot. 5–6. Mr. Taylor, who had pleaded a modified nitrogen hypoxia alternative involving midazolam but not

morphine, promptly reached out to Defendants. The parties met and conferred on September 14, 2026, and Mr. Taylor's counsel sent the text of his proposed amendments and a summary of changes to Defendants the next day, concurrent with service of Dr. Zapata's expert report. Mr. Taylor filed his motion for leave shortly thereafter on September 18, 2026. Mot. 2. Because he was diligent, Mr. Taylor should be allowed to amend his complaint under Rule 16. *See Perez Ramones*, 2021 WL 247999, at *3 (post-deadline interval of seven months between receipt of discovery and motion did not show lack of diligence).

Defendants do not dispute that Mr. Taylor acted promptly once Dr. Zapata communicated her conclusions to him. Instead, Defendants assert that Mr. Taylor should have added morphine to his modified nitrogen hypoxia alternative earlier because Plaintiffs Belisle, Van Pelt, and Brooks did so. Opp. 3–4. That argument omits crucial facts and is not supported by the law.

It is true that Messrs. Belisle, Van Pelt, and Brooks all pleaded the addition of morphine to their versions of a modified nitrogen hypoxia alternative, but that does not bear on whether Mr. Taylor was diligent. Messrs. Belisle, Van Pelt, and Brooks are all represented by the same counsel who represented Mr. Jeffrey Lee, whose trial, as the Court is well aware, was expedited. It appears that, in preparing for that expedited trial, counsel for Messrs. Belisle, Van Pelt, and Brooks reached the conclusion that amending to add morphine would be prudent. But that says nothing about Mr. Taylor's diligence, and Defendants cite no authority for the proposition that one plaintiff's diligence is determined by the pleading decisions of other plaintiffs. Mr. Taylor reached the conclusion that the addition of morphine would mitigate the risk of a painful death during a nitrogen hypoxia execution as Dr. Zapata finalized her expert report, and it is undisputed that he then promptly met and conferred with Defendants, shared the text of his proposed amendment, and filed the instant motion.

The facts of *Sosa* are instructive. In that case, plaintiff's own affidavit showed that she possessed the relevant information related to her later amendment before she filed suit. *Sosa*, 133 F.3d at 1419. Here, to the contrary, Mr. Taylor's proposed refinements to his pleaded alternatives rest on specific information developed for Dr. Zapata's expert report, filed on September 15, 2026.

Defendants' sole complaint about *Mr. Taylor's diligence* is that Mr. Taylor took "too long to conduct discovery." Opp. 4. But this vague retort ignores that the scheduling order provided for expert reports to be developed and filed later in discovery. Defendants do not point to any discovery that Mr. Taylor purportedly delayed or conducted inconsistent with the scheduling order. The relevant trigger for amendment was Dr. Zapata's expert opinion, and Mr. Taylor acted on that promptly.

Indeed, Mr. Taylor's proposed amendment, to add one drug to his modified nitrogen hypoxia alternative, is of a piece with case law that allows amendment that "simply alters the complaint's factual allegations to conform" to expert opinions. *March* v. *Best Buy Stores, LP*, 111 F. Supp. 3d 1236, 1244 (N.D. Ala. 2015); *see also Davis* v. *Wing Enters., Inc.*, 2021 WL 4478247, at *1–4, *15 (M.D. Fla. Sept. 30, 2021) (permitting amendment, four months after the deadline, to "clarify the allegations to conform with their experts' opinions") (citation cleaned up); *L.Z.* v. *BigAirBag B.V.*, 721 F. Supp. 3d 169, 178–80 (D. Conn. 2024) (finding diligence and good cause to amend the complaint three months after learning new facts from an expert report).

The diligence inquiry should be resolved in Mr. Taylor's favor, and he should be permitted to amend under Rule 16(b).

**B. Defendants Face No Undue Delay or Undue Prejudice**

Mr. Taylor also easily meets the requirements of Rule 15(a). Leave should be granted absent "substantial reason[s]" for denial. *Bowers* v. *U.S. Parole Comm'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014) (quoting *Espey* v. *Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984))

(modifications in original). Defendants have not raised any substantial reason for denial. Instead, they mechanically recite "undue delay" and "undue prejudice" without identifying any unjustified delay or actual prejudice. There is none.

1. Undue Delay

Defendants contend that Mr. Taylor's purported delay is "substantial and unexplained by anything other than litigation strategy." Opp. 5. But it is undisputed that Mr. Taylor acted promptly after Dr. Zapata finalized and communicated her expert conclusions that underpin Mr. Taylor's proposed refinements to his complaint. Defendants' selective consent to a similarly limited modification—the addition of the DDMAPh cocktail in the MAID alternative, *also* based on Dr. Zapata's expert conclusions—confirms that Mr. Taylor's morphine amendment will create no undue delay. Moreover, Mr. Taylor's amendment is not a tactic for "litigation strategy." Defendants frequently raise this bogeyman, but the allegation makes no sense here. There is no conceivable reason why Mr. Taylor would sit on an amendment to add morphine—a drug that his expert believes would mitigate the torturous pain of air hunger—to his modified nitrogen hypoxia alternative as a tactic. Mr. Taylor is more interested in not dying an excruciating death than in playing litigation games, and Defendants' accusation to the contrary should be rejected as unfounded.

To the contrary, the morphine amendment aligns Mr. Taylor's pleadings with those of Messrs. Belisle, Van Pelt, and Brooks. That alignment *streamlines* the issues for discovery and trial and thereby *reduces* the complexity of defending against varying pleadings. That promotes judicial economy, not delay or "litigation strategy." Indeed, Defendants identify no "strategic" benefit that Mr. Taylor would somehow achieve by the modest refinement he proposes.

Defendants' complaint that Mr. Taylor's proposed amendments come a few months after other plaintiffs' amendments is unavailing for the reasons discussed above. Moreover, "[t]he mere passage of time, without anything more, is an insufficient reason to deny leave to amend" under Rule 15(a)'s liberal standard. *Floyd* v. *E. Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir. 1989), *rev'd on other grounds*, 499 U.S. 530 (1991).

Furthermore, even if Defendants had established some delay (they have not), they have not articulated how such a delay would be "undue." Mr. Taylor moved to refine his pleaded alternatives to align with information included in Dr. Zapata's expert report. Defendants' reliance on *Frazier* v. *Hamm* to establish undue delay in this case is inapposite. Opp. 5 (citing 2025 WL 361172, at *15–17 (M.D. Ala. Jan. 31, 2025)). *Frazier* did not involve a motion for leave to amend; the Court's decision there weighed the equities on a request for injunctive relief, based on Mr. Frazier's delay in filing suit. *Frazier*, 2025 WL 361172, at *15. There is no basis to find the purported "pattern of delay" Defendants attempt to manufacture, much less any undue delay, by Mr. Taylor, who has diligently and timely pursued his Eighth Amendment claim and who now merely requests leave to plead his existing alternative methods of execution with greater specificity and in alignment with his expert's opinions. Mot. 7.

2. <u>Undue Prejudice</u>

Defendants likewise fail to articulate any credible undue prejudice. The opposition argues that the case is at an "advanced stage" because Plaintiffs' September 15, 2026 expert disclosure deadline has passed. Opp. 6. But expert discovery has just begun; Defendants will have had a month after Mr. Taylor disclosed his proposed amendments before their own expert reports are due; the close of discovery was three months away when Mr. Taylor informed Defendants of his proposed amendments; and the scheduled trial date is in the distant future. *See Perez Ramones*,

2021 WL 247999, at *3 & n.3 (rejecting prejudice argument where amendment would not "affect any future deadlines in the Court's Scheduling Order"). And, regardless of whether amendment is granted, Defendants will need to address Dr. Zapata's same opinions.[1] Moreover, Defendants already availed themselves of the opportunity to question Mr. Taylor about his proposed amendment at his recent deposition and will have the opportunity to question each of Mr. Taylor's experts on this topic at their depositions, which the parties are currently working to schedule. Thus Defendants have failed to offer any argument as to how Mr. Taylor's refinement of his previously pleaded alternative would be prejudicial because of the current state of the case. *Fox* v. *Safeco Ins. Co. of Ill.*, 2017 WL 8809488, *2–3 (M.D. Fla. June 6, 2017) (no prejudice where "the proposed amendments seek merely to clarify allegations either already known to the parties, within the scope of prior discovery, or already generally alleged within the initial complaint . . . [and] discovery is currently ongoing and the parties have approximately four months before trial").

Nor is there any merit to Defendants' contention that they are prejudiced because Mr. Taylor seeks to plead morphine administration "differently" than other plaintiffs, by alleging "morphine administered *before* midazolam." Opp. 6. Defendants cannot seriously argue that the *order* in which two drugs are administered, *i.e.*, whether morphine is administered before or after

[1] Defendants claim that Mr. Taylor's modest refinements will cause an undue burden, but this ignores the posture of the case. Mr. Taylor's already-pleaded alternative methods of execution satisfied notice pleading requirements, such that Defendants have been well aware that he would support his allegations with more specific evidence. *See Taylor* v. *Hamm*, 25-cv-678-ECM (M.D. Ala. Jan. 15, 2026) (order denying motion to dismiss). "Under the notice pleading regime of the federal rules," a plaintiff's complaint "need not set forth a detailed technical protocol for the administration of [a pleaded alternative] to state a claim." *Johnson* v. *Precythe*, 954 F.3d 1098, 1101 (8th Cir. 2020). Thus, Mr. Taylor's experts could, consistent with notice pleading, articulate how these alternatives should be implemented, elaborating on the pleaded allegations. Defendants cannot credibly be heard to complain of prejudice based on Mr. Taylor's proposed refinements to his pleadings, when he would be entitled to offer proofs at trial expanding on the implementation of his pleaded alternatives.

midazolam, creates any litigation prejudice or practical burden. Indeed, Defendants baldly assert that they "have made litigation decisions and committed finite resources" relying on Mr. Taylor's FAC, but do not identify any specific litigation decisions or allocation of resources that would be affected by the fact that Mr. Taylor proposes that morphine be administered before midazolam. *Id.* And Defendants' position is belied by their own footnote, in which Defendants claim that "all Plaintiff did was rearrange a similar claim established by three other Plaintiffs." Opp. 6 n.1. Defendants cannot establish prejudice from Mr. Taylor's proposed amendment to administer morphine by reciting the phrases "litigation decisions" and "finite resources," particularly when they readily admit they are already litigating the same issues in this consolidated action.

## II. LEAVE FOR THE ANTI-EMETIC AMENDMENTS SHOULD BE GRANTED

### A. Mr. Taylor Was Diligent in Seeking Amendment

Mr. Taylor's second proposed amendment would add an anti-emetic to both his modified nitrogen hypoxia alternative method and his MAID alternative method. Dr. Zapata concluded that an anti-emetic should be added to the hypoxia alternative because both morphine and hypoxia itself can cause nausea and vomiting. Zapata Expert Rep. 5–6. Moreover, Dr. Zapata concluded that vomiting during the administration of MAID could prevent absorption of the drug cocktail. *Id*. As stated above, once Dr. Zapata reached these conclusions and communicated them to Mr. Taylor, he promptly informed Defendants of his intent to amend his complaint, shared the language of the proposed amendment with them, and filed the instant motion.

With respect to the MAID alternative, Defendants do not allege that any other plaintiff previously alleged the administration of an anti-emetic prior to MAID. Nor could they. Thus it appears that Defendants effectively concede that Mr. Taylor's amendment to add an anti-emetic to his MAID alternative passes Rule 16(b) muster.

With respect to the hypoxia alternative, Defendants' sole Rule 16 argument against the addition of an anti-emetic rests on a single component of a different plaintiff's complaint. Defendants observe that Plaintiff Jenkins, in his August 22, 2025 complaint, pleaded "the option of an anti-nausea medication before the administration of nitrogen," and argue that this information therefore was available for Mr. Taylor to plead. Opp. 7–8. That argument fails for the reasons stated above: the central inquiry is diligence, and Mr. Taylor has established that he acted promptly after Dr. Zapata's opinions were finalized and communicated. Mot. 2, 9. The anti-emetic amendments therefore satisfy Rule 16(b)(4).

**B. Defendants Face No Undue Delay or Undue Prejudice**

As with the morphine amendment, Defendants cite unspecified "undue delay and prejudice" posed by the anti-emetic amendments. Opp. 8–9. Neither contention has merit.

1. Undue Delay

Defendants recycle their unsupported assertion that Mr. Taylor's purported delay is "substantial and unexplained by anything other than litigation strategy." There has been no delay here, let alone any "pattern" of delay—as Defendants assert—or any "undue" delay—the requisite finding under Rule 15. Mr. Taylor sought to refine his pleaded alternatives immediately after Dr. Zapata finalized and communicated her opinions.

Defendants once again raise the specter of "litigation strategy," and it is once again baseless. Opp. 8. There is no reason why Mr. Taylor would have delayed in pleading the administration of an anti-emetic—the purpose of which is to avoid a torturous death by asphyxiation on his own vomit during a hypoxia execution or the failure to absorb the lethal drugs during a MAID execution—to advance some unstated "litigation strategy." And Defendants identify no benefit such a strategy could hope to yield. The Court should reject this unarticulated and unfounded allegation of bad faith.

2. Undue Prejudice

As with the morphine amendment, Defendants advance an unsupported objection of "undue prejudice" based on vague allegations of "litigation decisions" taken and "finite resources" committed. Opp. 9. But, as stated above, expert discovery has just begun; Defendants will have had a month after learning of Mr. Taylor's proposed amendments before their own expert reports are due; the close of discovery was three months away when Mr. Taylor informed Defendants of his proposed amendments; and trial is even further on the horizon. *See Perez Ramones*, 2021 WL 247999, at *3 & n.3 (rejecting prejudice argument where amendment would not "affect any future deadlines in the Court's Scheduling Order"). Moreover, Defendants questioned Mr. Taylor about his proposed addition of an anti-emetic at his deposition, and they will have the opportunity to question Mr. Taylor's experts at their depositions. Defendants simply face no undue prejudice in litigating the administration of an anti-emetic for the same reasons they face no undue prejudice in litigating the administration of morphine.

In addition—addressing only the proposed amendment to the nitrogen hypoxia alternative—Defendants suggest that Mr. Taylor's anti-emetic amendment is "different" from Mr. Jenkins's pleading of "an option of anti-nausea and anti-seizure medication." Opp. 9. But Defendants do not explain how they are prejudiced by litigating whatever unidentified issues are raised by requiring the administration of an anti-emetic as part of a nitrogen protocol (as Mr. Taylor pleads) rather than by offering it as an option (as Mr. Jenkins pleads). That distinction is not a "substantial reason" to deny leave to amend. *Bowers*, 760 F.3d at 1185. The issue before the Court is the medication's impact on unconstitutional suffering during an execution if used; that issue is identical for Mr. Jenkins's pleading and Mr. Taylor's proposed amendment. Indeed,

Defendants acknowledge that they are already litigating "a substantially similar alternative," implicitly conceding that there is no prejudice to their defense. Opp. 9–10.

## III. THE COURT SHOULD APPROVE MR. TAYLOR'S UNOPPOSED AMENDMENT TO ADD THE DDMAPH COCKTAIL TO THE MAID ALTERNATIVE

Mr. Taylor respectfully asks the Court to grant his unopposed amendment to add the DDMAPh cocktail to his pleaded MAID alternative for the reasons set forth in his motion.

## CONCLUSION

For the foregoing reasons, Mr. Taylor respectfully requests that this Court grant his motion for leave to amend his complaint.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Justin D. Lerer*

Justin D. Lerer

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**

David K. Kessler (*pro hac vice*)
Justin D. Lerer (*pro hac vice*)
Kyle T. Sieber (*pro hac vice*)

1285 Avenue of the Americas,
New York, NY 10019
(212) 373-3000
dkessler@paulweiss.com
jlerer@paulweiss.com
ksieber@paulweiss.com

**Brief Ehrlich, P.C.**

Andrew J. Ehrlich (*pro hac vice*)

355 Riverside Drive, 5W
New York, NY 10025
(917) 405-7928
ajehrlich@gmail.com

*Attorneys for Plaintiff Jarrod Taylor*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Justin D. Lerer*

Justin D. Lerer