IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

***In re. Alabama Nitrogen Hypoxia Protocol Litigation***

| | | |
|---|---|---|
| DAVID WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-111-ECM |
| | ) | |
| GREG LOVELACE, Commissioner, | ) | *DEATH PENALTY CASE* |
| Alabama Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF DAVID WILSON'S REPLY**
**RE. MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

BERNARD E. HARCOURT
Alabama Bar No. ASB-4316A31B

Columbia Law School
Jerome Greene Hall, Suite 603
435 West 116th Street
New York, New York 10027
Telephone (212) 854-1997
E-mail: beh2139@columbia.edu

Dated: October 15, 2026

**PLAINTIFF DAVID WILSON'S REPLY**
**RE. MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

More than ten months before trial, and due to a change in circumstances that occurred more than four months after the scheduling deadline, Plaintiff David Wilson moved to amend his complaint to notice the firing squad as an alternative method of execution under Federal Rules of Civil Procedure 16(b) and 15(a). Plaintiff David Wilson filed his proposed amendment diligently after the change in circumstances, and the proposed amendment will have no effect whatsoever on Defendant—who has been defending against the firing squad now for more than two and a half years and is defending against it in the Consolidated Litigation—nor on this Court, which will have to decide the firing squad question in the other Consolidated cases. For these reasons, Mr. Wilson should be allowed to amend his complaint.

Mr. Wilson could not have been clearer in his original and first amended complaint that, on his theory of the case, he could not invent or make up an alternative protocol for his own execution, since that would amount to torture and violate *jus cogens* and the Eighth Amendment to the United States Constitution. *See* Docs. 1 and 35 ¶ 108 (Count III). Accordingly, Mr. Wilson only originally pled an alternative (MAID) that had been found feasible under the Alabama protocol by a

federal court in Alabama concerning the Alabama statutory methods of execution. *See* Doc. 35.

In its Response, Defendant concedes that Mr. Wilson is moving to amend his complaint on the basis of his theory of the case. Defendant repeatedly refers to "Plaintiff's theory." *See* Doc. 177 at page 3 ("Plaintiff's theory"), page 4 ("Plaintiff's theory"), page 6 ("Plaintiff's legal theories"), and page 1 ("a legal theory of his own devising"). In this regard, Defendant is correct: Mr. Wilson's complaint and his motion to amend are based on the legal theory that animates his challenge to Alabama's nitrogen gas protocol.

Defendant contends that this is not a valid ground to proceed. But it is the only ground on which Mr. Wilson can proceed: Mr. Wilson was not and is not going to constructively waive his legal theory by proceeding otherwise. Mr. Wilson was not going to plead a made-up protocol because he did not want to be held to have constructively waived his constitutional and international law claims that doing so would amount to torture. To be sure, Defendant disagrees with Mr. Wilson's theory of the case. But that does not entail that Mr. Wilson had to constructively abandon it.

In light of this Court's ruling in the deconsolidated case of the late Mr. Jeffery Lee, Mr. Wilson should be allowed to amend his complaint. Defendant makes a

number of unpersuasive arguments in his Response, which Mr. Wilson will address here.

## I. THE PROPOSED AMENDMENT DOES NOT "FUNDAMENTALLY ALTER" THE CLAIM

The heart of Defendant's argument, summarized in the introduction on the first page of his Response, is that "adding a new alternative method of execution" amounts to "fundamentally altering the claim two and a half years after Wilson filed his first complaint." Doc. 177, p. 1-2. That is a gross exaggeration. The fundamental claim in a methods-of-execution challenge is whether the method in question causes superadded pain, and the baseline, whether it is lethal injection, MAID, firing squad, or another feasible alternative, does not "fundamentally" alter the analysis.

The argument is also facetious, insofar as Defendant has been defending against the firing squad in these nitrogen gas challenges since at least November 20, 2023—almost three years ago—when the first plaintiff, Mr. Kenneth Eugene Smith, pled the firing squad as an alternative method of execution to nitrogen gas. *See Kenneth Eugene Smith v. John Q. Hamm*, Case No. 2:23-cv-00656-RAH, Doc. 16 ("First Amended Complaint"), at ¶ 101 on page 27 ("the firing squad is an available and feasible alternative that will substantially reduce the risk to Mr. Smith of superadded pain posed by the Protocol.").

Over the past three years, the contours of the "fundamental claim" in these nitrogen gas challenges has been known to Defendant and the federal courts, and it has not changed.

## II. DISTRICT JUDGE KARON BOWDRE IN THE NORTHERN DISTRICT DID MAKE SUFFICIENT FACTUAL FINDINGS TO ALLOW MR. WILSON TO PLEAD MAID AS AN ALTERNATIVE METHOD UNDER HIS THEORY OF THE CASE

Defendant contends that the Doyle Lee Hamm case "contradict[s] Plaintiff's self-imposed rule." Doc. 177, at p. 4. That is incorrect. In its ruling of February 6, 2018, District Judge Karon Bowdre found MAID to be feasible as an alternative to the Alabama execution protocol. To be sure, Judge Bowdre could not fully complete the analysis on the second prong of *Baze-Glossip* because she had insufficient evidence of Doyle Hamm's medical condition for his as-applied challenge; but she did rule that MAID was feasible. Thus, Mr. Wilson was not making-up a novel alternative or constructively waiving his Claim III when he noticed MAID as an alternative method of execution in his original and first amended complaints.

Mr. Wilson attached to his original and first amended complaints the hearing transcript and District Court ruling in Doyle Lee Hamm's case. *See* Doc. 35-1, Appendix D ("Hearing on oral injection on January 31, 2018," starting on page 48), and Appendix E ("Court order on oral injection alternative (J. Karon Bowdre)," starting on page 200). It is clear from those appendices, attached to the original and

first amended complaints, that Judge Bowdre had made sufficient findings to show that MAID was a feasible alternative. From the evidentiary hearing conducted on January 31, 2018, it is clear that:

1. Judge Bowdre discovered on her own the Tarber's Medical Dictionary in order to ascertain that an injection of MAID drugs by means of an NG tube was a lethal "injection" that complied with Alabama statutes at the time, requiring a statutory means of execution as an alternative method, *see* Doc. 35-1, at pages 176-177; [1]
2. Judge Bowdre ruled from the bench: "I do find that the plaintiff has pled sufficiently that there is an alternative to intravenous injection of drugs and for the purpose at this stage where there has been no discovery, that the pleading and the proffer are sufficient on those. Alabama statute specifically provides for lethal injection, but does not limit that in terms of intravenous only. And I can only assume, because I have to assume, that had the legislature wanted to limit it to intravenous lethal injection, it could have and would have said so. As Dr. Blanke testified and as the Tabor Medical Dictionary describes injection, it doesn't require a needle or a vein, and so I find that the statute does not on its face prohibit the oral injection of lethal drugs for execution purposes. I also note that the statute does not require specific drugs that are used, that's part of the protocol established by the Department of Corrections, so there's no statutory prohibition."

[1] It is important to understand that Mr. Doyle Lee Hamm's case was decided prior to *Nance v. Ward,* 597 U.S. 159 (2022), in which the United States Supreme Court held for the first time that the alternative method required by the second prong of the *Baze-Glossip* test did not have to be authorized by the state statute. At the time of Mr. Hamm's litigation, the Eleventh Circuit applied a stricter interpretation of *Baze-Glossip*, requiring that the plaintiff first demonstrate that *all* statutorily available methods of execution be deemed unconstitutional before a method that was *not* statutorily authorized could be found as the feasible alternative. *See Arthur v. Comm'r*, 840 F.3d 1268, 1316-17 (11th Cir. 2016). Thus, Judge Bowdre had to analyze whether MAID oral injection was already statutorily authorized as an alternative form of lethal injection. This Court, in the instant matter, no longer has to conduct this analysis following *Nance*.

Doc. 35-1, at pages 143-144.

Moreover, it her decision, Judge Bowdre specifically wrote:

> The court finds that, if Mr. Hamm can prove the inaccessibility of his peripheral and central veins, his proposed alternative "significantly reduce[s] a substantial risk of severe pain." *Arthur*, 840 F.3d at 1299. He has offered at least some evidence that, as applied to him, Alabama's method of execution may be ineffective and painful, while his proposed alternative is very likely to be effective and painless.
>
> Defendants contend that Mr. Hamm's alternative is not feasible or readily implemented because Mr. Hamm would have to drink either of the proposed drug combinations, so they cannot be considered "lethal injections." See Ala. Code § 15-18-82.1(a) (requiring execution by "lethal injection").
>
> As Dr. Blanke testified and as Taber's Medical Dictionary states, the medical definition of "injection" does not require a needle piercing the body; it requires only "[t]he forcing of a fluid into a vessel, tissue, or cavity." Injection, Taber's Medical Dictionary Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/757723/all/injection?q=injection (emphasis added). Non-medical dictionaries appear to agree. See Inject, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/injecting ("[T]o force a fluid into"); Inject, Oxford English Dictionary, http://www.oed.com/view/Entry/96079?redirectedFrom=inject#eid ("To drive or force (a fluid, etc.) in a passage or cavity, as by means of a syringe, or by some impulsive power; said esp. of the introduction of medicines or other preparations into the cavities or tissues of the body.").
>
> The court finds that administration of the proposed alternative drugs through a nasogastric tube would comply with Alabama's statute requiring execution by "lethal injection" because it would involve forcing the liquid into Mr. Hamm's body.

Doc. 35-1, at pages 220-221.

Accordingly, there was a sufficient basis for Mr. Wilson to notice in his original and first amended complaints that a federal court in Alabama had found that MAID was a feasible alternative to the Alabama protocol, thus allowing him to satisfy the *Baze-Glossip* pleading standard without constructively waiving his theory of the case.

In its Response, Defendant selectively quotes the Eleventh Circuit decision reversing Judge Bowdre's ruling, but in the process *cuts out a critical word* in the Eleventh Circuit's opinion. Defendant writes that Judge Bowdre "made no 'finding that Hamm established a substantial likelihood of success on the merits' of his Eighth Amendment claim, . . . meaning that the district court made no finding . . . that MAID was 'a possible alternative to the Alabama protocol.'" Doc. 177 at page 5.

As a preliminary matter, it is inappropriate to infer from the Eleventh Circuit's conclusion that the District Court "made no 'finding that Hamm established a substantial likelihood of success on the merits' of his Eighth Amendment claim" that the Eleventh Circuit also "made no finding . . . that MAID was 'a possible alternative to the Alabama protocol.'" Establishing a likelihood of success on the merits of the Eighth Amendment claim requires *first* that the District Court find MAID as a possible alternative. The inverse would be true—failure to find MAID to be a possible alternative would preclude a finding that plaintiff was likely to succeed on

the merits of his Eighth Amendment claim. But simply concluding that the likelihood of success on the constitutional claim was not legally established does not mean that the District Court did not make a prerequisite factual finding. That inverts the legal analysis.

But more importantly, Defendant cut out a critical word in the Eleventh Circuit's opinion in its quote. The Eleventh Circuit found that the District Court abused its discretion in granting a stay because it failed to make an "***express*** finding that Hamm established a substantial likelihood of success." *Hamm v. Commr., Alabama Dep't. of Corrections*, No. 18-10473, 2018 WL 2171185, at *3 (11th Cir. Feb. 13, 2018). In other words, the Eleventh Circuit concluded that the District Court's error was in its failure to adequately support its conclusion with factual findings, and it is evident from the opinion and record that the missing factual findings concerned Mr. Hamm's *medical condition*, *not the feasibility of MAID*. The District Court granted the stay with the caveat that Mr. Doyle Lee Hamm would likely succeed *"if"* he could factually support his allegations, and granted the stay to permit Mr. Hamm to obtain the necessary discovery from the state to substantiate his allegations. And the missing facts concerned Mr. Hamm's *own medical condition*, the proof for which the District Court correctly noted was under the Defendant's control. *Hamm v. Dunn*, 302 F. Supp. 3d 1287, 1302 (N.D. Ala. 2018). But while the District Court did indeed condition its conclusion on whether Mr.

Hamm would be able to prove his medical conditions, in part out of necessity**,** *the District Court lacked no such express findings with regard to MAID*. After summarizing the testimony of Dr. Charles Blanke, Mr. Hamm's MAID expert, who testified that MAID was successful in 99% of cases and complications were "extremely rare," the District Court stated that it "finds that, if Mr. Hamm can prove the inaccessibility of his peripheral and central veins, his proposed alternative 'significantly reduce[s] a substantial risk of severe pain'" and "is very likely to be effective and painless." *Id.* Thus, in its conclusion concerning Mr. Hamm's likelihood of success on his Eighth Amendment claim, the District Court assumed the facts concerning his as-applied challenge *but found the facts supporting the feasibility of his alternative.* In fact, the District Court continued in its analysis to find that oral injection, as defined by Dr. Blanke, fit within the Alabama lethal injection statute. The Eleventh Circuit's conclusion therefore does *not* imply that the District Court did not find MAID to be a feasible alternative method.

Insofar as Defendant suggests that the feasibility of MAID as an alternative depends upon the method challenged, or in other words, that MAID may be a feasible alternative to lethal injection but not to nitrogen hypoxia, *see* Doc. 177 at page 5 fn.1, that suggestion is also unavailing. Mr. Wilson recognizes that in determining whether a method of execution is unconstitutional, the challenged method must be compared to a feasible alternative, and therefore whether a

challenged method is viewed as unconstitutional may in part depend upon the identified alternative. *See* Doc. 162 at fn.1. But the reverse is not true. The feasibility of an alternative does not depend upon the challenged method. Otherwise, the *Baze-Glossip* test would be an entirely tautological exercise, with the constitutionality of one depending on the feasibility of the other, and the feasibility of the other depending on the constitutionality of the one.

It is true that the noticed alternative must "significantly reduce pain," and that finding depends upon what the challenged method is. But that aspect of the second prong determines whether the challenged method is unconstitutional. It does not affect whether the alternative is feasible—the alternative must be feasible *and* significantly reduce pain. The two exist in parallel and are not dependent upon each other.

At this juncture, Mr. Wilson is not asking the Court to decide that MAID would "significantly reduce pain" in comparison to nitrogen hypoxia—the Court does not need to make a finding on the second prong concerning MAID here in this motion to amend. Mr. Wilson's only contention here is that in noticing MAID, he was not providing the Court with an alternative that did not previously exist in Alabama. A District Court in Alabama had already found MAID to be feasible and effective, and likely to prove lethal injection unconstitutional in Mr. Hamm's case. The Court here only has to consider the first part of the previous sentence. MAID

had been found to be feasible, and therefore Mr. Wilson was not constructively waiving his argument in Count III in so pleading. Whether MAID proves nitrogen hypoxia, or lethal injection for that matter, unconstitutional is a question yet to be decided.

## III. Moreover, Mr. Wilson Was Barred Under Federal Rule of Civil Procedure 8 From Pleading Factual Allegations That Contradicted His Theory of the Case

Defendant contends that Mr. Wilson could have pled the firing squad under Rule 8 of the Federal Rules of Civil Procedure. *See* Doc. 177 at page 4. However, while it is true that "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims," *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009), it is equally true that "factual allegations must be consistent with alternative pleadings," *Barajas v. M1 Support Services, L.P.*, No. 1:23-CV-413-RAH, 2024 WL 3556763, at *2 (M.D. Ala. July 26, 2024) (citing *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795, 807 (1999)).

In other words, even though plaintiffs are permitted under the liberal pleading standards of the federal rules to plead alternative legal theories that may contradict one another, plaintiffs' *factual* allegations cannot contradict any of their legal theories. Therefore, Mr. Wilson could not have pled a made-up protocol while simultaneously pleading his Count III.

In Mr. Wilson's operative complaint, Doc. 35, he alleges in Count III that the *Baze-Glossip* prong requiring that a plaintiff challenging a method of execution must propose an alternative method of execution violates *jus cogens* international law. *See* Doc. 35 ¶¶ 92-115. Mr. Wilson's legal theory is that in imposing the requirement, first, "the federal courts have created a legal rule which has the effect of circumventing their 'judicial task' of ensuring the protection of human rights in accord with international law," Doc. 35 ¶ 102; second, "imposes a legal and moral paradox which thwarts the autonomous and professional observance of ethics and ultimately can lead to a denigration of the dignity of the defense team," Doc. 35 ¶ 105; third, "forces [the death row prisoner] to participate in their own execution[, which] is the moral equivalent of forcing someone to dig their own grave, which has been found to be a form of torture under international law," Doc. 35 ¶ 108; and fourth, "violate[s] the prisoner's right of access to a lawyer to defend his or her rights during all stages of the proceedings," Doc. 35 ¶ 110. In short, Mr. Wilson's legal argument alleges that by requiring prisoners and their legal teams to propose a method of execution otherwise unavailable in the state, courts no longer are required to fulfill their obligation to ensure compliance with international law, lawyers are no longer able to act ethically, prisoners are forced to engage in their own torture, prisoners would lose access to lawyers able to fully defend their rights, and all of these consequences violate international law.

Simply noticing a method that has already been found to be feasible in the state does not violate international law under this theory, as the method would have already passed judicial muster (or all parties have already conceded it to have done so); and neither the legal team nor the prisoner would have had to participate in its creation, and thus neither the lawyers' ethics nor obligations would be implicated, the prisoner would not have had to dig his own grave, and the prisoner's access to legal representation would not have been affected. However, making up and *factually defending* the feasibility of a protocol otherwise unavailable does, as it would mean the prisoner and his legal team altered the realm of possible execution methods available to the state. This would require a plaintiff rather than the courts to vouch for its compliance with international law, and because the prisoner and his lawyers would have invented it, the lawyers' ethics and obligations would be implicated, as would the prisoner's access to his legal teams' advocacy, and the prisoner would be required to participate in his own execution.

In order to substantiate Count III under this legal theory, Mr. Wilson would have had to present *factual allegations* to support it. Such factual allegations would concern the extent to which proposing a novel method would in fact excuse the courts from their duties, implicate the lawyers' abilities to engage in ethical representation, the prisoner's right of access to legal representation, and the torture that this practice would inflict upon the prisoner. Such factual allegations would be

amassed from previous and ongoing method of execution proceedings in which new methods of execution were proposed. A possible factual allegation *in opposition* to Mr. Wilson's theory is the number of method-of-execution challenges in which new methods were raised. Thus, by pleading firing squad, which was not at the time sanctioned either by the legislature or the courts, in his operative complaint, Mr. Wilson would have had to generate facts that may contradict his legal theory in Count III. He would have had to increase the number of cases in which new methods were proposed by engaging in the practice that he pleads as unlawful, thereby suggesting that the practice was somehow more palatable. The fact that he pled a new alternative, even under strict legal obligation, may also have been construed as sanctioning the practice. In short, by proposing a method previously unavailable, such as the firing squad, Mr. Wilson would have generated facts that could be interpreted as contradicting his legal theory. Rule 8, despite permitting the pleading of alternative legal theories, does not permit such factual contradiction. *Barajas v. M1 Support Services, L.P.*, No. 1:23-CV-413-RAH, 2024 WL 3556763, at *2 (M.D. Ala. July 26, 2024).

## IV. MR. WILSON WAS DILIGENT AND DID NOT DELAY FILING HIS MOTION TO AMEND

Defendant contends that Plaintiff David Wilson was not diligent under Rule 16 in filing his motion to amend. Doc. 177 at pages 5-6. This is inaccurate.

Mr. Wilson filed his motion to amend ten months before trial and shortly after this Court ruled that the firing squad satisfies the second prong of the *Baze-Glossip* test. There was ongoing litigation in Mr. Jeffery Lee's case in this Court through the end of July 2026 and in the federal courts until his execution on September 17, 2026. Undersigned counsel had to consult on several occasions with his client, Mr. Wilson, about whether to file an amendment, and had to share draft pleadings with his client. Mr. Wilson and the other Consolidated Plaintiffs were also preparing and filing a motion for summary judgment. Mr. Wilson exercised diligence in originally filing his motion to amend on August 25, 2026, the same day as the motion for summary judgment. Doc. 156; Doc. 155. *See Perez Ramones v. AR Res., Inc.,* 2021 WL 247999, at *3 (S.D. Fla. Jan. 7, 2021) (post-deadline interval of several months between receipt of discovery and motion did not show lack of diligence).

When this Court ruled that the firing squad satisfies the second prong of *Baze-Glossip* in a finalized order denying a motion to amend the judgment on July 22, 2026, Plaintiff could plead, consistent with his theory of the case that he has preserved for appeal and without constructively waiving his theory, that the firing squad has been held to be a feasible and available alternative by a federal court in Alabama. Mr. Wilson did so within weeks and was therefore diligent. The relevant standard under Rule 16(b) is whether the original schedule "cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa* v. *Airprint Sys., Inc.*, 133

F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). And the facts of *Sosa* are pertinent here. In *Sosa*, the plaintiff's affidavit demonstrated that she possessed the information she wanted to amend before she filed her lawsuit. *Sosa*, 133 F.3d at 1419. In Mr. Wilson's case, by contrast, his proposed amendment rested on changed circumstances that occurred several months after the scheduling deadline.

Because he was diligent, Mr. Wilson should be allowed to amend under Rule 16. *See Method Pharm., LLC v. H-2 Pharma, LLC*, No. 2:20-CV-753-ECM, 2023 WL 8483491, at *2 (M.D. Ala. Dec. 7, 2023) (citation modified) (finding good cause for plaintiff to amend complaint to add a defendant when information supporting the amendment was not disclosed until *after* scheduling order's amendment deadline); *see also Carter v. Montgomery Housing Authority*, No. 2:09-CV-971-MEF-CSC, 2010 WL 934205, at *2 (M.D. Ala. Mar. 12, 2010) (finding that plaintiffs were diligent in moving to amend complaint to add a request for attorney's fees when law restricting attorney's fees was lifted after the scheduling order's amendment deadline); *Jones v. Sonic Automotive, Inc.*, No. 2:04-CV-692-F, 2005 WL 8175544, at *1 (M.D. Ala. May 3, 2005) (finding good cause for amendment even when plaintiff's attorney *could have* but *did not* obtain the relevant information before the scheduling order's amendment deadline).

## V. Defendant Has Identified No Prejudice Under Rule 15(a)

Plaintiff David Wilson also satisfies the more liberal requirements of Rule 15(a). *See Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 624 (11th Cir. 2019); *Bowers v. U.S. Parole Com'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014).

Defendant has not and cannot identify any prejudice under *Foman v. Davis*, 371 U.S. 178, 183 (1962). Defendant argues that "Plaintiff's September 15, 2026 expert disclosure deadline has already passed, for instance." Doc. 177 at page 9. But the Consolidated Plaintiffs filed an expert disclosure from an expert on the firing squad, Dr. James S. Williams, on September 15, 2026. Defendant knew this would happen for over a year now. There is simply no prejudice because the other Consolidated Plaintiffs have been litigating this issue since their original complaints in August 2025, and prior plaintiffs challenging nitrogen gas executions have done so for several years.

The fact that there is no possible prejudice underscores what is really going on here: Defendant is simply trying to prevent Mr. Wilson from having his constitutional and international law claims addressed properly. That is not a good reason to deny Mr. Wilson's motion to amend.

## VI. Unopposed Amendments

Defendant does not object to Plaintiff amending his complaint to (1) update the information concerning the MAID cocktail; (2) edit out Count III and Parts A

and B of Count IV; and (3) withdraw his as-applied challenge. Doc. 177 at page 1; Doc. 165. Accordingly, those amendments should be granted.

WHEREFORE, Plaintiff prays this Court grant him leave to amend his complaint.

Dated this 15th day of October 2026.

Respectfully submitted,

Bern E. Harcourt

_______________________________
BERNARD E. HARCOURT
Alabama Bar No. ASB-4316A31B

Columbia Law School
Jerome Greene Hall, Suite 603
435 West 116th Street
New York, New York 10027
Telephone (212) 854-1997
E-mail: beh2139@columbia.edu

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2026, the foregoing motion has been electronically filed with the Clerk of the Court and therefore a copy has been electronically served upon counsel for Respondent:

Office of the Attorney General
Attn: Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130

Bernard E. Harcourt