# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>ALABAMA NITROGEN HYPOXIA PROTOCOL LITIGATION | Case No. 2:24-cv-00111-ECM<br><br>**CAPITAL CASE** |

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' EXPERT DISCLOSURES**

Pursuant to the Court's Scheduling Order,[1] Plaintiffs hereby provide the following objections to Defendants' October 15, 2026 expert disclosures. Plaintiffs do not waive, and expressly preserve, any separate objections to the relevance or admissibility of each expert's opinions, as well as any separate objections to the experts' qualifications, methodology, factual assumptions, and opinions under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) or any other applicable law or rule of evidence.

## I. The Welner–Tramontin Report Fails to Identify Each Witness's Opinions and Supporting Analysis.

Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires a complete statement of the opinions that the witness will express and of the basis and reasons for each such opinion. An expert report must also identify the facts or data considered by that witness. Fed. R. Civ. P. 26(a)(2)(B)(ii). These obligations apply individually to *each* retained expert.

The "Report of Mary Tramontin, Psy.D./Michael Welner, M.D." states that its authors "have collaborated" on the report, presents their conclusions collectively, and is signed by both experts. *See* Welner–Tramontin at 1, 15. But that report does not identify which opinions each

[1] The Uniform Scheduling Order was entered for Mr. Wilson at ECF No. 80 and for the remaining consolidated plaintiffs at ECF No. 47, *Van Pelt* v. *Hamm*, 25-cv-00671 (M.D. Ala. Feb. 9, 2026).

witness independently holds, the analysis each performed, or whose clinical experience supports each conclusion. These omissions are particularly significant given that each purported author has different professional qualifications and seems to address multiple topics, including consciousness, respiratory distress, historical nitrogen administration, and pulmonary edema.

Defendants must identify each author's opinions, supporting reasons, and considered facts or data, as required by the Federal Rules. *See, e.g.*, *MS Amlin Marine NV* v. *Delta Marine Indus. Inc.*, 348 F.R.D. 658, 676–77 (W.D. Wash. 2025) ("Joint expert reports, however, fail to meet disclosure requirements when they do not reveal the division of labor between the experts, or how they reached their separate opinions.") (citations omitted) (cleaned up); *Franchitti* v. *Cognizant Tech. Solutions Corp.*, 2025 WL 2123655, at *3 (S.D.N.Y. July 29, 2025) ("Rule 26(a) may be implicated [when experts co-author a report] when 'it isn't clear whether both experts adhere to all of the opinions in the report and they do not delineate which opinions belong to which expert' so as to 'impede the opposing party's preparation of effective cross-examination,'") (citations omitted); *Merrill Lynch, Pierce, Fenner & Smith, P.C.* v. *Greystone Servicing Corp., Inc.*, 2010 WL 11530924, at *4 (N.D. Tex. Jan. 5, 2010) (joint expert report must "make clear what testimony each individual witness will express, along with the basis for that testimony."); *State Farm Mutual Automobile Ins. Co.* v. *Complete Care Ctrs., LLC*, 2022 WL 18456523, at *3 (M.D. Fla. Dec. 20, 2022) ("Joint reports are impermissible, however, when the offered experts have different areas of expertise and are not individually qualified to testify about each opinion in the report."). If Defendants maintain that each witness adopted the report in full and intends to present the same testimony, Plaintiffs further object to needless duplication under Federal Rule of Evidence 403. *See Franchitti*, 2025 WL 2123655, at *3 (permitting only one of two experts where both purportedly offered the same opinions).

**II. The Reviewer "Endorsements" Must Be Stricken.**

Five of Defendants' expert reports append statements asserting that additional reviewers provided oversight supposedly to ensure the report's objectivity, diligence, and consistency with current professional understandings. *See* Oliver (nitrogen hypoxia) at 35; Oliver (firing squad) at 22; Palumbo at 25; Aghion at 34; Goldberg at 15. These "endorsement" statements purport to offer additional expert approval without disclosing the bases or foundation of that approval. The reports also invoke these reviewers' authority within their substantive analysis. Dr. Oliver, for example, contrasts the experience of Plaintiffs' expert Dr. Bastarache with the asserted combined experience attributed to the various pathologists "preparing and peer reviewing this report." Oliver (nitrogen hypoxia) at 30.

The endorsements do not explain which opinions each reviewer evaluated, what (if any) analysis the reviewer performed, what standards (if any) were applied, or why the endorser concluded that the report satisfies those standards. Each endorsement therefore constitutes additional expert opinions, the bases and reasons for which have not been disclosed as required by Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii); *cf. Davis* v. *Lockheed Martin Corp.*, 183 F.4th 1327, 1336–37 (11th Cir. 2026) (affirming exclusion of expert who "merely adopted the opinions of others" and did not explain his own methodology); *United States* v. *O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987) (affirming exclusion of expert testimony that was "nothing more than a personal vouching of one expert for another expert"); *Abrams* v. *Ciba Specialty Chemicals Corp.*, 2010 WL 779283, at *4 (S.D. Ala. Mar. 2, 2010) ("[B]ootstrapping of an undisclosed expert witness's opinions into the reports and testimony of another is plainly improper, where the disclosed expert is treating those opinions as his own.").[2] The defect persists even where Defendants have retained

[2] If an endorsement is offered only to establish that review occurred, it does not assist the Court in resolving any disputed issue raised in this case. *See* Fed. R. Evid. 401–402. To the extent the

and separately disclosed the endorser as a testifying expert. For example, Dr. Caruso endorsed Dr. Oliver's pathology report; but Dr. Caruso's own report does not explain his endorsement of that other report. Likewise, Dr. Goldberg's report does not explain his endorsement of Dr. Aghion's report, and Dr. Aghion's report does not explain his endorsement of Dr. Goldberg's report.

Plaintiffs request that Defendants re-serve each of these five expert reports *without* the endorsement blocks, the associated reviewer signatures, and any statements in the report that refer to the endorsements or the experience of the endorsers. Defendants are also precluded from presenting the reviewers' approval through testimony or argument under Rule 37(c)(1), which generally precludes use of inadequately disclosed information, such as these unsupported endorsements.

## III. Defendants Must Disclose Sources for Each Opinion Proffered by Their Experts

Several of Defendants' expert reports fail to explain whether their sources support the opinions proffered and, in some cases, even fail to provide a separate list of sources altogether. These reports do not meet the requirements of Rule 26, which provides that each expert report must explain the "basis and reasons for" each opinion and include "the facts or data considered by the witness in forming them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii).

The expert report of Dr. Caruso includes a list of sources that do not appear to correspond to the sources otherwise cited in his report; instead those sources inexplicably mirror the references in Dr. Goldberg's report. *See* Caruso at 15–20; Goldberg at 16–21. Dr. Mandoff's report does not cite to any specific source for his opinion titled "On Benzodiazepine and Opioid Administration Prior to Nitrogen Inhalation." *See* Mandoff (Redacted) at 21. And the Welner-Tramontin report fails to include a separate set of sources altogether.

---

statements are offered for their truth through another witness or an admitted report, they also present a hearsay issue. *See* Fed. R. Evid. 801(c), 802.

Expert reports are deficient under Rule 26 when "[t]he studies, materials, or test results relied on by the experts are not attached to the report." *Williams* v. *Roberts*, 202 F.R.D. 294, 296 (M.D. Ala. 2001). Plaintiffs cannot reasonably respond to the expert opinions in these deficient reports when the full list of sources consulted and relied upon is obfuscated or altogether excluded. Plaintiffs request that Defendants revise the expert reports of Drs. Caruso, Mandoff, and Tramontin-Welner to include the proper sources and citations, as required by the Federal Rules.

## IV. Defendants Must Disclose the Materials Underlying Dr. Antognini's Holman Demonstrations and Preserve His Apparatus for Inspection.

Dr. Antognini claims to have participated in testing of Alabama's nitrogen delivery system on at least two occasions. *See* Antognini (Redacted) ¶¶ 15–21 (testing on September 23, 2026); *see also* Antognini (*Lee*) ¶ 19 (testing on August 16, 2023). His opinions rely on the resulting measurements and the apparatus and monitoring equipment used to obtain them.

Rule 26(a)(2)(B)(ii) requires disclosure of the facts or data considered in forming an expert's opinions, and Rule 26(a)(2)(B)(iii) requires disclosure of supporting exhibits. The 2010 advisory committee note expressly provides that "testing of material involved in litigation [as occurred here], and notes of any such testing, would not be exempted from discovery." Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

Plaintiffs therefore request that Defendants provide the following materials, to the extent not already produced, concerning any testing at Holman demonstrations involving Dr. Antognini:

1. **Complete testing records.** All documents, notes, protocols, diagrams, measurements, raw data, monitor outputs, calculations, spreadsheets, and records of equipment settings, configurations, calibration, and performance. This includes preliminary, repeated, unsuccessful, and unreported runs—not merely the results selected for inclusion in his report.

2. **Complete recordings.** All photographs, video recordings, audio recordings, and other recordings of the demonstrations, apparatus, monitor displays, and operation of the nitrogen-delivery system. Electronic materials should be produced in their

original or reasonably usable form, retaining available timestamps and metadata necessary to interpret the results. *See* Fed. R. Civ. P. 34(b)(2)(E).

3. **Oxygen monitor documentation.** The manufacturer, model, and identifying information for each oxygen monitor that Dr. Antognini used; the manuals and instructions applicable to those models; specifications concerning response time, accuracy, calibration, and sampling; and any calibration, maintenance, or verification records associated with the monitors used. These materials bear directly on his interpretation of measured oxygen concentrations and elapsed times.

4. **Apparatus documentation.** Documents and records—including receipts and manuals—identifying the components, dimensions, assembly, settings, and modifications of the model-lung apparatus. This includes but is not limited to the mannequin, tubing, cylinders, connectors, seals, ventilator, sampling lines, and monitoring equipment.

The request encompasses responsive materials held by Defendants, their counsel, or Dr. Antognini himself.

Plaintiffs further request that Defendants and Dr. Antognini preserve the model-lung apparatus and all components used in the demonstrations, together with associated electronic data and recordings. Preservation should include documentation of the configurations used and any subsequent alteration, disassembly, replacement, or modification. Defendants should further identify the apparatus's present location and custodian and provide a proposed date, time, and location for Plaintiffs and their experts to inspect, measure, photograph, and document it at least two weeks before Dr. Antognini's deposition.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Samuel R. Diamant*
J. Andrew Pratt (ASB-3507-J)
Joshua Toll (pro hac vice)
Kathryn Lehman (pro hac vice)
Samuel R. Diamant (pro hac vice)
**King & Spalding LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
(404) 572-4600
apratt@kslaw.com
jtoll@kslaw.com
klehman@kslaw.com
sdiamant@kslaw.com

*Attorneys for Plaintiff Mark Jenkins*

*/s/ Justin D. Lerer*
David K. Kessler (pro hac vice)
Justin D. Lerer (pro hac vice)
Kyle T. Sieber (pro hac vice)

**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
dkessler@paulweiss.com
jlerer@paulweiss.com
ksieber@paulweiss.com

Andrew J. Ehrlich (pro hac vice)
**Brief Ehrlich, P.C.**
355 Riverside Drive, 5W
New York, NY 10025
(917) 405-7928
ajehrlich@gmail.com
*Attorneys for Plaintiff Jarrod Taylor*

*/s/ Bernard E. Harcourt*
Bernard E. Harcourt
(ASB-4316-A31B)

**Columbia Law School**
435 West 116th Street
New York, New York 10027
Telephone: (212) 854-1997
Fax: (212) 854-7946
Email: beh2139@columbia.edu

*Attorney for Plaintiff David Wilson*

*/s/ Paige H. Sharpe*
Angelique A. Ciliberti
(ASB: 1504T44C)
Paige H. Sharpe (pro hac vice)
Anna K. Thompson (pro hac vice)
Kevin A. Cline (pro hac vice)

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave. NW
Washington, DC 20001
(202) 942-5000
angelique.ciliberti@arnoldporter.com
paige.sharpe@arnoldporter.com
anna.thompson@arnoldporter.com
kevin.cline@arnoldporter.com

*Attorneys for Plaintiffs Kim Van Pelt, Rick Belisle, Jimmy Brooks, Jr., Larry George, and Marcus Williams*