**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

***In re. Alabama Nitrogen Hypoxia Protocol Litigation***

| | |
|---|---|
| DAVID WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:24-cv-00111-ECM |
| | ) *DEATH PENALTY CASE* |
| | ) |
| GREG LOVELACE, | ) |
| Commissioner, Alabama | ) |
| Department of Corrections, | ) |
| | ) |
| Defendant. | ) |

# DEFENDANT'S RESPONSE PLAINTIFF'S OBJECTION TO EXPERT DISCLOSURES

## INTRODUCTION

Plaintiff objects to Professor Julian Ku's expert testimony on one ground: Professor Ku is a visiting professor at Columbia Law School this semester, and Plaintiff's lead counsel, Professor Bernard Harcourt, is a tenured member of that faculty. Plaintiff does not claim that he, his counsel, or anyone acting for him ever had a relationship of any kind with Professor Ku. Plaintiff does not claim that Professor Ku received, sought, or had access to a single piece of Plaintiff's confidential information. And Plaintiff concedes that Professor Ku's retention "does not give rise to a formal violation of [the] Rules of Professional Conduct."

That concession is dispositive. Federal courts disqualify experts only in the rare case where the moving party shows both a confidential relationship with the expert and the disclosure of confidential information to the expert. Plaintiff shows neither. What remains is an "appearance of impropriety" theory that the Eleventh Circuit has rejected as a basis for disqualifying even lawyers, and a concern about Plaintiff's counsel's own professional reputation that is not a conflict of interest at all, let alone one belonging to Professor Ku or Defendant.

Shared membership on a university faculty does not make two professors a "firm." Law professors routinely take opposing positions in scholarship, in amicus briefs, and in court. The objections should be overruled, and any motion to disqualify Professor Ku should be denied.

## BACKGROUND

On October 23, 2026, Defendant disclosed Professor Julian Ku as an expert witness on international law, consistent with the Court's Scheduling Order (Doc. 80). Professor Ku is a tenured professor at the Maurice A. Deane School of Law at Hofstra University. He is visiting at Columbia Law School for the Fall 2026 semester, where he teaches a single course.

Professor Ku has never represented, advised, or consulted for Plaintiff. He has not worked with Professor Harcourt on this case or on Plaintiff's behalf. He has not received, requested, or accessed any of Plaintiff's case files, communications, or

work product, on a Columbia server or anywhere else. He does not participate in any clinic, center, or project through which Professor Harcourt represents Plaintiff.

On November 6, 2026, Plaintiff filed objections to the disclosure. (Doc. 190.) Plaintiff argues that (1) Professor Ku and Professor Harcourt are colleagues on the same faculty, which Plaintiff likens to membership in the same law firm; (2) Professor Harcourt's interest in Columbia's reputation will pressure him to limit his cross-examination; (3) Alabama Rules of Professional Conduct 1.7 and 1.10 should be applied to Professor Ku as an attorney-expert; and (4) Columbia's servers host Plaintiff's case files, creating an appearance of impropriety. Plaintiff has not moved to disqualify Professor Ku, but states that Defendant "is thus responsible for any prejudice that may result from Plaintiff moving the Court to disqualify Professor Ku." (*Id.* at 6.)

## ARGUMENT

### I. Disqualifying an expert is a rare remedy, and Plaintiff bears the burden of justifying it.

While federal courts have inherent power to disqualify an expert witness "under appropriate circumstances," *Wyatt ex rel. Rawlins v. Hanan*, 871 F. Supp. 415, 419 (M.D. Ala. 1994), that power is exercised sparingly, and the party seeking disqualification bears the burden of establishing that it is warranted, *Koch Refining Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996). A party's choice "may be overridden only if 'compelling reasons' exist," and disqualification

motions are viewed skeptically because they can be used for tactical advantage. *Herrmann v. GutterGuard, Inc.*, 199 Fed. Appx 745, 752 (11th Cir. 2006); *see also Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982) (disqualification is a drastic remedy).

Outside the clear case of an expert who switches sides, courts considering expert disqualification ask (1) whether it was objectively reasonable for the moving party to believe that a confidential relationship existed with the expert, and (2) whether the moving party disclosed confidential or privileged information to the expert. *Koch*, 85 F.3d at 1181; *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991). "Only if the answers to both questions are affirmative should the witness be disqualified." *Koch*, 85 F.3d at 1181; *see also Wyatt*, 871 F. Supp. at 419; *Wang*, 762 F. Supp. at 1248 ("[D]isqualification is likely inappropriate if either inquiry yields a negative response."). Courts also weigh fairness to the party that retained the expert. *Wyatt*, 871 F. Supp. at 422; *Koch*, 85 F.3d at 1182.

## II. Plaintiff cannot demonstrate that disqualification is appropriate here.

**No relationship.** Plaintiff does not allege that he or his counsel ever retained, consulted, or confided in Professor Ku. Plaintiff alleges only that Professor Ku and Professor Harcourt teach at the same school this semester. That is a collegial association between two academics, not a relationship between a party and an expert. In *Wyatt*, this Court declined to disqualify an expert who had actually served as a

consultant to the settlement process for the movants, because no confidential relationship had been established. 871 F. Supp. at 420-22. The case for disqualification here is far weaker than in *Wyatt* because was never any relationship between Plaintiff and Professor Ku.

**No confidential information.** Plaintiff also does not identify any confidential information that Professor Ku received. Plaintiff's only factual assertion on this point is that "the Columbia Law School server hosts Mr. Wilson's case files." (Doc. at 6.) Plaintiff does not claim that Professor Ku has access to those files, has ever opened them, or even knew they existed. A university's information-technology system serves thousands of faculty, staff, and students; storage on a shared institutional network does not give every user access to every file. Conclusory assertions cannot carry a movant's burden, *see Wyatt*, 871 F. Supp. at 421 (rejecting "at most, only conclusory" assertions of confidential disclosure), and Plaintiff has not offered even that.

## III. Faculty colleagues are not a "firm," and Rules 1.7 and 1.10 do not apply to Professor Ku.

Plaintiff's central theory is that being "colleagues on the same faculty of law" is the same as "being colleagues at the same law firm," so that Professor Harcourt's duties to Plaintiff are imputed to Professor Ku under Alabama Rule of Professional Conduct 1.10(a). (Doc. 190 at 2, 4.) The theory fails at each step.

### A. A law school faculty is not a firm.

Rule 1.10(a) imputes conflicts only among lawyers "associated in a firm." Ala. R. Pro. Conduct 1.10(a). The commentary defines a "firm" as lawyers in a law partnership, professional corporation, sole proprietorship, or other association authorized to practice law, along with lawyers in a legal-services organization or an organization's legal department. *Id.* cmt. (Definition of "Firm"). Even lawyers who share office space and occasionally consult with each other ordinarily are not a firm; the relevant considerations include whether they hold themselves out as a firm and whether they have mutual access to client confidences. *Id.* Columbia Law School is an academic institution, not an association authorized to practice law. Its faculty do not share fees, do not hold themselves out to the public as a law firm, and do not share client confidences. Plaintiff cites no authority, and Defendant is aware of none, holding that membership on a law faculty creates a "firm" for imputation purposes.

**B. Professor Ku does not "represent" Defendant.**

Even if Professor Ku and Professor Harcourt were in the same firm, Rule 1.10(a) bars a lawyer only from knowingly "represent[ing] a client" when a colleague could not. Ala. R. P. Conduct 1.10(a). Professor Ku represents no one in this case. Plaintiff acknowledges as much. (Doc. 190 at 4 ("Professor Ku is not representing Defendant here but rather serving as his expert.").) The ABA has concluded that a lawyer retained to testify about legal requirements acts like any other non-lawyer expert witness and does not enter into a client-lawyer relationship

with the retaining party. ABA Comm. on Ethics & Pro Responsibility, Formal Op. 97-407 (1997); *accord* D.C. Bar Legal Ethics Op. 337 (2007). Professor Ku's obligation as a testifying expert is to give the Court his honest and independent opinion, which is subject to cross-examination and to the Court's gatekeeping under Federal Rule of Evidence 702. That role carries no duty of loyalty to Defendant that could conflict with any duty owed to Plaintiff. And Professor Ku owes Plaintiff no duty of loyalty at all because Plaintiff has never been his client or the client of any firm with which he is associated.

**C. Plaintiff's attorney-expert cases involve law firms suing their own clients.**

Plaintiff's authorities share a feature absent here: the expert's law firm had an attorney-client relationship with the party objecting to the testimony. In *AGI Suretrack LLC v. Farmers Edge Inc.*, 2024 WL 693971, at *2 (D. Neb. Feb. 20, 2024), the expert's law firm had represented the plaintiff and held the plaintiff's relevant confidences. In *International Business Machines Corp. v. Levin*, 579 F.2d 271 (3d Cir. 1978), the disqualified law firm was suing IBM while simultaneously representing IBM in other matters. The concern in cases like those cited by Plaintiff is a lawyer's duty of loyalty to his own firm's client. Plaintiff is not, and has never been, a client of Professor Ku.

## IV. An "appearance of impropriety" cannot support disqualification, and there is none here.

After conceding that no Rule of Professional Conduct is violated, Plaintiff falls back on the "appearance of impropriety." (Doc. 190 at 3-6.) That standard is not applicable here. The Eleventh Circuit has held that under the Model Rules the appearance of impropriety is not a ground for disqualifying a lawyer from representing a party to a lawsuit. *Waters v. Kemp*, 845 F.2d 260, 265 (11th Cir. 1988). Alabama has adopted the Model Rules framework. When a court disqualifies on the basis of an ethical violation, it must "clearly identify" a specific violation of a specific rule of professional conduct. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). Plaintiff's lead out-of-circuit authority for an appearance-of-impropriety standard, *IBM v. Levin*, was decided under the former Model Code, which contained the "appearance" canon that the Model Rules later abandoned. *See Waters*, 845 F.2d at 265.

If an appearance theory cannot disqualify a lawyer, it follows that it cannot disqualify an expert witness either. *See Wyatt*, 871 F. Supp. at 422 & n.29. And even under the pre-Model Rules standard, disqualification required at least "a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Norton*, 689 F.2d at 940. Plaintiff identifies none. A visiting professor teaching one course on China and international law, with no access to Plaintiff's files and no involvement in his case, presents no impropriety, real or apparent.

**V. Counsel's reluctance to cross-examine a colleague is not a conflict that disqualifies the opposing party's expert.**

Plaintiff's remaining argument is that, because Professor Harcourt has an interest in Columbia's reputation, it would be "directly against undersigned counsel's interests" to show that a colleague's opinion is wrong, placing "unacceptable pressure" on him to limit his cross-examination. (Doc. 190 at 3.) That argument does not describe a conflict on Professor Ku's part or Defendant's.

First, the interest Plaintiff describes belongs to Plaintiff's counsel. If counsel's personal or institutional interests could materially limit his representation of his client, that is a question for counsel and his client under Rule 1.7(b). *See* Ala. R. Prof'l Conduct 1.7(b). It is not a ground for depriving the opposing party of its chosen expert. Plaintiff cites no case disqualifying an expert because opposing counsel would find cross-examination uncomfortable.

Second, the premise is mistaken. Testing an expert's opinion through rigorous, respectful cross-examination does not tarnish the institution where the expert happens to be visiting. Law professors routinely take opposing positions on contested legal questions in scholarship, in amicus briefs, and in testimony. Disagreement on the merits is the ordinary currency of the academy and of the adversary system.

Third, Plaintiff's rule would have no limiting principle. If shared employment at a university barred an expert from testifying against a party whose counsel teaches

there, every large university would become a conflict web. Visiting appointments, joint appointments, and adjunct teaching would multiply the conflicts further. Courts have warned that overly broad expert disqualification rules would sharply limit the pool of available experts. The Court should decline to create such a rule.

## VI. The equities weigh against disqualification, and Defendant bears no responsibility for any resulting delay.

Fairness to the party that retained the expert and the burden of replacing an expert mid-litigation both weigh against disqualification. *Wyatt*, 871 F. Supp. at 422; *Koch*, 85 F.3d at 1182. Defendant retained Professor Ku in good faith, for his recognized expertise in international law, and disclosed him on schedule. Disqualifying him now would require Defendant to find and prepare a replacement expert under the current schedule, with no corresponding benefit to Plaintiff, who has lost no confidences and faces no adversary with inside knowledge.

Plaintiff asserts that Defendant "should have conducted a conflict-of-interests check" and is "responsible for any prejudice that may result" from a future motion to disqualify. (Doc. at 190 2-3, 6.) No rule required Defendant to screen its expert against opposing counsel's university employer, and Plaintiff cites none. Because there is no conflict, there was nothing for a conflicts check to find. If Plaintiff files a motion to disqualify, any delay it causes will be the product of that motion, not of Defendant's conduct.

## CONCLUSION

Plaintiff has not shown a confidential relationship with Professor Ku, any disclosure of confidential information to him, or a violation of any Rule of Professional Conduct. Plaintiff's remaining concerns rest on an appearance-of-impropriety standard courts in this Circuit have rejected and on his own counsel's discomfort at cross-examining a colleague. Defendant respectfully requests that the Court overrule Plaintiff's Objections to Defendant's Expert Disclosures.

Respectfully submitted on this the 13th day of November 2026.

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA
BY—

***/s/ Brenton L. Thompson***
Brenton L. Thompson
*Assistant Attorney General*

Polly S. Kenny
*Assistant Attorney General*

Lauren A. Simpson
*Deputy Attorney General*

Counsel for Defendant

## CERTIFICATE OF SERVICE

I certify that on November 13, 2026, I served a copy of the foregoing upon counsel for the Plaintiff by filing the same via the Court's CM/ECF system.

Respectfully submitted,

Steve Marshall
*Alabama Attorney General*

***/s/ Brenton L. Thompson***
Brenton L. Thompson
*Assistant Attorney General*
Counsel for Defendant

OF COUNSEL:

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
Brenton.Thompson@AlabamaAG.gov