IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| Alabama Nitrogen Hypoxia Protocol | ) | CASE NO. 2:24-cv-111-ECM |
| Litigation | ) | [WO] |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

In this consolidated case, eight Alabama death row inmates—David Wilson ("Wilson"), Kim Van Pelt ("Van Pelt"), Rick Belisle ("Belisle"), Jimmy Brooks, Jr. ("Brooks"), Larry George ("George"), Mark Jenkins ("Jenkins"), Marcus Williams ("Williams"), and Jarrod Taylor ("Taylor") (collectively, "Plaintiffs")—claim, pursuant to 42 U.S.C. § 1983, that the Alabama Department of Corrections' nitrogen hypoxia execution protocol ("Protocol") facially violates the Eighth Amendment's prohibition on cruel and unusual punishment. On June 9, 2026, following a three-day bench trial and a remand from the United States Court of Appeals for the Eleventh Circuit, this Court declared the Protocol facially unconstitutional and permanently enjoined the State[1] from executing Jeffery Lee ("Lee") using the Protocol. *See generally Lee v. Lovelace*, --- F. Supp. 3d ----, 2026 WL 1664095 (M.D. Ala. June 9, 2026). Following *Lee*, the State intends to execute each of the Plaintiffs using the Protocol.

[1] Because the Defendants are state officials sued in their official capacities, the Court refers to them as "the State" in this Opinion. The Defendants are Greg Lovelace, Commissioner of the ADOC, and Terry Raybon, Warden of Holman Correctional Facility.

Now pending before the Court is the Plaintiffs' motion for summary judgment, in which they argue that they are entitled to judgment as a matter of law on their facial Eighth Amendment claims based on the Court's earlier decision in *Lee*. (Doc. 155). The motion is fully briefed and ripe for resolution. The Plaintiffs' motion also contains a request for oral argument, which the Court construes as a motion for oral argument. After careful consideration, the Court concludes that the motions are due to be denied.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)). "[A] court generally must 'view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016) (citation omitted). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) (citation omitted). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); FED. R. CIV. P. 56(c). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* at 1311. The burden then shifts to the nonmoving party "to establish, by going beyond the pleadings, that a genuine issue of material fact exists." *Id.* at 1311–12. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Nonmovants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, this Court must view all the evidence in the light most favorable to the nonmovant. *Fla. Int'l Univ. Bd. of Trs.*, 830 F.3d at 1252. Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Id.* However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

## IV. PROCEDURAL HISTORY

The Court first summarizes the filing and consolidation history of the Plaintiffs' cases and then summarizes the relevant procedural history in *Lee*. Then, the Court outlines the relevant facial Eighth Amendment claims brought by each Plaintiff.

Wilson filed his § 1983 challenge to the Protocol in this Court on February 15, 2024, Case No. 2:24-cv-111-ECM. Then, on August 22, 2025, eight other inmates—Van Pelt, Belisle, Brooks, George, Jenkins, Williams, Taylor, and Lee—filed their own § 1983 actions in this Court.[2] Following a hearing on January 14, 2026, the cases filed in August 2025 were consolidated for discovery and case management, with *Van Pelt* (Case No. 2:25-cv-671-ECM) as the lead case; the cases were set for a bench trial on June 28, 2027. (*See* docs. 36, 55 in *Van Pelt v. Hamm et al.*, 2:25-cv-671-ECM (M.D. Ala.)) ("*Van Pelt*").[3] However, following the State's announcement that it intended to move, by mid-February 2026, to set Lee's execution date, the Court deconsolidated Lee's case and set it on a separate, expedited schedule, with a bench trial set for April 27, 2026, (*see* doc. 36 in *Lee*).[4] Then, in mid-March 2026, Wilson's case was consolidated with the cases filed by Van Pelt,

[2] *Van Pelt v. Hamm*, 2:25-cv-671-ECM ("*Van Pelt*"); *Belisle v. Hamm*, 2:25-cv-673-ECM; *Brooks v. Hamm*, 2:25-cv-674-ECM; *George v. Hamm*, 2:25-cv-675 ("*George*"); *Jenkins v. Hamm*, 2:25-cv-676-ECM ("*Jenkins*"); *Williams v. Hamm*, 2:25-cv-677-ECM ("*Williams*"); *Taylor v. Hamm*, 2:25-cv-678-ECM; and *Lee v. Hamm*, 2:25-cv-680-ECM ("*Lee*"). At that time, John Q. Hamm ("Hamm") was the Commissioner of the ADOC. While these cases were pending, Hamm retired, and Lovelace became the Commissioner of the ADOC. Therefore, Lovelace was substituted for Hamm as a defendant in his official capacity pursuant to Rule 25(d).

[3] Although George's case was not originally consolidated with the others, (*see* doc. 36 in *Van Pelt*), his case was added later, (*see* doc. 55 in *Van Pelt*).

[4] Lee's execution by nitrogen hypoxia was scheduled for the thirty-hour timeframe beginning at 12:00 a.m. on June 11, 2026, and concluding at 6:00 a.m. on June 12, 2026.

Belisle, Brooks, George, Williams, Taylor, and Jenkins, (doc. 103), and the case was later recaptioned *In Re: Alabama Nitrogen Hypoxia Protocol Litigation*, Case No. 2:24-cv-111-ECM (M.D. Ala.), (doc. 109).

From April 27 through April 29, 2026, this Court presided over a three-day bench trial in *Lee*. Thereafter, the Court found that the Protocol causes one to three minutes of severe air hunger but ultimately concluded that Lee failed to show that the Protocol caused severe pain or suffering "well beyond what's necessary to effectuate a death sentence," and thus that Lee failed to show that the Protocol violated the Eighth Amendment. *Lee v. Lovelace*, 2026 WL 1493098, at *24–25 (M.D. Ala. May 28, 2026) (quoting *Bucklew v. Precythe*, 587 U.S. 119, 136–37 (2019)) (hereinafter "*Lee I*"). Regarding air hunger, the Court observed that there was little record evidence "as to whether the level of air hunger remains constant or fluctuates after the nitrogen gas begins to flow" and until the inmate loses consciousness. *Id.* at *13 n.26 (recounting Lee's expert's testimony that "air hunger begins ten to twelve seconds after the nitrogen gas is turned on" and that "the Protocol causes 'extreme air hunger that lasts up to minutes, during minutes of consciousness'" (citations omitted)); *cf. Boyd v. Hamm*, 2025 WL 2884410, at *7 (M.D. Ala. Oct. 9, 2025) (expert testifying that "consciousness fades for most people around 50% oxygen saturation, and that some people can lose consciousness before they feel any distress"). Thus, "based on th[e] record, and because it [did] not alter the Court's conclusion [that the Protocol did not violate the Eighth Amendment]," this Court "assume[d] without deciding that the level of air hunger" was constant—and thus severe—throughout the execution once nitrogen began to flow. *Lee I*, 2026 WL 1493098, at *13 n.26; *see also id.* at *25.

On appeal, the Eleventh Circuit concluded that this Court did not err in any of its factual findings and that, based on this Court's factual findings, the Protocol causes "a substantial risk of serious harm." *Lee v. Comm'r, Ala. Dep't of Corr.*, 2026 WL 1651147, at *6 (11th Cir. June 8, 2026) (per curiam) (hereinafter "*Lee II*"). The court found that the severe air hunger and corresponding effects described by this Court, "which last[] for one to three minutes, present[] a substantial risk of serious harm over and above death itself." *Id.* at *7 ("[C]onstitutionally speaking, that timeframe is intolerable given the suffering that would likely take place under Alabama's nitrogen hypoxia protocol."). The court did not address that this Court had assumed—without deciding—that the level of air hunger remains the same until the inmate loses consciousness. The court remanded the case for this Court to address whether Lee's proposed alternative method of execution—firing squad—was feasible, readily implemented, and significantly reduced "the risk of harm posed by nitrogen hypoxia." *Id.* at *8.

On remand, this Court found that Lee had shown by a preponderance of the evidence that firing squad is feasible, readily implemented, and significantly reduced the substantial risk of serious harm posed by the Protocol, and that the State failed to proffer a legitimate penological reason not to adopt it. *See generally Lee v. Lovelace*, --- F. Supp. 3d ----, 2026 WL 1664095 (M.D. Ala. June 9, 2026) (hereinafter "*Lee III*"). Accordingly, the Court declared that the Protocol facially violates the Eighth Amendment and permanently enjoined the State from executing Lee using the Protocol. *Id.* at *11; *see also Lee v. Lovelace*, 2026 WL 2111728, at *1 (M.D. Ala. July 22, 2026) (confirming the Court's declaration that the Protocol facially violates the Eighth Amendment). In *Lee III*, this Court

did not revisit its assumption in *Lee I* that the level of air hunger was constant throughout the execution once nitrogen began to flow, *see Lee I*, 2026 WL 1493098, at *13 n.26.

The State appealed to the Eleventh Circuit and also moved for a stay of this Court's injunction pending appeal. (Docs. 1, 4, 9 in *Lee v. Comm'r, Ala. Dep't of Corr.*, Case No. 26-12027 (11th Cir.)) (hereinafter "*Lee IV*"). The Eleventh Circuit denied the State's motion to stay but did not resolve the merits of the appeal. *See generally Lee v. Comm'r, Ala. Dep't of Corr.*, 2026 WL 1741802 (11th Cir. June 10, 2026). The State then filed an application with the United States Supreme Court to stay or vacate this Court's injunction, which the Supreme Court denied. *See Lovelace v. Lee*, 146 S. Ct. 2720 (U.S. June 11, 2026) (Mem.).[5] On June 15, 2026, the parties filed in the Eleventh Circuit a joint stipulation of dismissal with prejudice of the State's appeal, and the Eleventh Circuit dismissed the State's appeal on June 23, 2026. (*See* docs. 19, 20 in *Lee IV*).

In their respective operative complaints, each Plaintiff claims that the ADOC's nitrogen hypoxia protocol facially violates the Eighth Amendment. (Doc. 35 at 30–35 (Wilson); doc. 136 at 18–25 (Van Pelt); doc. 135 at 18–24 (Belisle); doc. 137 at 18–23 (Brooks); doc. 127 at 42–46 (Taylor); doc. 37 at 18–21 in *George* (George); doc. 1 at 25–26 in *Jenkins* (Jenkins); doc. 1 at 18–22, 28 in *Williams* (Williams)). Wilson also brings a claim pursuant to § 1983 that the Protocol violates the *jus cogens* norm of international law prohibiting torture, (*see* doc. 35 at 49–53), which is not addressed in the pending motion

[5] Lee's June execution was cancelled, and on September 17, 2026, he was executed by lethal injection.

for summary judgment.[6] The operative complaints filed by Van Pelt, Belisle, Jenkins, Williams, and Taylor each alleges that the firing squad is a feasible, readily implemented, and significantly less painful method of execution. George's complaint identifies lethal injection as an alternative method of execution, (doc. 37 at 21 in *George*)[7]; Brooks' complaint identifies two modified nitrogen hypoxia protocols, (doc. 137 at 20–23); and Wilson's complaint identifies medical-aid-in-dying, specifically the drug combination known as "DDMP II," (doc. 35 at 34–35).[8]

## V. FACTS

At this stage, the undisputed material facts are as follows:

On June 9, 2026, this Court declared that the Protocol facially violates the Eighth Amendment. *Lee III*, 2026 WL 1664095, at *11.[9] The Eleventh Circuit has neither

---

[6] Each Plaintiff previously brought one or more additional claims, including Eighth Amendment as-applied challenges to the Protocol and claims arising under the federal and Alabama constitutions. Except Wilson's international law claim described above, all non-facial-Eighth Amendment claims have been dismissed by the Court or withdrawn by the Plaintiffs, leaving only the Plaintiffs' facial Eighth Amendment claims and Wilson's international law claim.

[7] While not relevant here, the Court notes that George objects to the Supreme Court's requirement that he identify an alternative method of execution, arguing that it violates his sincerely held religious beliefs because it amounts to assisting in a suicide. (*See, e.g.*, doc. 37 at 20–21 in *George*).

[8] Also pending before the Court is Wilson's motion for leave to amend his complaint to add firing squad as an alternative method of execution, (doc. 162), which will be resolved by separate Order.

[9] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). This Court "may take judicial notice of public records within its files relating to the particular case before it or other related cases." *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991); *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (explaining that courts may take judicial notice of "another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"). Here, the Court takes judicial notice only of the following judicial act from *Lee III*: this Court declared the Protocol facially unconstitutional.

affirmed nor reversed this Court's decision in *Lee III*. Similarly, the United States Supreme Court has neither affirmed nor reserved this Court's decision in *Lee III*. Since *Lee III* was decided, the ADOC has not changed the Protocol. The ADOC intends to carry out the Plaintiffs' executions using the Protocol.

## VI. DISCUSSION

The Plaintiffs argue that they are entitled to judgment as a matter of law on their claims that the Protocol facially violates the Eighth Amendment, for two separate reasons. First, the Plaintiffs contend that this Court's declaration of facial unconstitutionality in *Lee III*, and the Eleventh Circuit's antecedent decision in *Lee II*, applies with equal force to all persons subject to execution under the Protocol, including the Plaintiffs. Thus, according to the Plaintiffs, the legal effect of *Lee II* and *Lee III*, combined with *stare decisis* and principles of judicial economy, supports the entry of judgment in their favor. Second, the Plaintiffs argue that collateral estoppel prevents the State from litigating the Protocol's constitutionality, which was litigated and decided in *Lee III*.

### A. *Lee II*, *Lee III* and *Stare Decisis*

"A facial challenge is . . . a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (explaining that a facial challenge "affects the extent to which the invalidity of the challenged law must be

---

In their motion, the Plaintiffs additionally rely on the evidentiary record in *Lee* as supplying undisputed facts in this case, although they do not cite the record evidence itself but rather the Court's findings and conclusions in *Lee* regarding that evidence. The Court questions whether these are "facts" for purposes of a motion for summary judgment, *see* FED. R. CIV. P. 56(c), or whether the Court can take judicial notice of those "facts," *see Grayson v. Warden, Comm'r, Ala. Doc*, 869 F.3d 1204, 1224–26 (11th Cir. 2017). For these reasons, and because these additional "facts" would not change the Court's analysis or conclusion, the Court has not considered them.

demonstrated and the corresponding 'breadth of the remedy'" (citation omitted)); *see also Moms for Liberty – Brevard Cnty. v. Brevard Cnty. Pub. Schs.*, 118 F.4th 1324, 1333 (11th Cir. 2024) ("In a facial challenge, . . . the plaintiff 'seeks to invalidate a statute or regulation itself.'" (quoting *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000))). "A successful facial challenge invalidates a law in all of its applications, 'forbidd[ing]' any enforcement of it." *Platinum Sports Ltd. v. Snyder*, 715 F.3d 615, 617 (6th Cir. 2013) (alteration in original) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)); *see also Women's Med. Pro. Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997) (explaining that, if a law or policy "is unconstitutional as applied, the State may continue to enforce [it] in different circumstances where it is not unconstitutional, but if a [law or policy] is unconstitutional on its face, the State may not enforce [it] under any circumstances"), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *Jackson v. City of Stone Mountain*, 232 F. Supp. 2d 1337, 1354 (N.D. Ga. 2002) (making the same observation). The State does not appear to dispute the proposition that a successful facial challenge invalidates the challenged law in all of its applications. But the State argues that neither this Court's decision in *Lee III* nor the Eleventh Circuit's decision in *Lee II* entitles the Plaintiffs to summary judgment on their facial Eighth Amendment claims. As explained further below, this Court agrees.

In *Lee III*, this Court declared, after a trial, that the Protocol—the same Protocol by which the State intends to execute each Plaintiff here—facially violates the Eighth

Amendment. But under principles of *stare decisis*,[10] this Court is not bound by its decision in *Lee III*. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (per curiam) (citing 18–134 Moore's Federal Practice—Civil § 134.02 (Matthew Bender & Co., Inc. 2003)); *accord* 18 Moore's Federal Practice—Civil § 134.02 (Matthew Bender & Co, Inc., 3d ed. 2026). And although this Court "ought to give great weight to [its] own prior decisions," *McGinley*, 361 F.3d at 1331, this Court has the discretion to "depart from one of its own prior holdings if a compelling reason to do so exists," *Johnson*, 72 F.3d at 1559 n.2. Additionally, the Eleventh Circuit's unpublished decision in *Lee II* is not "binding precedent." 11TH CIR. R. 36-2.

A compelling reason to depart from *Lee III* exists here. In the *Lee* litigation, the record was underdeveloped on the critical issue of whether air hunger remains constant or fluctuates until an inmate loses consciousness. *See Lee I*, 2026 WL 1493098, at *13 n.26; *cf. Boyd*, 2025 WL 2884410, at *7. As a result, this Court in *Lee I* had assumed without deciding a critical fact in Lee's favor—that an inmate's air hunger remains constant (and severe) until unconsciousness, which the Court found to take "not significantly more than one to three minutes." *Lee I*, 2026 WL 1493098, at *25. The Eleventh Circuit then found that the severe air hunger and corresponding effects described by this Court, "which last[] for one to three minutes, present[] a substantial risk of serious harm over and above death itself." *Lee II*, 2026 WL 1651147, at *7. The Eleventh Circuit did not address that this

[10] The principle of *stare decisis* is distinct from the principle of binding precedent, which compels a district court to "follow the holdings of their court of appeals and the Supreme Court." *Johnson v. DeSoto Cnty. Bd. of Commr's*, 72 F.3d 1556, 1559 n.2 (11th Cir. 1996); *but see* 18 Moore's Federal Practice—Civil § 134.02 (Matthew Bender & Co, Inc., 3d ed. 2026) (describing *stare decisis* as encompassing the rule that "a higher court's decision binds the lower court").

Court had assumed that air hunger remains constant until consciousness is lost. Thus, this assumed fact also underlay the Eleventh Circuit's legal conclusion that, based on this Court's factual findings, the Protocol "presents a substantial risk of serious harm," *see id.* Then, in *Lee III*, when this Court addressed Lee's proposed alternative method of execution on remand, this Court did not revisit its assumption from *Lee I* that air hunger remains constant. Given that this Court had assumed a critical fact in Lee's favor, which was a result of an underdeveloped record on the issue,[11] the Court in its discretion concludes that *Lee III* is not dispositive of the Plaintiffs' claims at this juncture. For the same reasons, the Eleventh Circuit's nonbinding decision in *Lee II* does not support granting summary judgment in the Plaintiffs' favor. Consequently, the Plaintiffs are not entitled to summary judgment based on *Lee II* or *Lee III*, considered separately or together.[12]

**B. Nonmutual Offensive Collateral Estoppel**

Separately, the Plaintiffs argue they are entitled to summary judgment because the State is collaterally estopped from relitigating the issues decided in *Lee III*. Relying on the Eleventh Circuit's decisions in *Hercules Carriers, Inc. v. Claimant State of Florida, Department of Transportation*, 768 F.2d 1558 (11th Cir. 1985), and *Demaree v. Fulton County School District*, 515 F. App'x 859 (11th Cir. 2013) (per curiam), the State argues

[11] The Court does not suggest that a more fully developed record would necessarily mean that the fact would be resolved in the State's favor. A more fully developed record could, for example, support the factual finding that the Court previously assumed without deciding, or otherwise support a factual finding in Lee's favor.

[12] If the State had prevailed in this Court in *Lee* and then sought summary judgment in this case based on *Lee*, the Court would similarly conclude that, based on the assumed fact and underdeveloped record, *Lee* did not compel the grant of summary judgment in the State's favor.

that the Plaintiffs cannot invoke nonmutual offensive collateral estoppel against a state agency like the ADOC.

Before the Eleventh Circuit decided *Hercules Carriers* and *Demaree*, the Supreme Court held in *United States v. Mendoza* that nonmutual collateral estoppel cannot be used against the federal government. 464 U.S. 154, 155 (1984). Because the Eleventh Circuit's decisions rely on *Mendoza*'s reasoning, the Court first summarizes *Mendoza* before turning to the Eleventh Circuit's precedent.

In *Mendoza*, the issue before the Supreme Court was whether the federal government was collaterally estopped from relitigating a constitutional issue (due process claim) related to a Filipino national's petition for naturalization, based on an earlier decision against the federal government in a case brought by other Filipino nationals. 464 U.S. at 155. The Supreme Court held that "the United States may not be collaterally estopped on an issue such as this, adjudicated against it in an earlier lawsuit brought by a different party." *Id.* The Court observed that it had previously approved of "nonmutual offensive collateral estoppel," i.e., collateral estoppel invoked by party who was not a party to the prior litigation (and against a party from the prior litigation). *Id.* at 158 (citing *Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971) and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)). The Court explained that, in cases involving private litigants, "no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue," and "there is no sound reason for burdening the courts with repetitive litigation." *Id.* at 159 (quoting *Standefer v. United States*, 447 U.S. 10, 24 (1980)). The Court further explained that the federal government

"'is not in a position identical to that of a private litigant,' both because of the geographic breadth of government litigation and also, *most importantly, because of the nature of the issues the government litigates*." *Id.* (emphasis added) (citation omitted). The Court observed that "[g]overnment litigation frequently involves legal questions of substantial public importance," and that "the government is more likely than any private party to be involved in lawsuits against different parties which nonetheless involve the same legal issues." *Id.* at 160.

In rejecting application of nonmutual collateral estoppel against the federal government, the Supreme Court reasoned that such a rule "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Id.*[13] The Court also explained how, "[u]nlike a private litigant who generally does not forego an appeal if he believes that he can prevail," "the Solicitor General considers a variety of factors, such as the limited resources of the government and the crowded dockets of the courts," in deciding whether to appeal on behalf of the federal government. *Mendoza*, 464 U.S. at 161. "The application of nonmutual estoppel against the [federal] government would force the Solicitor General to abandon those prudential concerns and to appeal every adverse decision in order to avoid foreclosing further review." *Id.*

[13] Specifically, the Court explained that "[a]llowing only one final adjudication would deprive this Court of the benefits it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *Mendoza*, 464 U.S. at 160.

*Hercules Carriers* involved, as relevant here, a vessel that crashed into a bridge near Tampa Bay in Florida. 768 F.2d at 1561. Following the crash, the Florida Department of Professional Regulation ("DPR") brought a state administrative proceeding to revoke the vessel pilot's license, but the pilot was found non-negligent, and his license was not revoked. *Id.* The DPR did not appeal the administrative ruling. *Id.* at 1579. The owner of the vessel filed suit in federal district court and argued that the State of Florida, "as a claimant through its Department of Transportation" ("DOT"), was estopped from relitigating the issue of the pilot's negligence given the finding of non-negligence in the administrative proceeding. *Id.* at 1561, 1563, 1578.

The Eleventh Circuit held that the district court "did not err in refusing to collaterally estop the State of Florida from pursuing its negligence claim in a civil proceeding before the federal court." *Id.* at 1578. The court further "h[e]ld that the policy rationale behind *Mendoza* applie[d] to the facts of this case." *Id.* The court reasoned that the *Mendoza* Court's concern that "applying the doctrine of nonmutual estoppel against the government would force it to abandon its policy of limited appeal and force it to appeal every adverse decision to prevent foreclosure of further review" was present in the instant case because "the DPR chose not to appeal the final order of the [administrative board]." *Id.* at 1579. The court further reasoned that the circumstances presented "stronger reasons than those present in *Mendoza* for not applying non-mutual collateral estoppel" because in *Mendoza*, the same exact government entity was involved in both proceedings, whereas *Hercules Carriers* involved "two wholly separate state agencies with different interests and functions." *Id.* at 1580. The court explained that government agencies "must not be put in

the untenable position of collaterally estopping one another when they pursue the same issue for wholly different purposes." *Id.*[14]

The court also stated more broadly that "the rationale outlined by the Supreme Court in *Mendoza* for not applying nonmutual collateral estoppel against the government is equally applicable to state governments." *Hercules Carriers*, 768 F.2d at 1579. The court observed that the *Mendoza* Court did not distinguish between federal and state governments, and that the Supreme Court's concerns did not appear to be unique to the federal government. *Id.* The court further reasoned that the following concerns articulated by the Supreme Court applied in the case before it:

> The conduct of government litigation in the courts of the United States is sufficiently different from the conduct of private civil litigation in those courts so that what might otherwise be economy interests underlying a broad application of collateral estoppel are outweighed by the constraints which peculiarly affect the government. We think that our conclusion will better allow thorough development of legal doctrine by allowing litigation in multiple forums. Indeed, a contrary result might disserve the economy interests in whose name estoppel is advanced by requiring the government to abandon virtually any exercise of discretion in seeking to review judgments unfavorable to it. The doctrine of res judicata, of course, prevents the government from relitigating the same cause of action against the parties to a prior decision, but beyond that point principles of nonmutual collateral estoppel give way to the policies just stated.

*Id.* (quoting *Mendoza*, 464 U.S. at 162–63).

---

[14] Additionally, the court concluded that not all of the traditional collateral estoppel elements were satisfied. First, the court found that the state entity against whom the plaintiff sought to apply estoppel—the DOT—was not the same state entity involved in the administrative proceeding—the DPR—and that the DPR and DOT were not in privity for purposes of collateral estoppel. *Hercules Carriers*, 768 F.2d at 1580. Additionally, the court concluded that the state did not have a full and fair opportunity to litigate the negligence issue because "the issues before the administrative agency and the [federal] district court were substantively distinct," including the higher burden of proof in the administrative proceeding given its penal nature. *Id.* at 1582. The court further stated that "[t]he equities of the present case support the district court's refusal to allow [the plaintiff] the benefit of collateral estoppel." *Id.*

In *Demaree*, multiple Georgia elementary school teachers sued a Georgia school district, claiming that the school district violated their Fourteenth Amendment equal protection rights when the teachers lost their jobs during a reduction in force. 515 F. App'x at 860. The teachers argued that the school district was collaterally estopped from defending against their equal protection claims in light of a Georgia state court's earlier decision. *Id.* at 863. Based on the reasoning of *Mendoza* and *Hercules Carriers*, the court concluded that collateral estoppel could not be applied to the school district, reasoning that "a school district is a political subdivision of the State of Georgia." *Id.* at 864. The court further reasoned that the instant litigation involved constitutional interpretation, and that applying offensive nonmutual collateral estoppel against the school district "would hinder the court from developing and clarifying essential constitutional law." *Id.* The court also highlighted the fact that "a school district has a limited litigation budget, much more limited than the state or federal government." *Id.* Therefore, the court reasoned, collateral estoppel "would force the school district to spend more on litigation because each claim would have to be utterly exhausted." *Id.*

Considering the above authority, the Court is persuaded that nonmutual offensive collateral estoppel may not be applied against the ADOC, a state agency, in this case. The Eleventh Circuit was clear in *Hercules Carriers* that "the rationale outlined by the Supreme Court in *Mendoza* for not applying nonmutual collateral estoppel against the government is equally applicable to state governments," 768 F.2d at 1579, and *Hercules Carriers* itself involved a state agency. Additionally, like *Hercules Carriers*, the *Mendoza* Court's concern that "applying the doctrine of nonmutual estoppel against the government

would . . . force it to appeal every adverse decision to prevent foreclosure of further review" is present in this case because the ADOC chose not to pursue an appeal of this Court's final judgment in *Lee III*. *See id.* Moreover, like *Demaree*, which the Court finds persuasive, this case involves an important issue of constitutional law, and applying nonmutual collateral estoppel against the ADOC after the first merits trial on the constitutionality of the Protocol—especially since the Court had assumed a critical fact—"would hinder the [C]ourt from developing and clarifying essential constitutional law." *See Demaree*, 515 F. App'x at 864. The fact that this case and *Lee III* both involve the same state agency is not a sufficient basis for this Court to depart from Eleventh Circuit precedent in this area. For these reasons, the Court concludes that the Plaintiffs are not entitled to summary judgment on their facial Eighth Amendment claims on the basis of nonmutual offensive collateral estoppel.

Finally, the Court does not discern that oral argument would assist in resolving the motion for summary judgment. Consequently, the construed motion for oral argument is due to be denied.

## VII. CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED as the Plaintiffs' motion for summary judgment (doc. 155) is DENIED. It is further

ORDERED that the Plaintiffs' construed motion for oral argument is DENIED.

DONE this 19th day of November, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE