IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| Alabama Nitrogen Hypoxia Protocol | ) | CASE NO. 2:24-cv-111-ECM |
| Litigation | ) | [WO] |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

Now pending before the Court are motions for leave to amend filed by Plaintiff David Wilson ("Wilson"), (doc. 162); Plaintiff Mark Jenkins ("Jenkins"), (doc. 166); and Plaintiff Jarrod Taylor ("Taylor") (doc. 167); all of which were filed after the deadline to amend pleadings had expired. The motions are fully briefed and ripe for review. After careful consideration, and for the following reasons, the Court concludes that Jenkins' and Taylor's motions are due to be granted, and Wilson's motion is due to be granted in part and denied in part.

## II. LEGAL STANDARD

When a party seeks to amend after the scheduling order's deadline for amending pleadings has expired, the party must first demonstrate "good cause" to modify the scheduling order under Rule 16(b)(4) before the Court considers whether amendment is proper under Rule 15. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); FED. R. CIV. P. 16(b)(4) (providing that a scheduling order "may be modified only for good cause and with the judge's consent"). The "good cause" standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking

the extension.'" *Sosa*, 133 F.3d at 1418 (quoting FED. R. CIV. P. 16 advisory committee's note to 1983 amendment).

If the party successfully shows good cause, he must also show that the amendment is proper under Rule 15. Rule 15 provides that district courts should "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). However, a court need not grant leave in cases involving "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. BACKGROUND

The Court first briefly recaps the procedural history related to these cases, including how they came to be consolidated. The Court then summarizes the background relevant to Wilson's, Jenkins', and Taylor's respective motions to amend.

### A. General Procedural History

Wilson, Jenkins, and Taylor are three of the eight Plaintiffs in this consolidated action, each of whom claims, pursuant to 42 U.S.C. § 1983, that the Alabama Department of Corrections' ("ADOC") nitrogen hypoxia execution protocol ("Protocol") violates the Eighth Amendment to the United States Constitution. Wilson filed his § 1983 lawsuit in this Court on February 15, 2024, Case No. 2:24-cv-111. Pursuant to the Court's Uniform Scheduling Order ("USO") entered on January 15, 2026, Wilson's deadline to amend pleadings was February 24, 2026. (Doc. 80 at 2).

On August 22, 2025, eight other inmates—including Jenkins, Taylor, and Jeffery Lee ("Lee")—filed their own lawsuits in this Court. (*See* doc. 1 in *Jenkins v. Hamm*, 2:25-cv-676-ECM ("*Jenkins*"); doc. 1 in *Taylor v. Hamm*, 2:25-cv-678-ECM ("*Taylor*"); doc. 1 in *Lee v. Hamm*, 2:25-cv-680-ECM ("*Lee*")). In early 2026, the cases filed on August 22, 2025, were consolidated for discovery and case management. (*See* docs. 36, 55 in *Van Pelt v. Hamm et al.*, 2:25-cv-671-ECM (M.D. Ala.)) ("*Van Pelt*").[1] After the State announced its intention to move to set Lee's execution date, Lee's case was deconsolidated and set for a bench trial in April 2026, on an expedited schedule. (*See* docs. 36, 45 in *Lee*). On February 9, 2026, the Court entered a USO in the consolidated action which governed the other seven cases filed in August 2025, including Jenkins' and Taylor's. (Doc. 47 in *Van Pelt*); (*see also* doc. 55 in *Van Pelt*). Pursuant to the February 9, 2026 USO, the deadline for amending pleadings was April 24, 2026. (Doc. 47 at 2 in *Van Pelt*). However, pursuant to the parties' agreements, Jenkins' and Taylor's deadlines were extended to May 1, 2026. (Docs. 122, 124).

In mid-March 2026, Wilson's case was consolidated with the other seven cases filed in August 2025, including Jenkins' and Taylor's, and the case was later recaptioned *In Re: Alabama Nitrogen Hypoxia Protocol Litigation*, Case No. 2:24-cv-111-ECM (M.D. Ala.).

On June 9, 2026, following remand from the United States Court of Appeals for the Eleventh Circuit, this Court concluded in *Lee* that the firing squad was a feasible, readily implemented, and significantly less painful method of execution compared to the Protocol;

---

[1] Although Plaintiff Larry George's case was not originally consolidated with the others, (*see* doc. 36 in *Van Pelt*), his case was added later, (*see* doc. 55 in *Van Pelt*).

declared the Protocol facially unconstitutional; and permanently enjoined the State from executing Lee using the Protocol. *Lee v. Lovelace*, --- F. Supp. 3d ----, 2026 WL 1664095 at *11 (M.D. Ala. June 9, 2026) (hereinafter "*Lee III*").

**B. Motions for Leave to Amend**

**1. Wilson**

In his operative complaint, Wilson brings, as relevant here, a facial Eighth Amendment claim.[2] (Doc. 35). His proposed alternative method of execution is medical-aid-in-dying ("MAID") using the "DDMP II" drug combination. (*Id.* at 34–35). Wilson now seeks leave to (1) add the firing squad as an alternative method of execution; (2) update the list of drugs for his proposed MAID alternative to the "DDMAPh" drug combination, which differs slightly from the "DDMP II" drug combination; and (3) delete the international claims the Court previously dismissed, while maintaining his objection to the dismissal of those claims. The State opposes Wilson's first request but does not oppose the second and third requests. As indicated above, Wilson's deadline to amend pleadings was February 24, 2026. (Doc. 80 at 2).

**2. Jenkins**

In his operative complaint, Jenkins brings a facial Eighth Amendment claim, an as-applied Eighth Amendment claim, a claim that the Protocol interferes with his free exercise of religion in violation of the First Amendment, and a claim that the Protocol violates his

[2] Wilson also brings an as-applied Eighth Amendment claim, which he has agreed to withdraw, (*see* doc. 165). Additionally, he brings a claim that the Protocol violates the *jus cogens* norm of international law prohibiting torture, which is not at issue here.

religious rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000ee-1(a) ("RLUIPA"). (Doc. 1 in *Jenkins*).[3] Jenkins seeks leave to remove his as-applied Eighth Amendment claim and his First Amendment and RLUIPA claims, which the State does not oppose. Jenkins also seeks leave to add allegations concerning one of his proposed alternative methods of execution, which is a modified nitrogen hypoxia protocol—the State opposes these requested amendments.[4]

As relevant here, Jenkins' operative complaint alleges that the Protocol should be modified to provide Jenkins the option of anti-nausea medication to prevent nausea and vomiting, anti-seizure medication to prevent a seizure, and a sedative to induce unconsciousness before nitrogen gas begins to flow, all of which he claims would mitigate the air hunger allegedly caused by the Protocol. (Doc. 1 at 22 in *Jenkins*). Now, Jenkins seeks to amend his complaint to include the specific medications, dosages, and other details concerning his proposed modifications to the Protocol. He seeks to add the following details: one hour before being transported to the execution chamber, the inmate shall receive "an anti-emetic, such as 20 milligrams of metoclopramide or 8 milligrams of ondansetron, to prevent nausea and vomiting," (doc. 166-1 at 23); and after any final statement but before the mask is placed on the inmate's face, the inmate shall first receive an intravenous injection of 30 mg of morphine, followed by an intravenous injection of midazolam "sufficient to render the inmate unconscious" and consistent with the ADOC's

[3] Jenkins also brought a Sixth Amendment right of access to counsel claim and a Fourteenth Amendment procedural due process claim, but those claims were previously dismissed, (*see* doc. 28 in *Jenkins*).

[4] Jenkins' other proposed alternative method of execution, firing squad, is not at issue here.

use of midazolam during a lethal injection execution, (*id.* at 24). As indicated above, Jenkins' deadline to amend pleadings was originally April 24, 2026, (doc. 47 at 2 in *Van Pelt*), but the deadline was extended to May 1, 2026, by agreement of the parties, (doc. 122).

**3. Taylor**

In his operative complaint, Taylor brings a facial Eighth Amendment claim and proposes three alternative methods of execution: (1) a modified nitrogen hypoxia protocol, (doc. 127 at 37, para. 149); (2) MAID through an oral dose of secobarbital or the "DDMP II" drug combination, (*id.* at 39–40, paras. 157–70), and (3) firing squad, (*id.* at 41–42, paras. 171–76). Regarding the modified nitrogen hypoxia protocol, Taylor's operative complaint proposes that the Protocol be modified to include an intravenous injection of midazolam "sufficient to render the inmate unconscious" and consistent with the ADOC's use of midazolam during a lethal injection execution, which Taylor claims will mitigate air hunger allegedly caused by the Protocol. (*Id.* at 37, para. 149). Now, Taylor seeks leave to add three categories of factual allegations concerning his proposed modifications to the Protocol and MAID. First, regarding the modified Protocol, Taylor seeks to include the administration of morphine in addition to midazolam. Second, regarding both the modified Protocol and MAID, Taylor seeks to include the administration of an anti-emetic medication to prevent nausea and vomiting. Third, Taylor—like Wilson—seeks to update the drug combination for MAID to include the "DDMAPh" drug combination, which the State does not oppose. As indicated above, Taylor's deadline to amend pleadings was

originally April 24, 2026, (doc. 47 at 2 in *Van Pelt*), but the deadline was extended to May 1, 2026, by agreement of the parties, (doc. 124).

## IV. DISCUSSION

As outlined above, certain portions of the motions to amend are unopposed by the State. Thus, the Court focuses on the disputed portions, specifically: Wilson's request to add the firing squad as an alternative method of execution; Taylor's request to add allegations concerning his proposed modified nitrogen hypoxia protocol; and Jenkins' request to add allegations regarding the administration of morphine to his modified nitrogen hypoxia protocol, and regarding the administration of an anti-emetic medication to both his modified nitrogen hypoxia protocol and his proposed MAID alternative. Because Jenkins and Taylor seek (in part) similar amendments and their arguments in support substantially overlap, the Court addresses their motions together before turning to Wilson's motion.

### A. Jenkins and Taylor

Jenkins and Taylor argue that they became aware of the facts they now seek to include in an amended complaint regarding specific medications, dosages, and other details on September 15, 2026, when their expert, Dr. Carly Zapata, shared her report with them. They further argue that, despite their diligence, they could not have discovered these facts, which are grounded in Dr. Zapata's expert opinions, any earlier.

Upon review, the Court is persuaded that Jenkins and Taylor have demonstrated good cause to amend their complaints after the scheduling order deadline. "[G]ood cause exists when evidence supporting the proposed amendment would not have been discovered

in the exercise of reasonable diligence until after the amendment deadline had passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007).[5] The new facts arise out of Dr. Zapata's expert report, which she timely provided. Moreover, the new facts reasonably appear to require medical and/or scientific expertise. Jenkins and Taylor each moved to amend their complaints only three days after receiving Dr. Zapata's report. Therefore, under these circumstances, Jenkins and Taylor have shown that they could not have, despite their diligence, amended their complaints before the scheduling order deadline (or any earlier than they did).

In opposition, the State argues that Jenkins and Taylor were aware or should have been aware of these new facts earlier because the complaints of other Plaintiffs in the consolidated action contain such facts.[6] The Court is not persuaded. It is not clear what information the other Plaintiffs were privy to, or the sources of such information, when they alleged those facts in their complaints. It could be, for example, that they consulted an expert before filing their complaints. But such consultation was not required to plausibly plead a method of execution claim. Thus, assuming that the other Plaintiffs went above and beyond when pleading their complaints, it does not follow that Jenkins and

---

[5] Here, and elsewhere in this Opinion, the Court cites nonbinding authority. While the Court acknowledges these cases are nonprecedential, the Court finds them persuasive.

[6] The State contends, for example, that on May 2, 2026, Plaintiffs Rick Belisle ("Belisle"), Kim Van Pelt ("Van Pelt"), and Jimmy Brooks, Jr. ("Brooks") pleaded the administration of midazolam and morphine for their proposed modified nitrogen hypoxia protocol. The Court observes that Belisle, Van Pelt, and Brooks are represented by different counsel than Jenkins and Taylor.

Taylor were not diligent for failing to act similarly.[7] The Court also disagrees with the State's unsupported contention that Jenkins and Taylor took too long to conduct discovery. Jenkins and Taylor timely disclosed their expert reports in accordance with the deadline set by this Court. Moreover, the State does not articulate what discovery Jenkins and Taylor should have conducted earlier which would have revealed *to them* the factual basis of their proposed amendments.

Having cleared Rule 16(b)(4)'s "good cause" hurdle, Jenkins and Taylor must also show that the amendment is consistent with Rule 15. While this Court should "freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), leave is not required in cases involving "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*, 371 U.S. at 182. Here, the State argues that undue delay and undue prejudice militate against allowing the amendment. The Court disagrees. The Court finds that Jenkins and Taylor did not unduly delay because, as explained above, Jenkins and Taylor each sought leave to amend approximately three days after receiving their expert's report which elucidated the factual bases of the amendments. The Court is also not persuaded

[7] The Court further observes that the State is not consistent in its position on this issue, in that the State has not opposed allowing Taylor to amend his complaint to add the DDMAPh drug combination to his MAID alternative. However, the DDMAPh drug combination was proposed by Lee in his original complaint filed on August 22, 2025, and Lee's case was consolidated (albeit briefly) with Taylor's case in January 2026. By the State's own logic, Taylor should have known about the DDMAPh drug combination much earlier because Lee pleaded it in *his* complaint—yet the State does not oppose Taylor's amendment. While the State's inconsistent position is not dispositive, it further underscores the Court's conclusion that the State's argument does not undermine Jenkins' and Taylor's respective showings of good cause.

that the State will be unduly prejudiced by the amendment at this stage. Neither the discovery nor dispositive motions deadlines have passed. *Cf. Diaz v. Burchette*, 585 F. App'x 968, 870 (11th Cir. 2014) (affirming denial of plaintiff's motion to amend made after the close of discovery and after the defendant had moved for summary judgment); *cf. also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (affirming denial of plaintiff's motion to amend complaint made on the last day of the discovery period because "it would have . . . delayed disposition of the case, and likely prejudiced [the defendant]"). For these reasons, the Court concludes that Jenkins' and Taylor's motions to amend are due to be granted.

**B. Wilson**

Wilson argues that he should be allowed to add the firing squad to his complaint's proposed alternative methods of execution because he did not know that the firing squad was a legally viable alternative method until this Court decided *Lee III*. He contends that he could only plead an alternative "found to be acceptable by a federal court in Alabama," (doc. 162 at 7, para. 12 (emphasis omitted)), which had not occurred with respect to the firing squad until *Lee III*. The State counters that Wilson was not legally required to plead an alternative which had been approved by a federal court, and that the relevant facts were available to him before the pleading deadline expired.

Wilson has not shown good cause to amend to add the firing squad as an alternative method of execution. As the State correctly points out, neither the Federal Rules of Civil Procedure nor the Supreme Court's method of execution precedents require that a proposed alternative method have prior court approval. *See, e.g.*, *Bucklew v. Precythe*, 587 U.S. 119,

134 (2019) (requiring the plaintiff to prove the existence of an alternative method of execution that is feasible, readily implemented, and significantly reduces the substantial risk of severe pain posed by the state's chosen method, and that the state has refused to adopt the plaintiff's alternative without a legitimate penological reason). Such a rule would be strange, particularly given that plaintiffs can propose alternatives that are not "presently authorized by a particular State's law." *See id.* at 139–40. Thus, this Court's decision in *Lee III* does not supply good cause for the late amendment.

Further, unlike Taylor and Jenkins, Wilson has not shown that he was unaware of the underlying facts, i.e., the firing squad protocol or its particulars, or that he could not have discovered them despite due diligence, until months after the scheduling order deadline expired—indeed, he does not dispute the State's contention that other states' firing squad protocols were publicly available before he filed his complaint. *See Sosa*, 133 F.3d at 1419 (finding that the plaintiff was not diligent in seeking leave to amend where "*the information* supporting the proposed amendment to the complaint was available to [the plaintiff] even before she filed suit" (emphasis added)); *see also Insight Secs. Inc. v. Deutsche Bank Tr. Co. Ams.*, 2022 WL 2313980, at *6 (11th Cir. June 28, 2022) (per curiam) (explaining that "the fact that the information providing the basis for the proposed amendment was available to the party before the [scheduling order] deadline" is "relevant to a party's diligence"); *Postell v. Greene Cnty. Hosp. Auth.*, 2006 WL 2583686, at *2 (M.D. Ga. Sept. 7, 2006) (denying defendants' motion for leave to amend pleading after scheduling order deadline and explaining that there was "no evidence nor any argument that the information supporting the [amendment] was not available to Defendants prior to

the scheduling order deadline"). Thus, Wilson has not established good cause to amend his complaint to add allegations concerning the firing squad, and his motion for leave to amend to add such allegations is due to be denied.[8] Wilson's motion is due to be granted as to the requested amendments which the State does not oppose.

## V. CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED as follows:

1. Wilson's motion to amend (doc. 162) is GRANTED to the extent that he may amend his complaint to update the drugs in his proposed MAID alternative and to delete the international law claims the Court previously dismissed. Wilson's motion (doc. 162) is DENIED in all other respects. **On or before November 30, 2026**, Wilson shall file, as a separate docket entry, a second amended complaint which complies with the Court's Local Rules and which is consistent with the directives in this Opinion;

2. Jenkins' motion to amend (doc. 166) is GRANTED. **On or before November 30, 2026**, Jenkins shall file, as a separate docket entry, an amended complaint which complies with the Court's Local Rules and which is consistent with the directives in this Opinion;

3. Taylor's motion to amend (doc. 167) is GRANTED. **On or before November 30, 2026**, Taylor shall file, as a separate docket entry, a second amended

[8] Because Wilson has not satisfied Rule 16(b)(4)'s good cause requirement, the Court pretermits discussion of whether the amendment is permissible under Rule 15.

complaint which complies with the Court's Local Rules and which is consistent with the directives in this Opinion.

DONE this 19th day of November, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE